2) Based on representations by the licensee regarding plans to open, the local board renewed the license in 1987, 1988, 1989, 1990 and 1991.

3) The 1991 license was granted by the local board after a hearing relative to the non-use of the license.

4) The applicant failed to file for renewal of the license for 1992 until after the renewal date. Thus, the local board considered the application under Chapter 138, Section 15A.

5) The applicant requested that the local board late renew the license and then transfer it to 745 Boylston Associates, Inc. which would operate a no food service nightclub with a capacity of 922 patrons. The previous capacity for the license was 450.

6) There was opposition to the application expressed by public officials and community residents.

7) At the Commission's hearing, the applicant represented that it was willing to change the license to be an all alcoholic beverages restaurant license, transfer the license and to accept a capacity of no more than 250.

8) Another unused license in the same building, Boston Half Shell, Inc., involves similar ownership. It is currently under Purchase and Sale Agreement to the Westwood Group to be transfered to another location.

Based on the evidence heard, the Commission finds that there is insufficient evidence to support the Board's decision. The Commission disapproves the action of the local board and remands the decision to the local board for further hearing.

The Commission recommends that the local board find either:

1) that the license renewal application be granted on the conditions that:

a) the license class be changed to restaurant license,

b) that a valid application for transfer of the license be received within 60 days of approval of renewal,

c) that a seating capacity of no more than 250 be imposed

d) that the Half Shell, Inc. license be transferred to another location

e) any other conditions which would serve the public good, or,

2) deny the application based on specific findings supported by the evidence.

### Bay Fishing, Inc. d/b/a Boston Harbor Commuter Service
### 400 Atlantic Avenue
### Boston
### DECISION

This was a hearing on an alleged violation of 204 CMR 4.03 (1) (a) - Offering free drinks.

After hearing, the Commission makes the following findings:

1) On or about October 1, 1991 until March 15, 1992, the licensee offered free alcoholic beverages to passengers.

2) At hearing, the licensee admitted the violation.

Based on the evidence heard, the Commission finds that the licensee violated 204 CMR 4.03 (1) (a) - Offering free drinks and suspends the license for three days.

### Joanne Contaldi d/b/a White Hen Pantry
### 2245 Massachusetts Avenue
### Cambridge
### DECISION

This was an appeal by twenty-five or more voters or taxpayers of the decision of the Cambridge Board in approving a change of ownership application of a wine and malt license from White Hen Pantry, Inc. to Joanne Contaldi.

After hearing, the Commission makes the following findings:

1) The license has been held as an inactive license under various ownerships since 1989.

2) The local board permits inactive licenses in compliance with regulations adopted by the local board.

3) The local board approved the transfer of the license with the understanding that the license would become operational after complying with conditions relative to management and operation as imposed by the local board.

4) While the proposed licensee is a franchise operation of White Hen Pantry, no revenue from liquor sales from this location will be shared by the parent organization.

5) At hearing, questions were raised as to a possible undisclosed beneficial interest in the license by Contaldi's husband, Gaetano Contaldi.

Based on the evidence heard, the Commission finds that the decision of the local board on the issued raised in the protest was a reasonable use of the board's discretion. The protest is dismissed.

The application is pending before the Commission and will be held for administrative review and action, including a requirement of the Commission that the licensee submit an amended Form 43 disclosing the beneficial interest of Gaetano Contaldi, whether direct or indirect.

### Nick's Beer & Beef House, Inc.
### 1688-1688A Massachusetts Avenue
### Cambridge
### DECISION

This was a hearing on an alleged violation of 204 CMR 2.05 (2) - Permitting an illegality on the licensed premises, to wit: Chapter 138, Section 34 - Sale or delivery of alcoholic beverages to underage persons.

After hearing, the Commission makes the following findings:

1) On or about February 3, 1992, the licensee served alcoholic beverages to one Harlan Robins (DOB 4/1/73), then age eighteen.

2) On or about February 3, 1992, the licensee served alcoholic beverages to one Scott McGovern (DOB 1/24/73), then age nineteen.

3) On or about February 3, 1992, the licensee served alcoholic beverages to one Andrea Halverson, (DOB 1/22/73), then age nineteen.

4) Each showed a false out of state license at the time of service.

Reliance on an out of state driver's license is not a defense to this charge, MGL Chapter 138, Section 34B.

Based on the evidence heard, the Commission finds the licensee violated 204 CMR 2.05 (2) - Permitting an illegality on the licensed premises, to wit: Chapter 138, Section 34 - Sale or delivery of alcoholic beverages to underage persons and suspends the license for eighteen days.

### Chatham Sou'Wester, Inc.
### 1563 Main Street
### Chatham
### DECISION

This was a hearing on an alleged violation of 204 CMR 2.16 - Failure to post cover charge or give receipts.

After hearing, the Commission finds that on or about March 21, 1992 the licensee was charging a cover charge without proper posting of notice and was failing to give receipts to patrons paying the cover charge.

Based on the evidence heard, the Commission finds the licensee violated 204 CMR 2.16 - Failure to post cover charge or give receipts and warns the licensee.

### Interbrands, Inc.
### 42 Mountain Road
### Farmington, CT
### DECISION

This was a hearing on alleged violations of: a) Chapter 138, Section 18B - Violation of conditions of the license, b) Chapter 138, Section 22 - Transporting alcoholic beverages without a license, c) Chapter 138, Section 63A - Hindering or delaying an ABCC investigator and d) 204 CMR 2.05 (3) - Transporting alcoholic beverages without an invoice or sales slip.

After hearing, the Commission makes the following findings:

1) On or about November 26, 1991, an ABCC investigator observed Rolf Andersen and Lucuis "Skip" Whitaker, both employees of this certificate of compliance holder, outside the premises of a Section 15 retail licensee.

2) Andersen and Whitaker removed five bottles of wine from a car and put them into an empty case. They then brought the case into the Section 15 premises.

3) The investigator asked to see the invoice and transportation permit for the wine and was told that there was none.

4) Andersen told the investigator that the wine had been pur-