# DOUGLAS WINE & SPIRITS FRANCHISE AGREEMENT

## Table of Contents

1. GRANT OF FRANCHISE AND TERRITORY ....................................................4

   1.1. GRANT OF FRANCHISE ....................................................................4
   1.2. TERRITORY ...........................................................................................4
   1.3. STORE ..................................................................................................5

2. COMMENCEMENT OF OPERATIONS ......................................................5

3. TERM AND RENEWAL ..............................................................................5

   3.1. TERM ....................................................................................................5
   3.2. RENEWAL .............................................................................................5

4. PROPRIETARY MARKS ............................................................................6

   4.1. USE ......................................................................................................6
   4.2. NON-EXCLUSIVITY ..............................................................................6
   4.3. PROPER AUTHORITY...........................................................................7
   4.4. CONDITIONS ........................................................................................7
   4.5. DISPLAY OF MARKS ............................................................................7
   4.6. MAINTENANCE OF MARKS .................................................................7
   5.1. OUTFITTING .........................................................................................7
   5.2. DOCUMENTS .......................................................................................8
   5.3. INDEPENDENT OPERATION ...............................................................8
   5.4. MARKETING AND SALES PROMOTIONS............................................8
   5.5. ADVERSE EFFECT ..............................................................................8
   5.6. SPECIFICATIONS.................................................................................8
   5.7. MAINTENANCE OF STORE ..................................................................8
   5.8. STORE INTERIOR ................................................................................9
   5.9. EXTERIOR AND INTERIOR SIGNS......................................................9
   5.10. COMPUTER EQUIPMENT AND SOFTWARE ......................................9
   5.11. MODIFICATION OF STANDARDS ......................................................9
   5.12. PAYMENT............................................................................................9
   5.13. RECORDS AND ELECTRONIC REPORTING......................................9
   5.14. ACCURACY .........................................................................................10
   5.15. RIGHT OF INSPECTION .....................................................................10
   5.16. OPERATIONS......................................................................................10

6. FRANCHISOR'S OBLIGATIONS...............................................................10

   6.1. RIGHT TO USE MARKS .......................................................................10
   6.2. TRAINING AND ASSISTANCE..............................................................10
   6.3. ADDITIONAL TRAINING.......................................................................10
   6.4 Operating Manual…………………………………………………………11
   6.5. SUPPLIES ............................................................................................11

7. FEES ...................................................................................................11

   7.1. INITIAL FRANCHISE FEE.......................................................................11
   7.2. ROYALTY FEE ...................................................................................11
   7.3. ADVERTISING AND PROMOTION FEE .....................................................12
   7.4. APPLICATION OF PAYMENTS ...............................................................12
   7.5. INTEREST..........................................................................................12

8. ADVERTISING .................................................................................13

   8.1. TELEPHONE DIRECTORY ....................................................................13

9. OPERATING MANUAL AND GUIDANCE...........................................14

   9.1. OPERATING MANUAL .........................................................................14
   9.2. GUIDANCE FROM FRANCHISOR .............................................................14

10. RELATIONSHIP OF THE PARTIES AND INDEMNIFICATION............14

   10.1. RELATIONSHIP OF THE PARTIES ........................................................14
   10.2. AUTHORITY TO CONTRACT ................................................................14
   10.3. NO FRANCHISOR LIABILITY FOR CERTAIN ASSESSMENTS ......................15
   10.4. INDEMNIFICATION ............................................................................15

11. CONFIDENTIAL INFORMATION AND EXCLUSIVE RELATIONSHIP ...............15

   11.1. CONFIDENTIAL INFORMATION.............................................................15
   11.2. EXCLUSIVE RELATIONSHIP ................................................................16

12. OPERATING STANDARDS AND COMPLIANCE .................................16

   12.1. OPERATING STANDARDS AND PROCEDURES.........................................16
   12.2. COMPLIANCE WITH LAWS AND GOOD BUSINESS PRACTICES .................16

13. INSURANCE...................................................................................17

   13.1. REQUIREMENTS ...............................................................................17
   13.2. CERTIFICATES OF INSURANCE ...........................................................17

14. TRANSFER ....................................................................................17

   14.1. TRANSFER BY FRANCHISOR................................................................17
   14.2. FRANCHISEE MAY NOT TRANSFER WITHOUT APPROVAL ........................17
   14.3. CONDITIONS FOR APPROVAL OF TRANSFER BY FRANCHISEE ..................18
   14.4. TRANSFER TO A WHOLLY-OWNED CORPORATION .................................18
   14.5. TRANSFER COMMISSION ...................................................................18
   14.6. DEATH OR DISABILITY OF FRANCHISEE ...............................................18
   14.7. UNAUTHORIZED ASSIGNMENT.............................................................19
   14.8. NO SECONDARY LIABILITY.................................................................19
   14.9. INFORMATION CONCERNING FRANCHISEE ............................................19

15. TERMINATION OF FRANCHISE .......................................................19

   15.1. TERMINATION BY FRANCHISOR ..........................................................19

15.2. SURVIVAL OF OBLIGATIONS ............................................................20
15.3. PAYMENT OF AMOUNTS OWED TO FRANCHISOR.................................20
15.4. LIQUIDATED DAMAGES ................................................................20
15.5. CANCELLATION OF LISTINGS AND TELEPHONE NUMBERS ....................20
15.6. RETURN OF MANUALS, MATERIAL ..................................................21
15.7. TERMINATION COMPLIANCE DATE ..................................................21

16. DEFAULT BY FRANCHISEE.................................................................21

16.1. ACTS OF IMMEDIATE TERMINATION.................................................21
16.2. ACTS REQUIRING A PERIOD TO CURE BEFORE TERMINATION .................22
16.3. ADDITIONAL REMEDY OF FRANCHISOR .............................................23

17. REMEDIES AND TERMINATION..........................................................23

17.1. COMPLETE PERFORMANCE REQUIRED .............................................23
17.2. DISCONTINUE USE OF TRADE PRACTICES AFTER TERMINATION ..............23
17.3. FRANCHISEE'S OBLIGATIONS UPON TERMINATION ..............................24
17.4. ADDITIONAL OBLIGATIONS...........................................................24
17.5. GOVERNING LAW ON BREACH .......................................................24

18. NON-COMPETITION........................................................................24

18.1. COMPETITIVE OWNERSHIP ...........................................................24
18.2. NON-DISCLOSURE OF TRADE SECRETS ............................................25
18.3. USE OF TRADE PRACTICES ...........................................................25

19. MISCELLANEOUS ..........................................................................25

19.1. SEVERABILITY AND SUBSTITUTION OF VALID PROVISIONS ....................25
19.2. NO WAIVER .............................................................................25
19.3. NO WARRANTY .........................................................................26
19.4. FORCE MAJEURE .:.....................................................................26
19.5. INJUNCTIVE RELIEF ....................................................................26
19.6. CUMULATIVE RIGHTS..................................................................26
19.7. PROPRIETARY RIGHTS AND CONFIDENTIALITY ...................................27
19.8. COSTS AND ATTORNEY'S FEES.......................................................27
19.9. GOVERNING LAW AND CONSENT TO JURISDICTION .............................27
19.10. CONSTRUCTION .......................................................................27
19.11. NOTICES.................................................................................27
19.12. ACKNOWLEDGMENTS.................................................................28

## DOUGLAS WINE & SPIRITS FRANCHISE AGREEMENT

This Agreement is made this _____ day of _____, 200_, by and between Wine & Spirits Retailers, Inc., d/b/a Douglas Wine & Spirits, a Rhode Island corporation with its principal place of business located at 1405 Douglas Ave, No. Providence, R. I. 02904 (Franchisor) and _____ of _____ (Franchisee).

