UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PEOPLES SUPER LIQUOR STORES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> EDDIE J. JENKINS, in his capacity as Chairman of the Alcoholic Beverages Control Commission, et al., <br><br> Defendants. | CIVIL ACTION NO. <br> 04-12219 - PBS |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM
### (RE SUPREME COURT'S GRANHOLM DECISION)
### IN SUPPORT OF MOTION TO DISMISS

Subsequent to the May 4, 2005 hearing on Defendants' Motion to Dismiss, the Supreme Court issued its decision in Granholm v. Heald, 125 S. Ct. 1885 (May 16, 2005). As this Court anticipated at the May 4 hearing, Granholm conclusively resolves the Twenty-first Amendment issue raised by the dormant Commerce Clause claims in Count V of the Complaint. See Defendants' Memorandum in Support of Motion to Dismiss pp. 14-16; Complaint ¶¶ 23-26. Contrary to what contemporaneous media articles might have suggested, however, Granholm actually confirms the superseding effect of the Twenty-first Amendment in the specific area of state regulation at issue here. It accordingly dictates dismissal of the Commerce Clause claims in Count V.

Count V challenges two aspects of G.L. c. 138, § 15's regulation of retail liquor sales: the statute's residency requirements for retail licensees and its three-license limit on the number of retail licenses any one person can hold. Complaint ¶¶ 23-26. Both statutory provisions are components of the Commonwealth's "three-tier" system of alcohol distribution, which prescribes carefully segregated functions for (and restrictions on) liquor producers, wholesalers, and retailers. G.L. c. 138; see generally Granholm, 125 S. Ct. at 1892 ("many . . . States regulate the sale and importation of alcoholic beverages . . . through a three-tier distribution system").

While the plaintiffs claim that Section 15's retail residency requirement and three-license limit violate the dormant Commerce Clause, Complaint ¶¶ 23-26, the defendants have contended that "Section 2 of the Twenty-first Amendment grants the States virtually complete control over . . . how to structure the liquor distribution system" and that the challenged statutory provisions are therefore "exempted from the normal operation of the Commerce Clause." Defendants' Memorandum in Support of Motion to Dismiss p. 14 (quoting Swedenburg v. Kelly, 358 F.3d 223, 227, 233 (2nd Cir. 2004)). The Supreme Court granted certiorari in Swedenburg and a related case (Heald v. Engler, 342 F.3d 517 (6th Cir. 2003)), see 124 S. Ct. 2391, and all parties in the present matter agreed that the Supreme Court's decision would inform the proper resolution of the Twenty-first Amendment issue here. Defendants' Memorandum in Support of Motion to Dismiss p. 15; Opposition to Defendants' Motion to Dismiss p. 31.

      The precise question that the Supreme Court granted certiorari on in Granhlom involved not liquor retailers but instead liquor producers: "Does a State's regulatory scheme that permits in-state wineries directly to ship alcohol to consumers but restricts the ability of out-of-state wineries to do so violate the dormant Commerce Clause in light of § 2 of the Twenty-first Amendment?" Granholm, 125 S. Ct. at 1895. While the Supreme Court answered that question in the affirmative, it repeatedly and explicitly limited its holding to liquor "producers" such as wineries. Id. at 1897 ("Section 2 does not allow States to regulate the direct shipment of wine on terms that discriminate in favor of in-state producers"), 1903 ("Our more recent cases . . . confirm that the Twenty-first Amendment . . . does not displace the rule that States may not give a discriminatory preference to their own producers"), 1905 ("The instant cases . . . involve straightforward attempts to discriminate in favor of local producers[,]" which "is contrary to the Commerce Clause and is not saved by the Twenty-first Amendment"), 1907 (Twenty-first Amendment "does not allow States to ban . . . the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers").[1]

---

[1] The Supreme Court additionally characterized two earlier decisions (which it viewed as supportive of its ruling) as similarly involving "producers." Id. at 1904 (discussing Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984) and Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573 (1986)). In an alternative formulation, the Court on several occasions also referred to forbidden "discriminat[ion] against out-of-state goods," which

At the same time, the Granholm Court reaffirmed both that "States have broad power to regulate liquor under § 2 of the Twenty-first Amendment," Granholm, 125 S. Ct. at 1907, and that they "can mandate a three-tier distribution system in the exercise of their authority under the . . . Amendment," id. at 1892.  In addition, and of particular importance to the present case, the Court acknowledged that States can exclude nonresidents from the wholesale and retail functions within that three-tier distribution system, whether by requiring in-state licensees or by distributing the liquor itself:

> The States argue that any decision invalidating their direct-shipment laws would call into question the constitutionality of the three-tier system.  This does not follow from our holding.  "The Twenty-first Amendment grants the States virtually complete control over . . . how to structure the liquor distribution system." [Calif. Retail Liquor Dealers Assn. v.] Midcal [Aluminum, Inc., 445 U.S. 97,] 110 [(1980)]. . . . States may . . . assume direct control of liquor distribution through state-run outlets or funnel sales through the three-tier system. We have previously recognized that the three-tier system itself is "unquestionably legitimate." North Dakota v. United States, 495 U.S., at 432, 110 S. Ct. 1986. See also id., at 447, 110 S. Ct. 1986 (SCALIA, J., concurring in judgment) ("The Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler").

