UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

PEOPLES SUPER LIQUOR STORES, INC., <u>et al.</u>,        )
                                                         )
        Plaintiffs,                                      )
                                                         )
        v.                                               )          CIVIL ACTION NO.
                                                         )          04-12219 - PBS
EDDIE J. JENKINS, in his capacity as Chairman            )
of the Alcoholic Beverages Control Commission, <u>et al.</u>,  )
                                                         )
        Defendants.                                      )
_____         )

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM
(RE FIRST CIRCUIT'S <u>WINE & SPIRITS</u> DECISION)
IN SUPPORT OF MOTION TO DISMISS**

Pursuant to the Court's Order of August 15, 2005, the defendants submit this
Supplemental Memorandum addressing the impact of the First Circuit's decision in <u>Wine and
Spirits Retailers, Inc. v. Rhode Island</u>, 418 F.3d 36 (1st Cir. 2005) ("<u>W & S</u>") on Defendants'
Motion to Dismiss. Two of the three plaintiffs here were the plaintiffs in <u>W & S</u>. As elaborated
upon below, the decision confirms that the free speech claim in Count I of the First Amended
Complaint ("Complaint"), the free association claim in Count II, and the equal protection claim
in Count IV all fail to state a claim and hence warrant dismissal.[1]

_____

[1]        This is the second supplemental memorandum that the defendants have filed since
the May 4 argument on the Motion To Dismiss. On June 28, the defendants submitted a
memorandum explaining why <u>Granholm v. Heald</u>, 125 S.Ct. 1885 (2005) disposes of Count V's
Commerce Clause claims on Twenty-First Amendment grounds. <u>See</u> Defendants' Supplemental
Memorandum (Re Supreme Court's <u>Granholm</u> Decision) in Support of Motion to Dismiss.
While <u>W & S</u> did not involve a Commerce Clause claim and hence did not directly address
<u>Granholm</u>, the First Circuit twice used language consistent with the Supreme Court's
longstanding rule, reaffirmed in <u>Granholm</u>, that "[t]he Twenty-First Amendment grants the States
virtually complete control over . . . how to structure the liquor distribution system" at the
wholesale and retail levels. <u>Granholm</u>, 125 S.Ct. at 1905. The First Circuit thus explicitly
referenced states' "power under the Twenty-First Amendment to regulate commercial
transactions involving liquor and the organizational structure of the market in which such

I.      RELEVANT BACKGROUND:  THE MASSACHUSETTS STATUTE, THE
        PLAINTIFFS' CLAIMS, AND THE RHODE ISLAND STATUTES.

A brief review of the Massachusetts statute under challenge here, the plaintiffs' evolving

claims regarding it, and the Rhode Island laws at issue in W & S places the First Circuit's

decision in proper context.  Counts I-II and IV of the Complaint seek a facial invalidation of the

2004 amendment to Mass. G.L. c. 138, § 15 on free speech, free association, and equal protection

grounds.  Complaint ¶¶ 17-18, 21.  As amended, Section 15 provides in relevant part:

> No person . . . shall . . . participate in decisions regarding the purchasing of
> alcoholic beverages or the purchasing of insurance or accounting or bookkeeping
> services, or receive any percentage or fee derived from gross revenues in
> exchange for management assistance, or participate in any other action designed
> to effect common results of more than three licensees under this section . . . .

Mass. G.L. c. 138, § 15 (as amended through Mass. St. 2004, c. 149, § 428).  When the

defendants moved to dismiss these facial claims, the plaintiffs changed tack and contended that

they "challenge the amended statute as it is applied to them, not on its face."  Opposition to

Defendants' Motion to Dismiss ("Opposition") p. 7.[2]  Significantly, the plaintiffs have disavowed

engaging in any activities specifically affected by the amendment.  Id. p. 9 ("W&SR does not

engage in the purchase of alcohol, or in the purchases of business services, and do[es] not

provide joint management services").  They instead contend that Section 15 constrains them from

engaging in three other activities not specifically referenced in the statute:  entering into franchise

relationships with more than three Massachusetts licensees, providing "management and

marketing advice" to more than three licensees, and engaging in joint retail advertising with more

than three licensees.  See, e.g., id. pp. 7-9.

---

transactions take place."  W & S, 418 F.3d at 51.  It later reiterated "the State's historic right to
regulate market forces in the retail liquor industry."  Id. at 53.

