UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEOPLES SUPER LIQUOR STORES, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EDDIE J. JENKINS, in his capacity as Chairman ) <br> of the Alcoholic Beverages Control Commission, et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> 04-12219 - PBS |

### DEFENDANTS' REPLY MEMORANDUM
### (RE FIRST CIRCUIT'S WINE & SPIRITS DECISION)
### IN SUPPORT OF MOTION TO DISMISS

Pursuant to the Court's Order of August 15, 2005, the defendants reply to the Supplemental Brief of Plaintiffs Peoples Super Liquor Stores, Inc., et al. ("Plaintiffs' Supplemental Memorandum"), which addresses the impact on Defendants' Motion to Dismiss of Wine and Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005) ("W & S"). The defendants previously have submitted their own Supplemental Memorandum explaining in detail why W & S precludes the free speech claim in Count I of the First Amended Complaint, the free association claim in Count II, and the equal protection claim in Count IV. See Defendants' Supplemental Memorandum (Re First Circuit's Wine & Spirits Decision) in Support of Motion to Dismiss ("Defendants' Supplemental Memorandum").[1] The defendants accordingly limit the

---

[1] The defendants also submitted a June 28, 2005 Supplemental Memorandum explaining why the separate decision of Granholm v. Heald, 125 S.Ct. 1885 (2005) disposes of Count V's Commerce Clause claims on Twenty-First Amendment grounds. See Defendants' Supplemental Memorandum (Re Supreme Court's Granholm Decision) in Support of Motion to Dismiss. The plaintiffs have yet to respond to the defendants' arguments regarding the dispositive effect of Granholm on the Commerce Clause claims, whether in Plaintiffs' Supplemental Brief or otherwise, and the Court should treat the point as conceded.

present Reply Memorandum to the specific arguments made in Plaintiffs' Supplemental Memorandum, which the defendants address in order.

1.   The plaintiffs initially attempt to distinguish W & S on the grounds that the First Circuit "determined . . . that the Rhode Island [statutory] amendments do not prohibit communication of advice between a franchisor and holders of liquor licences" and that "[c]onsequently, no applicable Free Speech analysis was performed." Plaintiffs' Supplemental Memorandum pp. 2-3.  This claim is unavailing, for two separate reasons.  First, the reasoning behind the First Circuit's ruling that the Rhode Island statutes "do not prohibit [the] communication of advice" applies just as strongly to the challenged provisions in Mass. G.L. c. 138, § 15.  See W & S, 418 F.3d at 47-48; Defendants' Supplemental Memorandum p. 4. Neither Rhode Island's law nor the Commonwealth's forbids the "communication of advice" per se; their only arguable impact is to make such communications potentially less profitable, an effect without First Amendment significance.  See id.[2]  Second, the plaintiffs are mistaken in claiming that "no applicable Free Speech analysis was performed." Plaintiffs' Supplemental Memorandum p. 3.  The First Circuit was unequivocal that "[t]he conclusion that otherwise valid regulation of commercial interactions between business entities does not offend the First Amendment merely because such interactions have a communicative component would apply with equal force to our [free speech] analysis in Part V(A)(1), had we found that the relevant sub-paragraphs of [the Rhode Island statute] did in fact impede communications between W & S and the holders of Class A liquor licenses."  W & S, 418 F.3d at 53 n. 5 (emphasis added); see Defendants' Supplemental Memorandum pp. 4-5.

2.   The plaintiffs next maintain that the Alcoholic Beverages Control Commission "has not yet determined" whether "franchising activities are prohibited by the amendment to § 15." Plaintiffs' Supplemental Memorandum p. 3.  While this statement is inaccurate, it is also beside the point, because the construction of a statute (state or federal) is ultimately the province of the Court.  See, e.g., Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 (11th Cir. 2001)

---

[2]   It is thus not just the defendants but also the First Circuit (through its ruling on an indistinguishable Rhode Island statute) that holds the view that Mass. G.L. c. 138, § 15 does not prohibit the communication of advice.  See id.  Its ruling should control here.

("The construction . . . of the statutes in this case involve pure questions of law.").[3]  Here Mass. G.L. c. 138, § 15 says nothing whatsoever about banning franchises, in sharp contrast to the Rhode Island statute at issue in W & S, which does explicitly forbid retail liquor franchising. W & S, 418 F.3d at 43 (discussing (and ultimately upholding) R.I. Gen. Laws § 3-5-11.1).

3. The plaintiffs also note that the First Circuit failed to reach a "commercial speech" challenge to Rhode Island's prohibition of joint advertising by retail liquor licensees, ruling instead that the W & S plaintiffs lacked standing to make such a claim.  Plaintiffs' Supplemental Memorandum pp. 3-4.  While this is true, see W & S, 418 F.3d at 49-50; Defendants' Supplemental Memorandum p. 6, it has no bearing on the present case, where the Massachusetts General Laws are clear that joint advertising among seven or fewer independent retail licensees is lawful in the Commonwealth.  Mass. G.L. c. 138, § 24; see Defendants' Supplemental Memorandum pp. 3 & n. 4, 6-7.  As a result, the plaintiffs' joint-advertising "argument erects, and then attacks, a straw man."  Rodi v. Southern New England School of Law, 389 F.3d 5, 16 (1st Cir. 2004).  That is not a basis for avoiding dismissal.

