UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEOPLES SUPER LIQUOR STORES, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> EDDIE J. JENKINS, in his capacity as Chairman ) <br> of the Alcoholic Beverages Control Commission, et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION NO. <br> 04-12219 - PBS |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM (RE ABCC'S
TANZA LIQUORS DECISION AND FIRST CIRCUIT'S ROWE DECISION)
IN SUPPORT OF MOTION TO DISMISS**

As directed by the Court at the November 7, 2005 hearing on Defendants' Motion to Dismiss, the defendants submit this Supplemental Memorandum addressing, in Section I, the impact on the case of the Alcoholic Beverage Control Commission's October 5, 2005 license application decision ("Commission Decision") (copy attached as Exhibit A). The defendants also address, in Section II, a November 8, 2005 First Circuit decision that bears directly on the merits of three of the plaintiffs' claims. Pharm. Care Mgmt. Ass'n v. Rowe, ___ F.3d ___, 2005 WL 2981063 (1st Cir. 2005) ("Rowe").[1]

**I.   THE COMMISSION DECISION RAISES NUMEROUS JURISDICTIONAL
ISSUES REGARDING THE PLAINTIFFS' CLAIMS.**

The Commission Decision "d[id] not approve the [license] application" and instead "return[ed] the application without action . . . to the local licensing authority." Commission Decision p. 8. In its ruling, the Commission was explicit that "[w]e do not hold, nor have we

---

[1] The Court requested that any discussion of the Commission Decision not exceed five pages, and the defendants have limited the length of Section I accordingly. Section II separately addresses Rowe, a decision not yet in existence as of the November 7 hearing.

ever held, that § 15 'package store' franchises are illegal per se." Id. p. 3.  Instead, it "review[ed] whether the business operations between John Haronian and Shirley A. Santoro result in a combination of persons holding a direct or indirect beneficial interest in more than 3 § 15 licenses in the Commonwealth." Id.  This is a "'question of fact which may be inferred from . . . circumstantial evidence,'" id. p. 5 (quoting In Re Patriot Spirits, Inc. (Commission Decision dated May 13, 2003)),  and the Commission "will look to the totality of circumstances in each particular relationship." Id. p. 7.  Here the Commission cited specific facts in finding that the prohibited "beneficial interest" in a fourth license did exist:

> In this case, the Commission cannot ignore the fact that John Haronian operates 3 retail package stores and has a daughter, Shirley Santoro, who purchased DW&S with the assistance of her father in the background.  Mr. Haronian now presents to this Commission a Franchise Agreement, which authorizes an initial fee of $ 10,000, a Mark fee of $ 36,000 (yearly), an advertising fee of 1.2 % of gross sales, complete disclosure of financial records, unbridled access to corporate financial records, [and] the right to prior approval and payment of a fee for the transfer of any interest.  With these facts, this particular agreement has created a beneficial interest in the franchisor.

Id.; accord id. p. 6 (also citing as evidence that Mr. "Haronian . . . advertises, promotes, buys joint insurance, [and] combines managers and accounting").

While this generalized "beneficial interest" ruling disposed of the license application in its entirety, the Commission went on to discuss the status of joint advertising among retail licensees under current Massachusetts law:

> The Commission reads the most recent amendment to section 15 in conjunction with the pre-existing language of M.G.L. c. 138, § 24 that was not amended. Section 24 permits licensees to advertise product prices jointly or cooperatively provided not more than seven licensees participate in the joint advertising activity. The Commission may read these statutes together to prohibit third parties and section 15 licensees from receiving or paying a fee above the actual cost of publication of the joint advertisement conducted in compliance with section 24 of chapter 138.  But this [retail license] application did not present this question to the Commission for resolution.

Commission Decision p. 7.  The Commission thus reaffirmed its view that "Section 15 does not reach joint advertising agreements among independent retail licensees," Defendants' Supplemental Memorandum (Re First Circuit's Wine & Spirits Decision) in Support of Motion

to Dismiss p. 3, because independent licensees by definition would not agree to a fee above cost (which instead would provide factual evidence of a beneficial interest and a <u>lack</u> of independence, as the Commission found to be the case here).  Commission Decision pp. 6-7.  The Commission similarly cited "joint insurance" only as factual evidence of a beneficial interest, <u>id.</u> p. 6, and it did not cite Mr. Haronian's alleged provision of "management advice" as a factor at all, <u>id</u>. pp. 6-7.