Whereas Franchisor has developed under the name "Douglas Wine & Spirits," a distinctive system for the establishment, operation and marketing of retail stores engaged in the business of selling alcoholic beverages for consumption off the premises and other retail items permitted by law (System); and

Whereas Franchisor desires to grant franchises to third parties to operate retail stores engaged in the business of selling alcoholic beverages for consumption off the premises under the name "Douglas Wine & Spirits" and such other trade names, trademarks, service marks, logos and commercial symbols as Franchisor, subject to such authorization, deems appropriate (Marks); and

Whereas Franchisee desires to purchase a franchise to establish and operate such a retail store subject to the terms and conditions set forth herein within the territory described below and at the following address:

_____ (Store).

Now therefore, in consideration of the promises and undertakings set forth herein, the parties hereby agree as follows:

### 1. GRANT OF FRANCHISE AND TERRITORY

**1.1. Grant of Franchise.** Franchisor hereby grants to Franchisee, subject to the terms and conditions hereof, the right and franchise to establish and operate a retail store engaged in the business of selling alcoholic beverages for consumption off the premises and other items permitted by law and Franchisee hereby undertakes the obligation to establish and operate the store under the name "Douglas Wine & Spirits" at the address specified above and to use in connection therewith (and with no other business) Franchisor's Marks and its System and business methods as they now exist, and as they may be changed, improved, and further developed by Franchisor from time to time (Franchise). Franchisee agrees that the Store shall be used for no purpose other than the sale at retail of alcoholic beverages and lawful related products.

**1.2. Territory.** The Franchise is granted for the territory described in Schedule A attached hereto (Territory). Franchisee is responsible for developing to the maximum extent possible the business of the Store within the Territory. Franchisor agrees that, so

4

long as Franchisee is in compliance with this Agreement, Franchisor will not establish, operate, or franchise another to establish or operate, another retail liquor store for consumption off the premises in the Territory. Notwithstanding the foregoing, however, Franchisee recognizes that Franchisor and its other franchisees are independent businesses and may engage in promotional or other activities in the Territory related to their businesses so long as no such store is established or operated within the Territory in violation of this Agreement.

**1.3. Store.** The Store shall be located at the location specified above. Franchisor may, but shall not be required to, assist Franchisee in negotiating the terms of any lease. The Franchisee will include the following provisions in the lease:

**1.3.1.** The lessor shall be authorized to furnish Franchisor with all information furnished to the lessor by Franchisee during the lease term;

**1.3.2.** The lessor shall notify Franchisor in the event of any default by Franchisee under the lease or sublease;

## 2. COMMENCEMENT OF OPERATIONS

Franchisee shall establish the Store and commence operations hereunder not later than 120 days after execution of this Agreement. If Franchisee fails so to commence operations Franchisor may give Franchisee written notice of such failure. If Franchisee fails to commence such operations within thirty (30) days following the date of such notice, Franchisor may notify Franchisee that this Agreement is terminated.

## 3. TERM AND RENEWAL

**3.1. Term.** Subject to the termination provisions hereof, the term of this Agreement shall be ten (10) years from the date of its execution.

**3.2. Renewal.** Upon the expiration of the initial term, the Franchise granted hereby may be renewed at Franchisee's option so long as Franchisee satisfies the following conditions:

**3.2.1.** Franchisee shall have complied with this Agreement during the term and shall be in compliance at the time of renewal;

**3.2.2.** Franchisee shall have repaired, refurbished and upgraded the Store at Franchisee's expense so that it conforms to Franchisor's then-current standards for such stores and related facilities;

Douglas Wine & Spirits
Franchise Agreement

5

**3.2.3.** Franchisee shall execute Franchisor's then-current form of franchise agreement and such ancillary agreements as Franchisor then may require of its new Franchisees, which agreements may contain less favorable terms;

**3.2.4.** Franchisee shall give Franchisor at least one years written notice of its intention to renew the Franchise. If Franchisee fails to give such notice, the parties agree that Franchisee shall be precluded from exercising any renewal rights hereunder, or by operation of law, or otherwise;

**3.2.5.** Franchisee shall take such refresher training courses as Franchisor may reasonably require, and complete same to Franchisor's reasonable satisfaction;

**3.2.6.** Franchisee shall furnish Franchisor with a release of all claims against Franchisor and its affiliates in such form as it may require; and

**3.2.7.** Franchisee shall pay Franchisor a renewal fee equal to twenty-five percent (25%) of the then-current initial franchise fee then being charged for franchises (of Franchisor or any successor) similar to that granted hereunder.

## 4. PROPRIETARY MARKS

**4.1. Use.** Franchisee acknowledges that the service marks: Douglas Wine & Spirits and such other trademarks, service marks and commercial symbols as Franchisor may introduce hereafter for use by Franchisee (Marks) are valid trade marks and the sole property of Franchisor. Franchisee acknowledges that all good will associated with the Marks, including any goodwill which may arise through Franchisee's efforts, shall inure to the benefit of Franchisor. Franchisee further acknowledges that any Marks developed by the Franchisee are the sole property of the Franchisor. Franchisee shall use the Marks solely in the manner permitted and for the purposes contemplated by this Agreement. Franchisor shall take such action as it deems appropriate in its sole discretion to protect and preserve the integrity and good will inherent in the Marks. However, the Franchisor shall have no obligation to protect or defend Franchisee's use of any Mark. Franchisee shall not contest or aid contesting the validity or ownership of the Marks during the term or at any time thereafter.

**4.2. Non-exclusivity.** Franchisee understands and agrees that Franchisee's use of the Marks is nonexclusive. Franchisor may use the Marks and grant franchises for others to use the Marks in such manner as it deems appropriate subject, however to Franchisee's rights under this Agreement.

Douglas Wine & Spirits
Franchise Agreement

6

**4.3.  Proper Authority.** Franchisee shall notify Franchisor promptly of any claim, demand or suit based upon or arising from, or of any attempt by any other person or firm to use any Mark without proper authority. Franchisee shall promptly notify Franchisor of any litigation instituted by Franchisee or by any person or firm or governmental agency against Franchisee in connection with any Mark. Franchisor may, in its discretion, undertake the defense or prosecution of any such litigation, and in such event Franchisee shall execute such documents and do such acts and things as may in the opinion of Franchisor's counsel be necessary to carry out such defense or prosecution, either in the name of Franchisor or Franchisee, as Franchisor shall elect and at its expense.

**4.4.  Conditions.** In connection with its use of the Marks, Franchisee covenants as follows:

**4.4.1.**  To operate, advertise and promote the Store under the Marks only, without use of additional names or words;

**4.4.2.**  To adopt and use the Marks solely as prescribed by Franchisor including proper use of any trademark registration notices;

**4.4.3.**  To carry out the business of the Store under the Marks in accordance with Franchisor's standards as the same may be communicated to Franchisee, and in connection therewith, Franchisee shall not use the Marks in Franchisee's firm, proprietorship, corporate or partnership name, nor shall Franchisee use any telephone, telephone number or directory listing associated with any Mark for any business or purpose other than in connection with the operation of the Store and its business.

**4.5.  Display of Marks.** Franchisee agrees that the Mark will be prominently displayed at the Store and in any advertising of Franchisee in accordance with Franchisor's standards as they are communicated to Franchisee, unless Franchisor directs otherwise. Franchisee shall inform all parties with whom it does business that Franchisee is an independently owned and operated Franchisee of Franchisor in such manner as Franchisor deems appropriate.

**4.6. Maintenance of Marks.** At its expense, Franchisee shall maintain its sign(s) at the Store, which contain any Mark(s) in good condition and make any repairs thereto if appropriate or if Franchisor so directs.

## 5.  Franchisee's Obligations

**5.1.  Outfitting.**  Franchisee shall at its own expense, effect leasehold improvements and install such signs, pictures, fixtures, furniture, and equipment at the

Douglas Wine & Spirits
Franchise Agreement

location as required in accordance with Franchisor's then current requirements and specifications as they are communicated to Franchisee from time to time.

**5.2. Documents.** Franchisee shall use only such forms, stationery, supplies and related documents as shall meet Franchisor's standards as they are communicated to Franchisee from time to time.

**5.3. Independent operation.** Franchisee is an independent businessperson with the right to control all aspects and details of the operation of the Store and its business. In the event that Franchisee chooses not to follow the rules, policies, standards and procedures as may be prescribed by Franchisor from time to time generally for all similar franchised and/or company managed stores and subject always to valid laws rules and regulations which may be imposed by relevant governmental authorities for the regulation of franchised businesses, Franchisor may, subject to any requirement of notice and opportunity to cure contained herein, terminate this Agreement with no recourse by Franchisee. Nothing in this Agreement shall be construed in such a way as to make the Franchised business part of a chain store operation.