Id. at 1904-05 (emphasis added).  The net result of Granholm is that residency restrictions at the wholesale and retail levels are immunized from Commerce Clause scrutiny by the Twenty-first Amendment, while similar restrictions at the producer level are not.[2]

Granholm's dichotomy between (1) producers and (2) wholesalers and retailers follows not just from the previously quoted language in the majority opinion but also from the majority's

---

is ipso facto discrimination against their producers.  Id. at 1902; accord id. at 1904 ("discrimination against out-of-state liquor"), 1907 ("discrimination against out-of-state goods").

[2]     The same conclusion follows a fortiori for facially neutral limitations on the number of retail licenses that can be held, because those restrictions -- which apply equally to residents and nonresidents -- would be subject to a lower level of Commerce Clause scrutiny in any event.  See Pike v. Bruce Church, 397 U.S. 137, 142 (1970); Defendants' Memorandum in Support of Motion to Dismiss p. 14; cf. Mass. Food Assn. v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 563 (1st Cir. 1999) ("The state statute limiting retail liquor outlets looks like a garden-variety act of local legislation limiting the number of licenses that the state will grant").

failure to deny or rebut the dissent's repeated characterization of that language. The four dissenting Justices are unequivocal as to what they view the majority as having ruled:

> Private licensing schemes discriminate[ ] as well, often by requiring in-state residency or physical presence as a condition of obtaining licenses. Even today, the requirement that liquor pass through a licensed in-state wholesaler is a core component of the three-tier system. As the Court concedes, each of these schemes is within the ambit of the Twenty-first Amendment, even though each discriminates against out-of-state interests. Ante, at 1892, 1904-05.

Granholm, 125 S. Ct. at 1921-22 (Thomas, J., dissenting); accord id. at 1923 (Thomas, J., dissenting) ("The Court . . . concedes that a State could have a discriminatory licensing or monopoly scheme. Ante, at 1904-05."). The dissent then goes on to assert that "[t]he majority's reliance upon the difference between discrimination against manufacturers (and therefore, their products) and discrimination against wholesalers and retailers is difficult to understand." Id. at 1923 (Thomas, J., dissenting). Justice Thomas elaborates:

> The same justifications for requiring wholesalers and retailers to be in-state businesses equally apply to . . . direct shipment laws. . . . If allowing a state to require all wholesalers and retailers to be in-state companies is a core concern of the Twenty-first Amendment, so is allowing a State to select only in-state manufacturers to ship directly to consumers and therefore act, in effect, as their own wholesalers and retailers.

Id. at 1925 (Thomas, J., dissenting); accord id. at 1924 (Thomas, J., dissenting) ("The Court's concession that the Twenty-first Amendment allowed States to require all liquor to pass through in-state wholesalers and retailers shows that States may also have direct-shipment laws that discriminate against out-of-state wineries").

Despite this repeated and rather sharp critique of its reasoning, the majority never responds. See Granholm, 125 S. Ct. at 1897-1907. What is more important for the present case, however, is that the majority also at no point disputes that it has, indeed, "conceded" that States can continue to discriminate against out-of-state wholesalers and retailers, even if they are now more constrained in the actions they can take against nonresident producers. The majority would be hard pressed to contest this, because the previously quoted language at pages 1904-05 of its

opinion leaves no doubt that that was in fact what it was doing.[3]  The net result of Granholm is that a clear differentiation now exists between producers on the one hand and wholesalers and retailers on the other, with the precise rationale for the distinction apparently to await another day.  The Twenty-first Amendment thus continues to immunize state regulation of liquor retailers from Commerce Clause challenge, and this Court should accordingly dismiss the Commerce Clause claims in Count V of the Complaint.

By their attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2084
pierce.cray@ago.state.ma.us

Dated:   June 28, 2005

---

[3]  In particular, there is no other plausible explanation for the Granholm majority's quotation (with an approving "see also" citation signal) of the language from Justice Scalia's concurrence in North Dakota that "'[t]he Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler.'"  Granholm, 125 S. Ct. at 1905 (quoting North Dakota, 495 U.S. at 447 (Scalia, J., concurring in judgment)).  Justice Scalia is among the five-Justice majority in Granholm.