[2]      The plaintiffs cite no language in the Complaint to support this change of heart,
undoubtedly because no such language exists.  Their pleading by its terms seeks "[p]ermanently
[to] enjoin the defendants from enforcing Chapter 138, § 15, as amended," Complaint p. 6,
Prayer G,  and indeed contends that "[t]he elements of the amendment to Chapter 138, § 15 are
not separable" (so that, as a result, the entire amendment must be struck if only one provision is
invalid).  Id. ¶ 16.  That is an unmistakably facial attack.

As a threshold matter, the defendants disagree that Section 15 in fact prohibits all of the conduct that the plaintiffs claim it does.  For example, and as stressed at the May 4 hearing, the defendants' position is that the statute does not erect a <u>per se</u> bar to franchising more than three Massachusetts licensees.[3]  Similarly, Section 15 does not reach joint advertising agreements among independent retail licensees at all, because that is a subject directly addressed by a separate statute not at issue in this case, Mass. G.L. c. 138, § 24.[4]  The defendants are the Massachusetts officials charged with administering Chapter 138, and deference should be given to their interpretation of the state statute they enforce.  <u>See</u>, <u>e.g.</u>, <u>Pharmaceutical Research and Mfrs. of America v. Concannon</u>, 249 F.3d 66, 75 (1st Cir. 2001) ("As the [Maine] Department [of Human Services] is charged with administering the Maine Rx Program, we owe deference to its interpretation of the Act "); <u>Fireside Nissan, Inc. v. Fanning</u>, 30 F.3d 206, 212 (1st Cir. 1994) ("state regulatory officials have interpreted the state's new dealership statute as applying only to in-state dealers, an interpretation that deserves some measure of deference").

In sharp contrast, the Rhode Island retail licensing statutes at issue in <u>W & S</u> <u>do</u> specifically prohibit both retail liquor franchises, R.I. Gen. Laws § 3-5-11.1, and joint advertising by retail licensees, <u>id</u>. § 3-5-11(b)(1)(iii).[5]  The Rhode Island laws also go farther than their Massachusetts counterpart in proscribing various joint actions by even two licensees (while

---

[3]     It is indeed undisputed that other entities currently have franchise relationships with more than three Massachusetts license holders.

[4]     Section 24 generally empowers the ABCC to "make regulations . . . regulating all advertising of alcoholic beverages," but specifically <u>removes</u> from the Commission's authority "advertising wherein licensees jointly or cooperatively advertise product prices; provided, however, that the number of licensees participating in any such advertisement shall not exceed seven . . . ."  <u>Id</u>.  The statute thus explicitly authorizes (by removing the Commission's ability to regulate) joint advertising by seven or fewer independent retail licensees.  Section 15 obviously cannot be construed to prohibit what Section 24 specifically approves.

[5]     Rhode Island also bans "[c]oordinated or common planning or implementation of marketing strategies," <u>id</u>. § 3-5-11(b)(1)(iv), a restriction that comes closer to what Section 15 prohibits (when engaged in by more than three Massachusetts licensees).  As set forth in Section II <u>infra</u>, however, <u>W & S</u> holds that such a statute does <u>not</u> constitute a prohibition on providing marketing advice (as the plaintiffs contended there and maintain here).  <u>W & S</u>, 418 F.3d at 47-48.

Section 15 comes into effect only when four or more licensees are involved).   In short, the
Rhode Island statutes are considerably stricter than those at issue here, but the First Circuit still
rejected First Amendment and equal protection challenges to them.  W & S, 418 F.3d at 46-54.
Because the arguments rebuffed in W & S are largely identical to those pressed by the plaintiffs
now, the First Circuit's ruling dictates dismissal of the First Amendment and equal protection
claims in Counts I, II, and IV.

I.      W & S DISPOSES OF THE PLAINTIFFS' FREE SPEECH CONTENTIONS.

        The plaintiffs' principal First Amendment argument is that the amended Section 15
violates the Free Speech Clause because it "prohibits a specific type of speech -- paid marketing
and management advice."   Opposition p. 14; see generally id. pp. 9-17.  This was the primary
First Amendment claim in W & S as well.  W & S, 418 F.3d at 47-48, 51-54 & n. 5.  The First
Circuit rejected the argument for two reasons, id., both of which apply with equal force here.