4. The plaintiffs next contend that their equal protection claim in W & S is distinguishable as involving deferential "rational basis" review, while here "strict scrutiny"

---

[3] Given the purely legal nature of statutory construction, the Court need not reach any factual issue regarding the subjects that were to be addressed at the Commission's October 5, 2005 licensing hearings, see Plaintiffs' Supplemental Memorandum p. 3, and the defendants specifically request that the Court not do so in the context of the present motion to dismiss.  Lest acquiescence be presumed from silence, however, the defendants are compelled to note their disagreement with the plaintiffs' assertion that the Commission had listed "the topic of" the October 5 hearings as being whether "the granting of a license to a franchisee 'would violate C138 § 15.'"  Id.  As previously emphasized, the Commission's interpretation of Section 15 is that the grant of more than three Massachusetts franchises by a single franchisor does not violate the statute per se.  While the plaintiffs cite a document authored by a Commission investigator as being supposedly to the contrary, see id., its actual text is a "recommend[ation] that the Commission hold an informational hearing to determine if the granting of this license application would violate C138 § 15 (as amended 2004) by resulting in the existence of a combination of persons holding an interest in more than three licenses in the Commonwealth of Massachusetts." This language does not recommend resolution of an issue of law regarding franchising; it instead contemplates a fact-bound inquiry into whether granting a license to a specific applicant, given all of the surrounding circumstances, would cause a violation of Section 15's general rule prohibiting direct/indirect control of more than three licensees.

supposedly should apply because "plaintiffs' fundamental First Amendment rights of free speech and free association are implicated." Plaintiffs' Supplemental Memorandum p. 4. They neglect to note, however, that W & S also held that the very same First Amendment arguments that the plaintiffs make here are themselves without merit. W & S, 418 F.3d at 46-53; see Defendants' Supplemental Memorandum pp. 4-7.[4] As a result, the First Circuit specifically rejected the First Amendment as a basis for equal protection "strict scrutiny":

> To be sure, W & S contends that the challenged statutes burden its fundamental rights of speech and association. We dismiss that contention out of hand. See supra Part V [418 F.3d at 46-53] (establishing that the challenged statutes do not impermissibly impinge upon W & S's First Amendment rights).

W & S, 418 F.3d at 54 n. 6. This ruling applies with full force in the present case.

5.      The plaintiffs finally assert that even if rational basis review applies to their equal protection claims, they "have stated that they intend to prove facts at trial demonstrating that there is no rational basis for Section 15." Plaintiffs' Supplemental Memorandum pp. 4-5. This misconceives the nature of rational basis review, as two Circuit Court decisions issued earlier this year make clear. The Tenth Circuit is unequivocal that fact finding has no role under the rational basis standard:

> According to [the appellant], the district court erred in dismissing this [equal protection] claim at the summary judgment stage because, in his view, "the analysis of the reasonable relationship of the regulation to the means is a factual question, not a legal issue." . . . . [The appellant] is mistaken. Under rational basis review, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." FCC v. Beach Communications, 508 U.S. 307, 315 . . . [(1993)].

Schutz v. Thorne, 415 F.3d 1128, 1135-36 (10th Cir. 2005). The Eighth Circuit concurs:

> We must recognize that "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." FCC v. Beach Communications, Inc., 508 U.S. [at 315]. Thus, because "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999) (quoting Beach

---

[4]     The one exception is the plaintiffs' retail joint advertising claim, which the Court need not reach for the separate reason set forth in Paragraph 3 supra.

> Communications, 508 U.S. at 313 . . . . Accordingly, the district court was within its discretion to formulate a conceivable basis for the government action at issue in this case. See Cuno v. DaimlerChrysler, Inc., 386 F.3d 738, 748 (6th Cir. 2004) (deciding rational basis on 12(b)(6) motion); see also Carter v. Arkansas, 392 F.3d 965, 968 (8th Cir. 2004) (explaining that a district court may conduct a rational basis review on a motion to dismiss).

Gilmore v. County of Douglas, 406 F.3d 935, 939-40 (8th Cir. 2005); accord RUI One Corp. v. Berkeley, 371 F.3d 1137, 1155 (9th Cir. 2004); University Professionals of Illinois v. Edgar, 114 F.3d 665, 667 (7th Cir. 1997). In the present matter, both the First Circuit and the Massachusetts Supreme Judicial Court have already "formulated . . . conceivable bas[e]s," Gilmore, 406 F.3d at 940, that would apply to the law in question. W & S, 418 F.3d at 54; Johnson v. Martignetti, 374 Mass. 784, 792-93 (1978); see Defendants' Supplemental Memorandum p. 9; Defendants' Memorandum in Support of Motion to Dismiss pp. 11-12. These decisions are controlling and readily dispose of the plaintiffs' equal protection claim.

## CONCLUSION

For both the reasons set forth above and those previously set forth in Defendants' Supplemental Memorandum, Defendants' Memorandum in Support of Motion to Dismiss, and Defendants' Supplemental Memorandum (Re Supreme Court's Granholm Decision) in Support of Motion to Dismiss, the Court should allow Defendants' Motion to Dismiss.

By their attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2084
pierce.cray@ago.state.ma.us

Dated:  October 14, 2005