In short, the Commission did not read Section 15 to impose the broad prohibitions that the plaintiffs assert, such as <u>per</u> <u>se</u> bans on franchises, "management advice," or joint advertising.  It instead made a fact-specific (and highly reasonable) determination that under the particular circumstances of this case a beneficial interest in more than three licenses exists.  Commission Decision pp. 6-7.  This precludes subject matter jurisdiction over all claims based on the supposed impact of the 2004 amendment to Section 15 (Counts I-IV and VI), because the plaintiffs lack standing to pursue constitutional challenges to supposed statutory prohibitions when the Commission's decision rested on an entirely different basis.  It is fundamental that to establish Article III standing a plaintiff "bears the burden of showing that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, <u>and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision</u>."  <u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 67 (1st Cir. 2003) (emphasis added); <u>accord</u> <u>Donahue v. Boston</u>, 304 F.3d 110, 115 (1st Cir. 2002) ("the plaintiff must show a causal connection between the asserted injury and the challenged action").  The plaintiffs cannot satisfy the emphasized requirements of causation and redressability when the Commission's reason for failing to approve the license was for a ground (beneficial interest) that was different from the supposed provisions of Section 15 that are allegedly illegal.[2]

---

[2]   See, e.g., <u>Howard v. N.J. Dep't of Civ. Serv.</u>, 667 F.2d 1099, 1101-02 (3rd Cir. 1981) (job applicant plaintiffs fail to satisfy causation and redressability requirements and lack standing to challenge physical agility test when they "were refused employment because they failed the initial written examination, not because they failed the . . . agility test"); <u>Fuller v. Norton</u>, 86 F.3d 1016, 1027 (10th Cir. 1996) ("Even if we were to strike the challenged provision, the [plaintiff] still would not fulfill the remaining requirements of the Colorado statute, and could not benefit from our decision"); <u>Joelson v. U.S.</u>, 86 F.3d 1413, 1422-23 (6th Cir. 1996); <u>GBA Assoc. v. Gen. Serv. Admin.</u>, 32 F.3d 898, 900-01 (4th Cir. 1994).

Any claims based upon the supposed per se statutory bans on franchises, "management advice," or joint advertising suffer from an even more fundamental justiciability problem than standing: as the defendants have previously maintained, Section 15 does not actually contain the alleged across-the-board prohibitions, and the plaintiffs are not in fact constrained in the manner they assert. See, e.g., Defendants' Supplemental Memorandum (Re First Circuit's Wine & Spirits Decision) in Support of Motion to Dismiss pp. 2-3. The defendants thus agree with the plaintiffs (albeit as a matter of statutory construction rather than constitutional imperative) that the plaintiffs are not legally precluded from engaging in any of the three cited activities per se (i.e., in all instances). As a result, there simply is no "actual case[ ] or controvers[y]" between the parties regarding those claims, McInnis-Misenor, 319 F.3d at 67, under any reasonable reading of that phrase. See id. ("Federal courts can only decide a live grievance").[3]

An additional (and similarly antecedent) Article III barrier exists for any claims based on Section 15's supposed per se ban on joint insurance, such as the ERISA preemption claim in Count VI. The Commission Decision did not address this aspect of Section 15, and the Commission has yet to take a formal position, articulated in a decision or regulation, regarding whether the 2004 amendment in fact imposes a per se prohibition on four or more licensees jointly insuring in all instances.[4] The ripeness doctrine accordingly precludes plaintiffs'

---

[3] The "franchising," "management advice," and "joint advertising" claims thus face two related but distinct Article III hurdles. First, there is no "actual . . . controversy" between the parties as to whether these activities are legally banned by Section 15 in all instances for multiple licensees, because the defendants agree that there is no lawful prohibition on engaging in them per se. Second, even if the defendants were to take the view that Section 15 did impose a per se ban in these areas, the plaintiffs still would lack standing to pursue the issues, because the Commission declined to approve the requested fourth license on a separate ground (beneficial interest/indirect control).