**5.4. Marketing and Sales Promotions.** Subject to all valid applicable law, Franchisee may participate in sales promotions and marketing programs as offered by Franchisor, at Franchisee's expense, in an effort to enhance Franchisee's sales of alcoholic beverages and/or related products in the Territory.

**5.5. Adverse Effect.** Franchisee will exercise its best efforts to promote, develop and enlarge its business. Franchisee shall avoid any act or omission which may tend to detract or otherwise adversely affect (in Franchisor's reasonable view) such business, any Mark, the good will associated therewith and/or any business methods of Franchisor required or referred to herein.

**5.6. Specifications.** Franchisor shall provide a sample layout for the interior of the Store with a set of typical preliminary plans and decor specifications. Franchisor will provide suggested standards and specifications, which may be modified from time to time by Franchisor.

**5.7. Maintenance of Store.** Maintenance and repair of the Store is the sole responsibility of the Franchisee. Franchisee is expected to maintain signs, pictures, equipment, decor, furnishings, fixtures and all other tangible property in the location in excellent condition and repair and to replace any of the Store's equipment and fixtures which become obsolete or mechanically impaired. The Store shall be kept clean, neat and reasonably attractive in appearance at all times.

**5.8. Store Interior.** Franchisor will suggest interior design, decor and layout for the Store which may be modified from time to time by Franchisor.

**5.9. Exterior and Interior Signs.** So long as this Agreement remains in effect all signs to be used in connection with Store, both exterior and interior, will conform to Franchisor's sign criteria as to type, color, size, design and location.

**5.10. Computer Equipment and Software.** Franchisee will equip the Store with computer equipment, point of sale and other necessary software, telephones and facsimile equipment in accordance with Franchisor's current requirements and specifications.

**5.11. Modification of Standards.** Franchisor may suggest additional standards in connection with the Store, including the physical facility and its manner of operation.

**5.12. Payment.** Franchisee shall pay when due all expenses incurred in establishing and operating the Store. Franchisor shall not be responsible for any claim, obligation or debt arising out of the operation of the Store.

**5.13. Records and Electronic Reporting.** So long as this Agreement remains in effect, Franchisee shall maintain full and complete records and accounts regarding the Store and the business transacted pursuant to this Agreement. All of Franchisee's records, papers and accounts pertaining to the Store and/or the business conducted by Franchisee pursuant to this Agreement shall be kept and maintained by Franchisee in a safe place for a period of not less than four years. Franchisee shall furnish Franchisor with such reports, files and information at such times as Franchisor may request, including without limitation, the following:

**5.13.1 Financial records.** Not less than annually and no later than ninety days following the end of Franchisee's fiscal year, Franchisee shall provide Franchisor with its annual balance sheet (statement of financial condition) as well as its annual income (profit and loss) statement. Such statement and balance sheet shall be prepared consistent with generally accepted accounting principles consistently applied, reviewed by a certified public accountant and certified as true by Franchisee. They need not be audited. In addition, Franchisee shall provide Franchisor with a copy of its federal and state income tax returns within thirty days of their submission to the federal and state tax authorities.

**5.13.2 Operations records.** Monthly the Franchisee shall provide Franchisor accurate reports of Franchisee's sales and inventory purchases, and such other information as Franchisor may request regarding operations of the Store during any pertinent fiscal period.

Douglas Wine & Spirits
Franchise Agreement

9

**5.14.  Accuracy.**  Regardless of the mode of accounting used by Franchisee, Franchisee is responsible for furnishing Franchisor with complete, accurate and timely records and information.

**5.15.  Right of Inspection.**  Franchisor may inspect Franchisee's records and the Store to determine if Franchisee is performing in accordance with this Agreement, without providing any prior notice to Franchisee.  Franchisor may audit Franchisee's financial records at any time and at its expense.  If such audit discloses that Franchisee has under reported total gross receipts for any period of three months or more then Franchisee shall pay any and all amounts owed to Franchisor, interest thereon, plus the cost of the audit (including all costs incurred directly or indirectly by Franchisor in connection with any such audit).  Further, Franchisor may visit the Store and may interview Franchisee's employees at any time to determine if Franchisee is so performing hereunder.

**5.16. Operations.**  Franchisee will devote full-time and best efforts to the operation of the Store, including, without limitation, the following:

**5.16.1**  Franchisee shall offer for sale to the public a varied and broad selection of spirits, beer and wine (imported and domestic) and lawful supplementary products.

**5.16.2.**  Franchisee may purchase inventory for resale with the Marks affixed thereon.  Franchisee shall not sell, dispense, give away or otherwise provide products or services bearing Franchisor's Marks, trademarks, trade names or service marks, except by means of retail sales in the Store.

### 6.  Franchisor's Obligations

**6.1.  Right to Use Marks.**  Franchisor shall grant Franchisee the right to use the Marks in strict accordance with this Agreement as provided herein, including, without limitation the limited territorial protection set forth above.

**6.2.  Training and Assistance.**  Franchisor shall provide Franchisee with such training and assistance in the operation of the Store and the business franchised hereunder as well as in advertising and promotion in connection therewith as Franchisee may request and Franchisor deems appropriate in its sole discretion, with Franchisee being responsible for all travel, lodging and related expense.

**6.3.  Additional Training.**  Franchisee may request additional training from time to time provided, that Franchisee is required to pay the cost of such additional instruction and training, including the cost of transportation, subsistence, lodging and the current charge for the services of the representative, which costs shall be paid in advance.

Douglas Wine & Spirits
Franchise Agreement

10

**6.4. Operating Manual.** Franchisor shall loan Franchisee, upon completion of training, a confidential operating manual detailing Franchisor's system of operation (Operating Manual) and will provide Franchisee with interior and exterior plans, layout and instruction.

**6.5. Supplies.** Franchisor shall furnish Franchisee with an initial supply of such accounting, administrative and other forms and supplies to be used in the operation of the Store and the business franchised hereunder, as Franchisor deems appropriate. Notwithstanding the foregoing, however, Franchisee may obtain such forms, supplies and items from any supplier so long as they meet Franchisor's standards and specifications. Franchisee shall pay Franchisor for any such items purchased from Franchisor at its then current prices therefor.

## 7. FEES

**7.1. Initial Franchise Fee.** Franchisee shall pay to Franchisor Two Thousand ($2,000) Dollars upon execution of this Agreement as an initial franchise fee and Eight Thousand ($8,000) upon completion of training and store is open for business in consideration of the Franchise and rights granted hereunder. Such fee shall be deemed fully earned by Franchisor upon payment and shall be non-refundable.

**7.2. Royalty Fee.** In consideration of Franchisee's right to use the Marks strictly in accordance with this Agreement, Franchisee shall pay to Franchisor an annual royalty fee based on the following:

*   Franchise operations with total gross receipts of $1,250,000.00 or less for the year: 1% of total gross receipts

*   Franchise operations with total gross receipts between $1,250,000.01 and $1,500,000.00 for the year: 1.25% of total gross receipts

*   Franchise operations with total gross receipts between $1,500,000.01 and $1,750,000.00 for the year: 1.5% of total gross receipts

*   Franchise operations with total gross receipts between $1,750,000.01 and $2,000,000.00 for the year: 1.75% of total gross receipts

*   Franchise operations with total gross receipts between $2,000,000.01 or more for the year: 2% of total gross receipts

Douglas Wine & Spirits
Franchise Agreement

11

The annual royalty fee percentage to be used throughout the calendar year will be based upon the Franchisees annual budgeted (planned) total gross receipts. The monthly royalty fee is calculated by multiplying the annual royalty fee percentage times the Franchisees total gross receipts for the month. The monthly royalty fee is due and payable by the 15th day of the subsequent month.

The annual royalty fee paid will be adjusted, if required, for variations between the annual royalty fee used throughout the year and actual annual royalty fee as determined by actual total gross receipts for the year and the fee percentage criteria above. The resulting amount due to or from Franchisor (referred to as "annual royalty fee adjustment") will be payable as follows:

*    Amount due to Franchisor will be due and payable upon receipt of invoice

*    Amount due to Franchisee will be deducted from the current monthly royalty fee payment upon receipt of invoice.