        First, the First Circuit held that "[t]he plain, hard fact is that [the Rhode Island law]
simply does not prohibit the communication of advice between a franchisor and the holders of
[retail off-premises] liquor licenses."  W & S, 418 F.3d at 47.  As is the case with Section 15,
"nothing in the [Rhode Island] statute prevents W & S from selling or otherwise communicating
its recipe for the operation of a successful package store to a . . . license holder" -- i.e., neither
W & S nor the licensee will violate any law by engaging in that simple act of communication
itself, whether or not for a fee.  Id.  Instead, "W & S's real complaint is that [the Rhode Island
statute, like Section 15] will have the incidental effect of suppressing or eliminating the market
demand for the particular type of advice that W & S offers" by prohibiting licensees from
engaging in certain conduct that may be recommended in the advice.  Id.  This raises no free
speech issues, however, because "the First Amendment does not guarantee that speech will be
profitable to the speaker or desirable to its intended audience," just as it "does not safeguard
against changes that render previously profitable information valueless."  Id. at 47-48.

        Second, even if one were to assume that the challenged laws "did in fact impede
communications between W & S and the holders of [retail off-premises] liquor licenses," a free
speech issue still would not arise because "otherwise valid regulation of commercial interactions

between business entities does not offend the First Amendment merely because such interactions have a communicative component." <u>W & S</u>, 418 F.3d at 53 n. 5.[6]  The First Circuit left no doubt about its ruling:

> W & S labors to characterize its concerted business activities as speech . . . protected by the First Amendment.  That effort fails.
>
> Business entities have no First Amendment right to combine operations or coordinate market activities for the purpose of obtaining a greater market share for each participant.  The fact that communication serves as the primary instrument of conducting business among separate enterprises does not alter this conclusion.

<u>W & S</u>, 418 F.3d at 51 (citing <u>Giboney v. Empire Storage & Ice Co.</u>, 336 U.S. 490, 502 (1949)).[7] Analogizing Rhode Island's prohibition of retail liquor franchising (and any resulting ancillary restriction on communication) to "an antitrust law," the <u>W & S</u> Court stressed that "[w]hile the State cannot regulate the right of speakers to band together to convey a common message in the marketplace of ideas, it most assuredly can exercise control over the efforts of market players to exploit the principle of strength in numbers in the marketplace of goods." <u>Id</u>. at 51-52.  As a result, "the mere fact that the joint activities that define the business relationship between the franchisor and its franchisees have some communicative component cannot, in and of itself, establish an entitlement to the prophylaxis of the First Amendment." <u>Id</u>. at 53.

In the course of its free speech rulings, the <u>W & S</u> Court also rejected two contentions advanced on an alternative basis by the plaintiffs here.  <u>See</u> Opposition pp. 12 n. 5, 15-17.  The First Circuit thus held that "[t]he provision of advertising and licensing services is not speech that proposes a commercial transaction and therefore does not constitute commercial speech." <u>W & S</u>, 418 F.3d at 49.  While this ruling specifically addresses "advertising and licensing services," <u>id</u>., its reasoning applies with equal logic to the provision of "paid marketing and

---

[6]     While the First Circuit developed this second ruling in the course of resolving the free association claim, <u>id</u>. at 50-54; <u>see</u> Section III <u>infra</u>, the just-quoted footnote is clear that the ruling also applies to the free speech claim.  <u>Id</u>. at 53 n. 5 (free association ruling "would apply with equal force" to free speech claim).

[7]     This echoes the argument made at pp. 4-5 of Defendants' Memorandum in Support of Motion to Dismiss (also citing <u>Giboney</u>).

management advice" that forms the basis of the plaintiffs' main free speech claim here.  <u>See</u> Opposition p. 17.[8]  The First Circuit similarly rebuffed the claim that providing advertising and licensing services constitutes conduct that "itself can be said to convey a particularized message and, thus, be entitled to protection as symbolic speech."  <u>W & S</u>, 418 F.3d at 49 (finding <u>United States v. O'Brien</u>, 391 U.S. 367, 376-77 (1968) to be inapposite).  As Judge Selya explained, "W & S has offered no plausible argument as to why the provision of advertising services is an inherently expressive activity" along the lines envisioned by <u>O'Brien</u>.  <u>Id</u>.[9]  This ruling's reasoning also applies with equal force to paid marketing and management advice, and the First Circuit has clearly disposed of any free speech claim based on a "marketing and management advice" theory.