[4] Both the Massachusetts Courts and the Commission have long held that "joint activities" -- including both joint insurance and joint advertising -- can be considered as a piece of circumstantial evidence that, in combination with other facts, can support a finding of beneficial interest/indirect control in a particular case. Commission Decision pp. 3-4 (citing case law); see id. p. 6 (citing such joint activities as one piece of evidence here). Selective use as evidence in particular cases is wholly different from banning the joint activity in all instances, and the plaintiffs have made no argument that such episodic evidentiary usage is itself illegal, let alone the basis for a facial challenge to the statute.

anticipatory claim. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Tex. v. U.S., 523 U.S. 296, 301 (1998); see McInnis-Misenor, 319 F.3d at 70 ("The ripeness doctrine seeks 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). Here there is just such a "contingent future event[ ]" that "may not occur at all" -- the Board ultimately may not construe Section 15 in the manner the plaintiffs fear. See, e.g., Pfizer, Inc. v. Shalala, 182 F.3d 975, 978 (D.C. Cir. 1999) (competitor's claim unripe where "[t]he critical fact remains that the FDA may never approve [a drug company's] application" for a new drug). Any insurance-based claim is accordingly unripe.[5]

## II.  THE FIRST CIRCUIT'S RECENT ROWE DECISION FURTHER UNDERMINES THE PLAINTIFFS' CLAIMS ON THE MERITS.

The First Circuit's November 8 decision in Rowe bears directly, and quite unfavorably, on the merits of three of the plaintiffs' claims. Rowe, 2005 WL 2981063. First, the case reaffirms that "the language of the ERISA preemption provision is not as broad as it seems" and is "still subject to 'the starting presumption that Congress does not intend to supplant state law.'" Rowe, 2005 WL 2981063, at *4 (quoting N.Y. St. Conf. v. Travelers Ins. Co., 514 U.S. 645, 654 (1995)). In particular, "'unless congressional intent to preempt clearly appears, ERISA will not be deemed to supplant state law in areas traditionally regulated by the states,'" a classification that clearly applies to the commercial distribution of alcoholic beverages. Id. (quoting Travelers, 514 U.S. at 661). Second, Rowe is explicit that "[g]iven the absence of a full-scale taking and

---

[5]  Even if the Commission had reached a firm construction of Section 15 in the insurance context, these particular plaintiffs still would lack standing to pursue a preemption claim, because the Commission's licensing decision rested on a separate ground (beneficial interest/indirect control). See fn. 3 and related text supra. In the alternative, the fact that the Massachusetts courts also have yet to construe the 2004 amendment provides a separate and further basis, under the abstention doctrine of R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941), for declining to reach the constitutionally based preemption claim. While the defendants recognize that the Court has expressed a reluctance to abstain on the plaintiffs' First Amendment claims, the preemption challenge arises under the Supremacy Clause, rather than the First Amendment.

presence of a traditional regulatory interest" -- factors again both plainly present here -- "it is enough to defeat the takings claim that no reasonable investment-backed expectation is present at all." Rowe, 2005 WL 2981063, at *17.  As in Rowe, the plaintiffs' supposed assumptions about future operations in their "heavily regulated . . . industry" are "more wishful thinking than reasonable expectations." Id. at *18.  Third, the First Circuit reiterated its reluctance to consider creative extensions of the First Amendment into run-of-the-mill economic regulation like that effected by Section 15.  It thus rejected as "completely without merit" an attempted application of the First Amendment's "compelled speech" doctrine to "routine [but state-required] disclosures of economically significant information designed to forward ordinary regulatory purposes." Id. (adding that "[t]here are literally thousands of similar regulations on the books" and that "[t]he idea that these thousands of routine regulations require an extensive First Amendment analysis is mistaken").

### III.  CONCLUSION

For both the reasons set forth above and those previously asserted in the defendants' other supporting memoranda, the Court should allow Defendants' Motion to Dismiss.

> By their attorneys,
>
> THOMAS F. REILLY
> ATTORNEY GENERAL
>
> /s/ Pierce O. Cray
> Pierce O. Cray, BBO # 104630
> Assistant Attorney General
> Government Bureau
> One Ashburton Place
> Boston, MA 02108
> (617) 727-2200, ext. 3378
> pierce.cray@ago.state.ma.us

Dated:  November 23, 2005