As used herein the term "total gross receipts" shall mean and include all cash, credit and gift certificate redemption sales to customers of Franchisee, whether or not sold or performed at or from the Store, less customer refunds. The amount of each sale shall be included in total gross receipts at the time of delivery of a product, at the tie of redemption of a gift certificate or as otherwise provided by Franchisor.

**7.3. Advertising and Promotion Fee.** The advertising and promotional services furnished by the Franchisor are voluntary. Participating franchisees shall pay a monthly advertising and promotional fee equal to one and one fifth percent (1.2%) of Franchisees total gross receipts. Such payment shall be made on the 15th day of the month with respect to Franchisees total gross receipts for the preceding month.

**7.4. Application of Payments.** Franchisor shall have sole discretion to apply any payments received from Franchisee or any indebtedness of Franchisor to Franchisee to any past due indebtedness of Franchisee to Franchisor.

**7.5. Interest.** All amounts which Franchisee owes to Franchisor shall bear interest after due date at the highest applicable legal rate for open account business credit, not to exceed one and one-half percent (1.5%) per month. Franchisee acknowledges that this section shall not constitute Franchisor's agreement to accept such payments after same are due or a commitment by Franchisor to extend credit to, or otherwise finance Franchisees operation of the franchised business. Further, Franchisee acknowledges that

its failure to pay any amount when due shall constitute grounds for termination of this Agreement.

## 8. ADVERTISING

**8.1.    Telephone Directory.** Franchisee may place and maintain a display advertisement which meets Franchisor's requirements (as set forth in the Operating Manual or otherwise in writing by Franchisor) in the Yellow Pages telephone directory published by the regional telephone company which provides local telephone service in the territory. Additionally, Franchisee may place and maintain a display advertisement that meets such requirements in any other telephone directory (similar to the Yellow Pages) that is circulated in the territory.  Franchisee may participate in a joint listing, the cost of which shall be shared equally by Franchisee and other participating Franchisees.

**8.2.**   The advertising and promotion fees (Section 7.3.)  will be accounted for separately from other funds of Franchisor and will not be used to defray any of Franchisor's general operating expenses, except for such reasonable salaries, administrative costs and overhead as Franchisor may incur in activities reasonably related to the administration of the Advertising and Promotion Fund and its marketing programs (including, without limitation, conducting market research, preparing advertising and marketing materials, and collecting and accounting for contributions to the promotion fund). Franchisor may spend in any fiscal year an amount greater or less than the aggregate contributions in that year and cause the Advertising and Promotion Fund to invest any surplus for future use.

**8.3.**   Franchisor undertakes no obligation to ensure that expenditures by the Advertising and Promotion Fund in or affecting any geographic area are proportionate or equivalent to the contributions to the Advertising and Promotion Fund by System Franchisees operating in that geographic area or that any System Franchisee will benefit directly or in proportion to its contribution to the Advertising and Promotion Fund from the development of advertising and marketing materials or the placement of advertising. Except as expressly provided in this section, Franchisor assumes no direct or indirect liability or obligation to Franchisee with respect to the maintenance, direction, or administration of the Advertising and Promotion Fund.

**8.4.**  Notwithstanding anything to the contrary contained herein, the amount of the advertising and promotion fee may be adjusted by Franchisor from time to time upon written notice to reflect increases in the United States Department of Labor Consumer Price Index - U.S. city average for all urban consumers (or a comparable index of Franchisor's choosing if this index becomes unavailable). Franchisor will give Franchisee not less than sixty (60) days advance notice of the imposition of any increase in the amount

Douglas Wine & Spirits
Franchise Agreement

of the advertising and promotion fee. The advertising and promotion fee will be due and payable to Franchisor at such time as Franchisor shall direct but in no event earlier than the expiration of such sixty (60) day period.

## 9. OPERATING MANUAL AND GUIDANCE

**9.1. Operating Manual.** Franchisor shall loan to Franchisee during the term of the Franchise one copy of the Operating Manual as part of the system. The Operating Manual will contain suggested specifications, standards, policies and/or operating procedures prescribed from time to time by Franchisor for the operation of the Store and the franchised business and information about other obligations of Franchisee under this Agreement. Franchisor has the right to modify the Operating Manual from time to time to reflect changes in the specifications, standards, policies and/or operating procedures prescribed for the operation of the Franchise. Franchisee must keep its copy of the Operating Manual current. The master copy maintained by Franchisor at its principal office will be controlling in the event of a dispute about the contents of the Operating Manual.

**9.2. Guidance from Franchisor.** Franchisor may make available to Franchisee, from time to time and in its sole discretion, guidance and assistance in connection with the operation of the Store through such additional training and telephonic assistance, if any, as Franchisor deems appropriate.

## 10. RELATIONSHIP OF THE PARTIES AND INDEMNIFICATION

**10.1. Relationship of the Parties.** The parties agree that this Agreement does not create a fiduciary relationship between them, that Franchisor and Franchisee are and shall be independent businesses, and that nothing in this Agreement is intended to make either party a general or special agent, legal representative, joint venturer, partner or employee of the other party for any purpose. They further acknowledge that neither owns a legal or beneficial interest in the assets or business of the other. Franchisee shall conspicuously identify itself in all dealings with customers, suppliers, public officials and others as the owner of the franchised business under a franchise from Franchisor, and shall place such other notices of independent ownership on such signs, forms, stationery, advertising and other materials as Franchisor may require from time to time.

**10.2. Authority to Contract.** Franchisee shall not make any express or implied agreements, guarantees or representations, or incur any debt in the name of or on behalf of Franchisor, other than as a Franchisee of Franchisor pursuant to this Agreement. Franchisor shall not be obligated by or have any liability under any agreements or representations made by Franchisee that are not expressly authorized hereunder, nor shall it be obligated for any damages to any person or property directly or indirectly arising out of the operation of the Store and the franchised business.

Douglas Wine & Spirits
Franchise Agreement

14

**10.3. No Franchisor Liability for Certain Assessments.** Franchisor shall have no liability for any value added, use, excise, property or other taxes, whether levied upon Franchisee, the Store, the franchised business or its assets, or upon Franchisor, in connection with sales made, services performed or business conducted by Franchisee, except as otherwise provided herein or as required by law.

**10.4. Indemnification.** Franchisee agrees to indemnify and hold Franchisor, its stockholders, directors, officers, employees, agents, successors and assignees harmless against, and to reimburse them for, any loss, liability, expense or damages (actual or consequential), and all reasonable costs and expenses of defending any claim brought against any of them or any action in which any of them is named as a party (including, without limitation, reasonable accountants, attorney's and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses, and travel and living expenses), which any of them may suffer, sustain or incur by reason of, arising from, or in connection with, Franchisee's ownership or operation of the Store or the franchised business, or by reason of the transfer of any interest in this Agreement, the franchise, the franchised business or the ownership of Franchisee. The indemnities and assumptions of liabilities and obligations herein shall continue in full force and effect after and notwithstanding the expiration or termination of this Agreement.

## 11. CONFIDENTIAL INFORMATION AND EXCLUSIVE RELATIONSHIP

**11.1. Confidential Information.** Franchisor has a proprietary interest in certain confidential information and know-how consisting of operating and purchasing procedures, supplier lists, pricing formulae, and other methods, techniques, formats, specifications, procedures, information, and/or systems for the development, operation and franchising of businesses using the System (Confidential Information). Certain of the Confidential Information will be disclosed to, or learned by, Franchisee in connection with its ownership and operation of the franchised business. The Confidential Information is made available to Franchisee by Franchisor solely on the condition that Franchisee agrees, and Franchisee does hereby agree, that Franchisee (and each of its owners):

**11.1.1.** Will not use the Confidential Information in any other business or capacity;

**11.1.2.** Will maintain the absolute confidentiality of the Confidential Information during and after the term of this Agreement;

**11.1.3.** Will not make unauthorized disclosure of any portion of the Confidential Information;

Douglas Wine & Spirits
Franchise Agreement

**11.1.4.** Will adopt and implement all reasonable procedures prescribed from time to time by Franchisor to prevent unauthorized use or disclosure of the Confidential Information, including, without limitation, restrictions on disclosure thereof to Franchisee's employees and contractors, and the use of franchisor-approved, non-disclosure clauses in employment agreements or service contracts with such persons.