The plaintiffs also assert a less developed free speech claim regarding "joint advertising." Opposition pp. 10-11, 13.  Their factual allegations appear to be that the plaintiff Wine & Spirits Retailers, Inc. ("W & S") provides "advertising and promotional services" to Massachusetts franchisees, which then use these services to "advertis[e] under a common name, Douglas Wine & Spirits, and engag[e] in joint advertising."  <u>Id</u>. at 6, 9-10.  However, <u>W & S</u> squarely rejected a joint advertising claim based on the centralized "advertising services" allegedly provided by W & S.  <u>W & S</u>, 418 F.3d at 48-49 ("The only question properly before us is . . . whether the [Rhode Island statute's] joint advertising and common naming restrictions infringe on any speech or expressive conduct of W & S that is protected by the First Amendment.  We answer that question in the negative").   While the First Circuit did not reach (for lack of standing) any claims based on joint advertising among the franchisees themselves, <u>id</u>. at 49-50, Section 15 does not in

---

[8]        Ironically, the plaintiffs <u>agree</u> that "[p]roviding paid marketing and management advice is not commercial speech."  Opposition p. 12.  They press their commercial speech argument only as a fallback to their principal claim, which is that such advice constitutes "noncommercial" (<u>i.e.</u>, pure) speech and "therefore is entitled to the full protection of the First Amendment," rather than the more limited protection given commercial speech.  <u>Id</u>. pp. 12, 15-17.  For the reasons set forth <u>supra</u>, the First Circuit resoundingly rejected that primary, "pure speech" claim.  <u>W & S</u>, 418 F.3d at 47-48, 51-54 & n. 5.

[9]        The plaintiffs again <u>agree</u> with this conclusion, invoking <u>O'Brien</u> only as a fallback contention.  Opposition pp. 10-12 & n. 5.

fact reach joint advertising agreements among otherwise independent licensees, such as agreements to share the costs for a common advertisement. As explained in Section I supra, such agreements are governed by Mass. G.L. c. 138, § 24, which actually exempts them from regulation when the number of participating licensees is seven or fewer. The essence of what Section 15 prohibits is thus not joint advertising but instead effective economic control of more than three licensees by some centralizing entity such as W & S (i.e., in the statute's terms, "action designed to effect common results of more than three licensees"). W & S held that any such activities by W & S enjoy no First Amendment protection, W & S, 418 F.3d at 48-49, and its ruling merits full application here.

## II.    W & S ALSO PRECLUDES THE PLAINTIFFS' FREE ASSOCIATION CLAIMS.

The plaintiffs separately contend that Section 15 violates their First Amendment rights to freedom of association. Opposition pp. 17-20. Asserting that "[t]he franchisees of W&S[ ] associate with W&S[ ] so that they can benefit from the marketing and management advice provided by W&S[ ]," which they characterize as "speech," id. p. 20, the plaintiffs maintain that Section 15 wrongly prohibits this association. Id. pp. 17-20. This claim suffers from the threshold flaw that, as described in Section I supra, the statute does not in fact effect a per se prohibition on franchising more than three franchisees. However, even if one were to assume for the sake of argument that Section 15 did prohibit such franchising (as the Rhode Island statute unequivocally does), the plaintiffs face the further problem that they made precisely the same free association claim in W & S, and the First Circuit squarely rejected it. W & S, 418 F.3d at 50-53.

In W & S, as here, the plaintiffs argued that "the challenged statutes, by directly and indirectly prohibiting the owners of [retail] liquor licenses from engaging in franchise relationships, impinge on its First Amendment right to associate with its franchisees for the purposes of joint advertising and development of common management and marketing strategies." W & S, 418 F.3d at 50. The First Circuit, however, was "not convinced." Id. As Judge Selya explained, "the right to expressive association does not confer a generalized freedom for individuals and entities to engage in activity that is otherwise regulable." Id. The right

instead protects only "concerted action that [has] an <u>expressive purpose</u>," with the result that to "prevail on its associational claim" W & S "must demonstrate that [the challenged statute] unduly curtail[s] its associational right to engage in activities protected by the First Amendment." <u>Id</u>. (emphasis added).  As described at length in Section II <u>supra</u>, the First Circuit found that W & S's franchise relationships and related provision of management and marketing advice did <u>not</u> constitute "speech or expressive conduct protected by the First Amendment," a finding that foreclosed any free association claim.  <u>Id</u>. at 51.[10]  The First Circuit's holding is conclusive here and dictates dismissal of Count II's free association claim as well.