**11.2.    Exclusive Relationship.** Franchisee acknowledges and agrees that Franchisor would be unable to protect the Confidential Information against unauthorized use or disclosure if Franchisee were permitted to hold interests in any other business offering alcoholic beverages for consumption off the premises at retail. Therefore, during the term of this Agreement, neither Franchisee (nor any of its owners, if applicable) shall have any direct or indirect interest as an owner, investor, partner, lender, director, officer, employee, consultant, representative or agent, or in any other capacity, in any business that engages in any aspect of the offer, sale, or distribution of alcoholic beverages for consumption off the premises at retail, except for other businesses approved by Franchisor and the ownership for investment purposes only of publicly traded securities representing one percent (1%) or less of the number of outstanding shares of that class of securities.

## 12. OPERATING STANDARDS AND COMPLIANCE

**12.1. Operating Standards and Procedures.** Franchisee will at all times provide professional, efficient and courteous service to all customers and shall, in all dealings with the public, customers, staff personnel, suppliers, vendors and Franchisor, adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct. Franchisee acknowledges that the operation of the Store and the franchised business in compliance with Franchisor's high standards is important to Franchisor and others operating under the System.

**12.2.    Compliance with Laws and Good Business Practices.** Franchisee will secure and maintain in force all required licenses (including any license to sell alcoholic beverages for off premises consumption at retail) and permits relating to the Store and the franchised business, and shall operate such business in full compliance with all applicable laws, ordinances, and regulations, including without limitations, all laws, rules and regulations governing the sale of alcoholic beverages. All advertising and promotion used by Franchisee shall be completely factual and conform to the highest standards of ethical advertising. Franchisee agrees to refrain from any business or advertising practice which may be harmful to the business of Franchisor, the goodwill associated with the Marks, or other stores or franchisees of Franchisor. Franchisee shall notify Franchisor in writing within five (5) days of the commencement of any action, suit or proceeding, or of the receipt of any notice, or of the issuance of any order, writ, injunction, award or decree of any court, agency or governmental unit, which asserts or finds a violation by Franchisee of

Douglas Wine & Spirits
Franchise Agreement

any law, ordinance or regulation or which may adversely affect the operation, financial condition or reputation of Franchisor, Franchisee, or other stores or franchisees of Franchisor.

## 13. INSURANCE

**13.1. Requirements.** During the term hereof, Franchisee will obtain and maintain reasonably adequate insurance coverage.

**13.2. Certificates of Insurance.** Franchisor shall be named as an additional insured on all insurance policies covering risks which may attach to the Franchisor Each policy shall contain a provision that Franchisor, although named as an insured, shall nevertheless be entitled to recover under such policies on any loss occasioned to it, its affiliates, agents or employees by reason of the negligence or wrongful acts or omissions of Franchisee, its principals, agents or employees. All policies shall provide Franchisor with at least ten (10) days notice of cancellation or termination of coverage.

## 14. TRANSFER

**14.1. Transfer by Franchisor.** This Agreement and Franchisor's interest under it are fully assignable by Franchisor, and shall insure to the benefit of any transferee or other legal successor to Franchisor's interest herein. Franchisor agrees that any such transferee will be, in Franchisor's view, reasonably capable of performing Franchisor's obligations hereunder.

**14.2. Franchisee May Not Transfer Without Approval.** Franchisee understands and acknowledges that the rights and duties created by this Agreement are personal to Franchisee (or its owners) and that Franchisor has granted the Franchise to Franchisee in reliance upon the individual or collective character, skill, aptitude, business ability and financial capacity of Franchisee (or its owners). Accordingly, neither this Agreement nor the Franchise (or any interest therein) may be transferred without the prior written approval of Franchisor, and any such transfer without such approval shall constitute a breach hereof and convey no rights to or interests in this Agreement, the franchise, Franchisee, or the franchised business. As used in this Agreement, the term "transfer" shall include the voluntary, involuntary, direct or indirect assignment, sale, division, pledge, grant of a security interest, gift or other transfer of any interest of Franchisee (or any of its owners) in: (1) this Agreement; (2) the franchise; (3) the ownership of Franchisee; or (4) the assets or income of the franchised business. An assignment, sale, or other transfer shall, without limitation, include the following events: (1) the transfer of ownership of capital stock, a partnership interest or proprietorship; (2) merger or consolidation or issuance of additional securities representing an ownership interest in Franchisee; (3) any sale of voting stock of Franchisee or any security convertible to voting stock of Franchisee; (4) transfer of an

Douglas Wine & Spirits
Franchise Agreement

17

interest in Franchisee, this Agreement, the Franchise or the franchised business in a divorce, insolvency, corporate or partnership dissolution proceeding, foreclosure proceeding, or otherwise by operation of law; (5) transfer of an interest in this Agreement, the franchise, Franchisee, or the franchised business in the event of the death of Franchisee or an owner of Franchisee, by will, declaration of or transfer in trust, or under the laws of in testate succession.  Nothing in this provision prohibits the right of the franchisee to sell or transfer its assets, provided that no rights to the franchise are transferable without approval.

**14.3.  Conditions for Approval of Transfer by Franchisee.**  If Franchisee and its owners are in full compliance with this Agreement, Franchisor shall not unreasonably withhold its approval of a transfer that meets all the requirements of this section. The proposed transferee (and each of its owners, if applicable) must be of good moral character and otherwise meet Franchisor's then applicable standards for System Franchisees. With respect to any proposed transfer other than a transfer to or among the existing owners of Franchisee, Franchisee must pay Franchisor a transfer fee in the amount of fifty percent (50%) of the current "Initial Franchise Fee" to help defray its direct and indirect costs of reviewing and processing proposed transfers. Such transfer fee shall be paid upon consummation of any such transfer.

**14.4. Transfer to a Wholly-Owned Corporation.** Subject to the provisions of this section, this Agreement and the Franchise may be assigned by Franchisee to a corporation that conducts no business other than the franchised business, which Franchisee actively manages, and in which Franchisee owns and controls the voting power of all issued and outstanding capital stock. Such corporation must agree to assume and be bound by all the terms and conditions of this Agreement.  Franchisee (and each of its owners) shall continue to be personally bound by this Agreement, jointly and severally. Franchisee and such corporation shall be required to execute a form of assignment and assumption then prescribed or approved by Franchisor for such assignments. Transfers of interest in such corporation will be subject to the provisions of section 14.

**14.5.  Transfer Commission.**  In the event Franchisor procures a purchaser for the franchise, the franchised business or any other asset or interest transferable under this section 14, Franchisee agrees to pay Franchisor, in addition to all other amounts due to Franchisor for any reason, a commission equal to ten percent (10%) of the total purchase price payable in connection with such transfer. Such commission shall be paid to Franchisor at time of closing unless otherwise agreed by Franchisor in writing.

**14.6.  Death or Disability of Franchisee.**  Upon the death or permanent disability of Franchisee (or the owner of a controlling interest in Franchisee), the executor, administrator or other representative of such person shall transfer the interest of Franchisee or such owner in this Agreement and the franchise, or such interest in

Douglas Wine & Spirits
Franchise Agreement

18

Franchisee, to a third party approved by Franchisor. Such disposition shall be completed within a reasonable time, not to exceed six (6) months from the death or permanent disability, and shall be subject to all the terms and conditions applicable to transfers contained in this section 14. Failure to so transfer the interest in this Agreement and the Franchise or such interest in Franchisee within the specified period shall constitute a breach of this Agreement. Nothing in this provision prohibits the right of the franchisee to sell or transfer its assets, provided that no rights to the franchise are transferable without approval.

**14.7. Unauthorized Assignment.** Any purported assignment of the Franchise without the prior written consent of Franchisor shall be void and any attempt to assign or transfer the Franchise shall be a breach of this Agreement.

**14.8. No Secondary Liability.** Providing the transferring Franchisee is in good standing with Franchisor at the time of the transfer, the transferring Franchisee shall not be secondarily liable to Franchisor for obligations of the assignee-transferee under the Franchise agreement signed by the assignee-transferee.