IV.    <u>W & S</u> **SIMILARLY PROVIDES FURTHER REASON FOR DISMISSING THE PLAINTIFFS' EQUAL PROTECTION CLAIM.**

The plaintiffs additionally contend that the amendment to Section 15 violates the Equal Protection Clause by (1) prohibiting a franchisor from franchising more than three off-premises retail liquor stores but (2) not similarly prohibiting such franchising for <u>on</u>-premises retail establishments (such as restaurants).  Opposition pp. 26-30.  As set forth in Section I <u>supra</u>, this claim proceeds on a faulty premise because Section 15 does not in fact impose a <u>per se</u> ban on franchising more than three otherwise independent retail franchisees.  However, even if one were to assume <u>arguendo</u> that the statute did have that effect, <u>W & S</u> shows that an equal protection claim still would not lie.

---

[10]    The First Circuit specifically rejected the applicability of <u>NAACP v. Clairborne Hardware Co.</u>, 458 U.S. 886 (1982), a decision stressed in the plaintiffs' Opposition.  <u>W & S</u>, 418 F.3d at 52-53; <u>see</u> Opposition pp. 19-20.  As Judge Selya explained, <u>Clairborne Hardware</u> involved a "politically motivated boycott designed to force governmental and economic change," circumstances obviously not present here.  <u>Id</u>. at 52 (quoting <u>Clairborne Hardware</u>, 458 U.S. at 914).  The First Circuit properly recognized that the more analogous case is <u>FTC v. Super. Ct. Trial Lawyers Ass'n</u>, 439 U.S. 411 (1990), where the Supreme Court refused to imbue a lawyers' boycott with First Amendment overtones because "the undenied objective of [the] boycott was an economic advantage for those who agreed to participate."  <u>W & S</u>, 418 F.3d at 52 (quoting <u>Trial Lawyers</u>, 493 U.S. at 426).  Given <u>Trial Lawyers</u>, there must be something "uniquely expressive about . . . concerted commercial activity" to bring the First Amendment into play, and "it is nose-on-the-face plain that W & S's commercial conduct exhibits nothing that even the most vivid imagination might deem uniquely expressive."  <u>Id</u>. at 53.

As previously discussed, W & S addresses a Rhode Island statute that unquestionably does prohibit any franchising at all for off-premises retail liquor establishments.  W & S, 418 F.3d at 41 (describing R.I. Gen. Laws § 3-5-11.1).  The First Circuit nevertheless rejected an equal protection claim, for reasons that are directly applicable here.  Id. at 53-54.  Recognizing that the economic statutes before it "neither utilize[d] suspect classifications nor trenche[d] upon fundamental rights," the First Circuit ruled that W & S must "demonstrat[e] that there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals."  Id.; see Defendants' Memorandum in Support of Motion to Dismiss pp. 10-11 (citing other decisions establishing the "fairly [or 'reasonably'] conceivable" standard).   The Court then held that the requisite showing could not be made:

> The legislation at issue is economic in nature. . . . Its purpose, as stated by the Rhode Island General Assembly, is to protect consumer choice and ensure the equitable pricing of retail liquor products. . . . W & S has not explained why, given the unexceptionable goal of maintaining a competitive retail liquor industry, it is irrational for Rhode Island to enact measures aimed at preventing anticompetitive practices by ensuring that holders of [off-premises retail] liquor licenses operate independently.

Id. at 54.  The First Circuit also recognized, with respect to any differentiation between off-premises and on-premises retail licensees, that "[r]egulation must start somewhere" and "'the Legislature must be allowed leeway to approach a perceived problem incrementally."  Id. at 54 n. 7 (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 316 (1993)); see Defendants' Memorandum in Support of Motion to Dismiss p. 11 (quoting cases such as Williamson v. Lee Optical, Inc., 348 U.S. 483, 489 (1955) that similarly allow a legislature to "take one step at a time").  These rulings apply with equal force here and provide further support, in addition to the previously cited decision in Johnson v. Martignetti, 374 Mass. 784, 792-93 (1978), for the dismissal of the equal protection claim in Count IV.

**V.        CONCLUSION**

For both the reasons set forth above and the reasons previously set forth in Defendants'
Memorandum in Support of Motion to Dismiss and Defendants' Supplemental Memorandum
(Re Supreme Court's <u>Granholm</u> Decision) in Support of Motion to Dismiss, the Court should
allow Defendants' Motion to Dismiss.

By their attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2084
pierce.cray@ago.state.ma.us

Dated:   September 23, 2005