**14.9. Information Concerning Franchisee.** In connection with any transfer of the Franchise, Franchisor shall have the right, but not the obligation, to furnish any proposed assignee with copies of all financial statements which have been furnished by Franchisee in accordance with this Agreement during the one (1) year period prior to the date approval of the proposed assignment, transfer or sale is sought. Franchisor shall also have the right, but not the obligation, to advise any proposed assignee of any uncured breaches or default by you under this Agreement or any other agreement relating to the Store.

## 15. TERMINATION OF FRANCHISE

**15.1. Termination by Franchisor.** Franchisor shall have the right to terminate this Agreement by delivering a notice to Franchisee stating that Franchisor elects to terminate this Agreement because of any material breach of this Agreement. Such termination shall be effective upon delivery of such notice, or, if applicable, upon failure to cure, to Franchisor's satisfaction, any such breach, by the expiration of any time period within which such breach may be cured in accordance with the provisions set forth below. It shall be a breach of this Agreement if Franchisee (or any of its owners):

**15.1.1.** Fails to pay any fees, payments for purchases or other amounts due to Franchisor when due;

**15.1.2.** Abandons the operation of the Store or the franchised business, which shall be deemed to have occurred if Franchisee fails to operate normally for seven business days;

Douglas Wine & Spirits
Franchise Agreement

**15.1.3.** Has made any material misrepresentation or omission in the application for the franchise;

**15.1.4.** Is convicted of, or pleads no contest to, a felony or other offense likely to adversely affect the reputation of Franchisor, Franchisee, or the System;

**15.1.5.** Fails, for a period of ten (10) days after notification of noncompliance, to comply with any federal, state or local law applicable to Franchisee or the operation of the Store or the franchised business;

**15.1.6.** Fails, for a period of ten (10) days after notification of noncompliance, to comply with any requirement of this Agreement;

**15.1.7.** Fails, for a period of ten (10) days after notification of noncompliance, to cancel all fictitious or assumed names or equivalent registrations, including any Mark;

**15.1.8.** Fails, after a period of ten (10) days after notification of noncompliance, to furnish Franchisor, evidence satisfactory to Franchisor of Franchisee's compliance with the foregoing obligations.

**15.2. Survival of Obligations.** All obligations of Franchisee (and each of its owners) that expressly or by their nature survive the termination or expiration of this Agreement shall continue in full force and effect subsequent to and notwithstanding its expiration or termination until they are satisfied, or by their nature expire.

**15.3. Payment of Amounts Owed to Franchisor.** Unless otherwise permitted by Franchisor, within fifteen (15) days after the effective date of termination or expiration, Franchisee shall pay any amounts owed to Franchisor that are then unpaid.

**15.4. Liquidated Damages.** If this Agreement is terminated for any of the reasons contained in this section 15, the Franchisor retains all rights to pursue all fiduciary and non-fiduciary claims permitted under law. Payment of liquidated damages shall be in addition to all other Franchisor rights to obtain equitable relief, to collect amounts owed to it accruing before termination of the Franchise and to enforce survival of the indemnification by Franchisee. In the event of breach by franchisee, franchisor is entitled to its full measure of damages but not less that $100,000.

**15.5. Cancellation of Listings and Telephone Numbers.** Franchisee will take all such action as may be required to cancel all assumed name or equivalent registrations relating to its use of any Mark(s).

Douglas Wine & Spirits
Franchise Agreement

20

**15.6. Return of Manuals, Material, Etc.** Franchisee shall return to Franchisor in good condition all manuals furnished by Franchisor including the Operating Manual, and shall destroy or turn over, to Franchisor all advertising material, stationery, printed forms and all other matter containing any Mark relating to the operation of Franchisee's business, if any, in Franchisee's possession at the time of such termination or expiration. Franchisee shall not copy or retain copies of such materials either directly or indirectly unless such retention is necessary to comply with law.

**15.7. Termination Compliance Date.** Not later than thirty (30) days following expiration or the effective date of termination hereof, Franchisee shall furnish to Franchisor evidence satisfactory to Franchisor of Franchisee's compliance.

## 16. DEFAULT BY FRANCHISEE.

**16.1. Acts of Immediate Termination.** If, during the period in which the Franchise is in effect, there occurs any of the following events which is relevant to the franchise, immediate notice of termination without an opportunity to cure, shall be deemed reasonable:

**16.1.1.** Franchisee or the business to which the Franchise relates is declared bankrupt or judicially determined to be insolvent, or all or a substantial part of the assets thereof are assigned to or for the benefit of any creditor, or Franchisee admits its inability to pay its debts as they come due.

**16.1.2.** Franchisee abandons the Franchise by failing to operate the business for five (5) consecutive days during which it is required to operate the business under the terms of the franchise, or any shorter period after which it is not unreasonable under the facts and circumstances for Franchisor to conclude that Franchisee does not intend to continue to operate the franchise, unless such failure to operate is due to fire, flood, earthquake or other similar causes beyond Franchisee's control.

**16.1.3.** Franchisor and Franchisee agree in writing to terminate the Franchise.

**16.1.4.** Franchisee or any person acting on its behalf makes any material misrepresentations relating to the acquisition of the Franchise business or engages

Douglas Wine & Spirits
Franchise Agreement

21

in conduct which reflects materially and unfavorably upon the operation and reputation of the Franchise business or System.

**16.1.5.** Franchisee fails, for a period of ten (10) days after notification of noncompliance, to comply with any federal, state or local law or regulation applicable to the operation of the franchise.

**16.1.6.** Franchisee, after curing any failure, engages in the same noncompliance whether or not such noncompliance is corrected after notice.

**16.1.7.** Franchisee repeatedly fails to comply with one or more requirements of this Agreement, whether or not corrected after notice.

**16.1.8.** The franchised business or business premises of the Franchise are seized, taken over or foreclosed by a government official in the exercise of his duties, or seized, taken over, or foreclosed by a creditor, lien holder or lessor, provided that a final judgment against Franchisee remains unsatisfied for thirty (30) days (unless a supersedeas or other appeal bond has been filed); or a levy of execution has been made upon the license granted by the Franchise agreement or upon any property used in the franchised business, and it is not discharged within five (5) days of such levy.

**16.1.9.** Franchisee or an owner is convicted of a felony or any other criminal misconduct that is relevant to the operation of the Franchise.

**16.1.10.** Franchisee fails to pay any Franchise fees or other amounts due to the Franchisor within five (5) days after receiving written notice that such fees are overdue.

**16.1.11.** Franchisor makes a reasonable determination that continued operation of the Franchise by Franchisee will result in an imminent danger to public health or safety.

### 16.2. Acts Requiring a Period to Cure Before Termination.

**16.2.1.** Default under any agreement between Franchisor and Franchisee, or under the lease agreement with the landlord of the Franchise location, which default is not cured within the period required in said agreements.

**16.2.2.** Any purported assignment, transfer, or sub-license of this franchise, or any right hereunder, without our prior written consent.

Douglas Wine & Spirits
Franchise Agreement

**16.2.3.** If during the term of this Agreement, or any extension or renewal thereof, the right to occupy the Franchise location is lost and a new location satisfactory to Franchisor and Franchisee within Franchisee's exclusive territory is not leased within thirty (30) days of the termination of the lease agreement for the Store.

**16.2.4.** Failure to make timely payments upon any obligation of Franchisee upon which Franchisor is acting as a guarantor or default upon or a breach of any provision of any promissory note or other evidence of indebtedness or any agreement relating thereto.

**16.2.5.** Failure to comply with all of the terms of this Agreement or any other agreement between Franchisor and Franchisee.

**16.3.  Additional Remedy of Franchisor.**  In the event Franchisor declares Franchisee in default in accordance with the terms of this Agreement (other than those calling for immediate termination), including the acts set forth above, Franchisor, in addition to all other remedies at law or in equity, may declare this Agreement automatically terminated unless such default is cured within thirty (30) days after written notice thereof to Franchisee, unless the default is of a nature that more than thirty (30) days are reasonably required to cure, then Franchisee shall commence to cure the default within said thirty (30) day period, and shall proceed with such cure with due diligence and within the period, if any, designated by Franchisor as allowable additional time within which the cure must be accomplished.   If Franchisee shall repeatedly fail to comply with the terms of this Agreement, or any of them, of any nature, cured or uncured, after notice from Franchisor thereof, then, in addition to all other remedies available at law or in equity, Franchisor may immediately declare this Agreement terminated.

## 17.  REMEDIES AND TERMINATION

**17.1.  Complete Performance Required.** Franchisee acknowledges and agrees that complete performance of all the terms of this Agreement is necessary for the protection of Franchisor and the System and that complete and exact performance by Franchisee of each of its obligations contained herein is a condition to the continuance of this franchise.

**17.2.  Discontinue Use of Trade Practices After Termination.** In the event this Agreement is terminated for any reason, Franchisee shall forfeit all fees paid and will no longer use Franchisor's Marks, trademarks, service marks, or trade names. Franchisee must immediately cease use of all Marks, trade names, formula, service marks, trademarks, training manuals, and other proprietary property of Franchisor. Franchisee shall immediately return all manuals, training films, videos, training materials, and other

property of the Franchisor and shall not operate or do business under any name or in any manner that might tend to give the general public the impression that the former Franchisee is dispensing, selling or servicing any of the products developed by Franchisor.

**17.3.  Franchisee's Obligations Upon Termination.**  Immediately upon the termination of this Agreement, for whatever reason, Franchisee shall do the following:

**17.3.1.**  Cease and forever abstain from using the System or any part thereof or any proprietary information contained therein.

**17.3.2.**  Return to Franchisor all copies of the Operating Manual and all other documents, instructions, display items, advertising material, training and other tangible property connected with the franchise.

**17.3.3.** Remove all signs and other items tending to identify the Store as being connected with Franchisor or the System.

**17.4. Additional Obligations.** In the event of termination, Franchisor may retain all fees paid pursuant to this Agreement. In addition, all obligations of Franchisor to Franchisee and all Franchisee's rights under this Agreement shall automatically terminate; however, any obligations of Franchisee to take, or abstain from taking, any action upon termination pursuant to this Agreement shall not be affected by such termination, including the payment to Franchisor of all sums due at the time of termination.

**17.5. Governing Law on Breach.** Any provisions of this Agreement which may be determined by competent authority to be prohibited, or unenforceable, or contrary to the law of the jurisdiction having authority over this transaction, shall be ineffective to the extent of its inconsistency with such state law, and this Agreement shall be deemed modified to comply with such law, but only to the extent necessary to prevent the invalidity of this Agreement or any provisions hereof, the imposition of any fine or penalty or the creation of any civil or criminal liability on account thereof.

## 18. NON-COMPETITION

**18.1.  Competitive Ownership.** During the term of this Agreement, neither Franchisee nor any of its principals shall directly or indirectly engage or be financially involved in (except for ownership of not more than five percent (5%) of the outstanding stock, voting and non-voting, of a corporation, the stock of which is traded on a national securities exchange), or be employed by any retail alcoholic beverages business for consumption off the licensed premises or for the sale of related products as a significant aspect of its operation.

Douglas Wine & Spirits
Franchise Agreement

24

**18.2. Non-disclosure of Trade Secrets.** At no time during or after the term of this Agreement shall Franchisee disclose any of Franchisor's trade secrets, including, without limitation, the contents of the Operating Manual, other manuals, or training materials, except as provided herein.

**18.3. Use of Trade Practices.** Franchisee shall not, during the term of this Agreement or thereafter, use or assist another in the use of any of Franchisor's trade practices in any other business.

## 19. MISCELLANEOUS

**19.1. Severability and Substitution of Valid Provisions.** Each provision of this Agreement and any portion thereof shall be considered severable and if, for any reason, any provision of this Agreement is held to be invalid, contrary to, or in conflict with any applicable present, or future, law or regulation, in a final, unappealable ruling issued by any court, agency or tribunal with competent jurisdiction in a proceeding to which Franchisor is a party, that ruling shall not impair the operation of, or have any other effect upon, such other portions of this Agreement as may remain otherwise intelligible. Such other portions shall continue to be given full force and effect and bind the parties hereto, although any portion held to be invalid shall be deemed not to be a part of this Agreement from the date the time for appeal expires, if Franchisee is a party thereto, otherwise upon Franchisee's receipt of a notice of non-enforcement thereof from Franchisor. To the extent that any provision concerning non-competition is deemed unenforceable by virtue of its scope in terms of area, length of time, and/or business activity prohibited, but could be made enforceable by reducing any or all thereof, Franchisee and Franchisor agree that same shall be enforced to the fullest extent permissible under applicable law. If any applicable and binding law or rule of any jurisdiction requires a greater prior notice of the termination of this Agreement than is required hereunder, or the taking of some other action not required hereunder, or if under any applicable and binding law or rule of any jurisdiction any provision of this Agreement or any specification, standard or operating procedure prescribed by Franchisor is invalid or unenforceable, the prior notice and/or other action required by such law or rule shall be substituted for the comparable provisions hereof, and Franchisor shall have the right, in its sole discretion, to modify such invalid or unenforceable provision, specification, standard or operating procedure to the extent required to be valid and enforceable.

**19.2. No Waiver.** Either party may unilaterally waive or reduce any obligation of or restriction upon the other party under this Agreement, effective upon delivery of written notice thereof to the other, or upon such other effective date stated in the notice of waiver. Neither party shall be deemed to have waived or impaired any right, power or option

reserved by this Agreement by virtue of (a) any custom or practice of the parties at variance with the terms hereof; (b) any failure, refusal or neglect of Franchisor or Franchisee to exercise any right under this Agreement or to insist upon exact compliance by the other with its obligations hereunder, including, without limitation, any mandatory specification, standard or operating procedures; (c) any waiver, forbearance, delay, failure or omission by Franchisor to exercise any right, power or option; (d) the acceptance by Franchisor of any payments due from Franchisee after any breach of this Agreement.

**19.3. No Warranty.** Franchisor makes no warranties or guarantees, express or implied, upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by granting any waiver, approval or consent to Franchisee, or by reason of any neglect, delay or denial of any request therefor. Any waiver granted by Franchisor shall be without prejudice to any other rights which either party may have, will be subject to continuing review by Franchisor, and may be revoked, in Franchisor's sole discretion, at any time and for any reason, effective upon delivery to Franchisee of ten (10) days' prior written notice.

**19.4. Force Majeure.** Except as otherwise provided in this Agreement, neither party shall be liable for loss or damage or deemed to be in breach of this Agreement if its failure to perform its obligations results from (1) transportation shortages or inadequate supply of material or energy; (2) compliance with any law, ruling, order, regulation, requirement or instruction of any federal, state, or municipal government or any department or agency thereof; (3) acts of god; (4) acts or omissions of the other party; (5) fires, strikes, embargoes, war or riot; or (6) any other similar event or cause. Any delay resulting from any of said causes shall extend performance accordingly or excuse performance in whole or in part, as may be reasonable.

**19.5. Injunctive Relief.** Nothing herein shall bar Franchisor or Franchisee from obtaining injunctive relief or specific performance under customary equity rules, including applicable rules for obtaining restraining orders and preliminary injunctions. Franchisee agrees that Franchisor may have injunctive relief without bond, but upon due notice, and the sole remedy of Franchisee, in the event of the entry of such injunction, shall be the dissolution of such injunction, if warranted, upon due hearing (all claims for damages by reason of the wrongful issuance of any such injunction being expressly waived hereby). Franchisee agrees that breach of any of its obligations hereunder shall constitute such irreparable injury as shall be cause for issuance of a temporary restraining order or preliminary injunction.

**19.6. Cumulative Rights.** The rights of the parties under this Agreement are cumulative, and no exercise of any right under this Agreement by either party shall preclude the exercise or enforcement by either party of any other right which that party is entitled to enforce under this Agreement or applicable law.

Douglas Wine & Spirits
Franchise Agreement

**19.7. Proprietary Rights and Confidentiality.** Franchisee acknowledges and agrees that at all times and in all respects, the Marks, trademarks, trade name, service marks and copyrights of Franchisor are the Franchisor's sole property, and that Franchisee has only a license to use such rights and Marks according to the provisions hereof. Franchisee shall make no application for registration of any identifying names or Marks licensed herein or similar thereto without the prior written consent of, and upon terms and conditions satisfactory to Franchisor. Franchisee agrees to take no action which will interfere with Franchisor's Marks, trademarks, service marks, trade names or copyright rights.

**19.8. Costs and Attorney's Fees.** If Franchisor incurs legal fees or other expenses as a result of any breach by Franchisee of its obligations under this Agreement, then Franchisor shall be entitled to recover from Franchisee the amount of all such legal fees and other expenses. If either party is required to enforce this Agreement in a judicial or other legal proceeding, the party prevailing in such proceeding shall be entitled to reimbursement of its costs and expenses, including reasonable accounting fees, expert witness fees and legal fees.

**19.9. Governing Law and Consent to Jurisdiction.** Except to extent governed by the laws of the United States, this Agreement shall be governed by the laws of the State of Rhode Island. The parties agree that in any action arising out of this Agreement, exclusive jurisdiction shall be vested in the trial court of the State of Rhode Island, or in the United States District Court for the District of Rhode Island and submits to the jurisdiction of such courts and waives any objection to either the jurisdiction or venue of such courts.

**19.10. Construction.** Section headings in this Agreement are for convenience only, and shall not affect interpretation. An "owner" of Franchisee includes any person, natural or otherwise, with a direct or indirect legal or beneficial ownership interest or voting power in Franchisee. This Agreement: (1) is the entire agreement of the parties with respect to its subject matter; (2) can be amended only in writing signed by both parties; (3) shall, except as otherwise herein provided, bind and inure to the benefit of the parties and their respective successors and assigns; (4) may be executed in any number of counterparts; and (5) does not confer any rights or remedies upon any person not a party hereto.

**19.11. Notices.** All written notices and any payments permitted or required by the provisions of this Agreement shall be deemed to be delivered at the time delivered by hand, one (1) business day after transmission by any electronic system, or three (3) business days after being placed in the U.S. Mail by Registered or Certified mail, addressed to the party to be notified at its address given on the first page of this Agreement, or at such other business address of which the notifying party shall have been

Douglas Wine & Spirits
Franchise Agreement

notified from time to time in accordance with this section. Any required payment or report not actually received by Franchisor during regular business hours on the date due, or properly placed in the U.S. Mail and postmarked by postal authorities at least two (2) business days prior thereto, shall be deemed delinquent. No party shall refuse to receive a written notice that is given in compliance with this Agreement and any such refusal shall be deemed to be receipt of such notice.

**19.12. Acknowledgments.** Franchisee (and each of its owners) has read this Agreement and understands and accepts the terms, conditions, and covenants contained in this Agreement as being reasonably necessary to maintain Franchisor's standards and thereby to protect and preserve the goodwill of the Marks and the System. Franchisee represents that it has conducted an independent investigation of the business venture described in this Agreement, and recognizes that it involves business risks and that its success is dependent upon Franchisee's own business abilities. Franchisor expressly disclaims making, and Franchisee acknowledges that it has not received or relied upon, any representation or guaranty, express or implied, as to the revenues, profits or success of the venture described in this Agreement. This is the entire Agreement between the parties and there are no other representations or statements of any force or effect that induced the parties to enter into this Agreement. Franchisee (and each of its owners) acknowledges that it has not received or relied upon any representations about the Franchise (or otherwise) by Franchisor, or its officers, directors, employees, or agents, which are contrary to the terms hereof. Franchisee acknowledges that in all of their dealings with Franchisee, the officers, directors, employees and agents of Franchisor act only in a representative capacity and not in an individual capacity. Franchisee further acknowledges that this Agreement, and all business dealings between Franchisee and such individuals as a result of this Agreement, are solely between Franchisee and Franchisor. Franchisee (and each of its owners) further represents to Franchisor, as an inducement to its entry into this Agreement, that Franchisee made no misrepresentation in obtaining the franchise.

In witness whereof the parties set their hands and seals on the date first above written.


Franchisor                              Franchisee



By:_____          By:_____

The undersigned personally guaranty unconditionally full performance by the Franchisee of all of its obligations hereunder.

Douglas Wine & Spirits
Franchise Agreement

_____            _____

Douglas Wine & Spirits
Franchise Agreement

## Schedule A

## The Territory

Each franchisee will be granted the exclusivity of a defined territory.

The Franchisee area is based upon a population of 25,000 people in the area.

Each territory will be defined by either State, City or local town ordinances which describe by population the need for Class "A" licenses. No other Douglas Wine & Spirits Franchise will be allowed within the circumference of the protected territory. This is not to say that there may or may not be any active and operating Class "A" license holders within the confines of the protected circumference of the Franchisee's territory.

Each Franchisee's territory will include the immediate area surrounding the Franchisee's location, this territory will be mapped out with the Franchisee's location being in the middle of a circle which will encompass a population equal to an area that would contain the specified population quota equal to the need for additional Class "A" licenses.

The population requirement for the # of licenses in the State of Rhode Island is currently:
1 ( one) per_____. Each city and town has the right to either allow or disallow the application for new licenses.

## MASSACHUSETTS FRANCHISE AMENDMENT

WHEREAS, _____ ("Franchisee") and Wine & Spirits Retailers, Inc. (formerly known as Douglas Wine & Spirits, Inc.) ("DOUGLAS") signed a Douglas Wine & Spirits Franchise Agreement dated _____ (the "Agreement"), covering the Douglas Wine & Spirits retail store located at _____ (the "Store");

WHEREAS, Franchisee and Douglas desire to amend the Franchise Agreement to eliminate the royalty fee based on alcoholic beverages sales at the Store and replace it with a flat royalty fee.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Franchisee and Douglas mutually agree that, notwithstanding anything in the Agreement to the contrary, the Agreement shall be and is hereby amended as follows:

A.    Notwithstanding anything in the Agreement to the contrary:

1.    The annual royalty fee which is based on the total gross receipts in Section 7.2 of the Agreement shall be amended so that the Franchisee agrees to pay to Douglas a monthly Flat Fee Royalty as set forth on <u>Schedule 1</u> attached. The Flat Fee Royalty shall be the charge for the Franchisee's right to use the Marks and may be adjusted by Douglas, annually. The Flat Fee Royalty shall not exceed 2% of the annual total gross receipts. Any amounts collected above this limitation shall be refunded to the Franchisee.

2.    The advertising and promotion fee which is equal to one and one fifth percent (1.2%) of Franchisees total gross receipts in Section 7.3 of the Agreement shall be amended so that the Franchisee agrees to pay to Douglas a monthly flat advertising and promotion fee as set forth on <u>Schedule 2</u> attached. The flat advertising and promotion fee shall be the charge for the advertising and promotional services furnished by Douglas to Franchisee and may be adjusted by Douglas, annually.

3.    For purposes of this Amendment, "alcoholic beverages" shall be all products defined as alcoholic beverages by the Massachusetts Liquor Control Act.

4.    If the Massachusetts Liquor Control Act as interpreted by the Massachusetts Alcoholic Beverages Control Commission changes to permit Douglas to receive a royalty based on gross receipts of alcoholic beverage sales, this Amendment shall terminate.

B.    Unless otherwise defined herein or in context, the terms used herein have the

meaning defined for them in the Agreement.

C.     In all other respects, the Agreement is ratified and reaffirmed.


        IN WITNESS WHEREOF, the parties have executed this Amendment to the
Franchise Agreement the _____ day of _____, 2004.

**WINE & SPIRITS RETAILERS, INC.**


_____
Print Name:
Print Title:


**FRANCHISEE(S)**


_____
Signature

_____
Full Name (Typed)

Witness:_____

Store Address:
_____
Street

_____
City              State              Zip

**SCHEDULE 1** Flat Royalty Fee

**January**              _____

**February**             _____

**March**                _____

**April**                _____

**May**                  _____

**June**                 _____

**July**                 _____

**August**               _____

**September**            _____

**October**              _____

**November**             _____

**December**             _____

**SCHEDULE 1** Flat Advertising and Promotion Fee

**January**                                    _____

**February**                                   _____

**March**                                      _____

**April**                                      _____

**May**                                        _____

**June**                                       _____

**July**                                       _____

**August**                                     _____

**September**                                  _____

**October**                                    _____

**November**                                   _____

**December**                                   _____