

**Commonwealth of Massachusetts**
*Department of the State Treasurer*
*Alcoholic Beverages Control Commission*
239 Causeway Street
Boston, MA 02114
Telephone: (617) 727-3040
Fax: (617) 727-1258

Timothy P. Cahill
*Treasurer and Receiver General*

Eddie J. Jenkins
*Chairman*

Re:         DW&S – Fall River, Inc.
            dba Tanza Liquors
Premises:   340 Rhode Island Avenue
City/Town:  Fall River, MA 02721
License:    AB-PKG
Heard:      October 5, 2005

## DECISION

An informational hearing was held by the Alcoholic Beverages Control Commission ("ABCC" or "Commission") to determine whether the application of DW&S-Fall River, Inc., dba Tanza Liquors ("DW&S") should be approved or disapproved. DW&S filed an application to be approved to operate as a franchise of "Douglas Wine & Spirits," including use of the business name. The issue at hand is whether the application if approved would result in a combination of persons having a direct or indirect interest in more than three (3) licenses in the Commonwealth contrary to the provisions of M.G.L. Ch.138, §15, as amended in 2004.

### Facts

Shirley A. Santoro is 100% stockholder in DW&S Fall River, Inc., dba Tanza Liquors. Ms. Santoro serves as President, Treasurer and Clerk. Ms. Santoro is the daughter of John Haronian. Mr. Haronian holds a direct or indirect interest in three so-called "package store" licenses in Massachusetts pursuant to M.G.L. c.138, §15 operating under the name of Peoples Super Liquor. These 3 stores of Mr. Haronian are in Fall River, a second in Fairhaven, and a third in New Bedford.

In 1999, John Haronian created 3 separate trusts for his 3 daughters (Lynn Finn, Kathleen Haronian and Shirley Santoro). These trusts became the source of funds for the later purchase of 3 retail stores by the daughters from their trust funds. The K.S.L. trust became a subsequent source of funds for Shirley Santoro's purchase of DW&S – Fall River, Inc., from Tanza Liquors and Judy Tanza. Mr. Haronian testified at the December 8, 2004 Informational Hearing that he was involved with the DW&S transfer as far as informing his daughter of the deal, discussing with his daughter the price, and reviewing the lease. Mr. Haronian stated that his role is only that of an advisor without monetary compensation. With this information, the Commission approved the application of Ms. Santoro's DW&S application since "[i]t takes more than the involvement of others to effect a transfer of a business interest. Implicit is a surrender of control. [citations omitted]." *Griffin's Brant Rock Package Store, Inc. v. Alcoholic Beverages Control Commission,* 12 Mass.App.Ct. 768, 770, 429 N.E.2d 62, 65 (1981).[1]

---

[1] In *Griffin's Brant Rock Package Store*, the Appeals Court acknowledged that while many facts concerning the structure and operation of a business issued an alcoholic beverages license "justifies the commission in having prudent suspicions of more than friendly interests by others, suspicions are an insufficient basis for licensing sanctions." 12 Mass.App.Ct. at 772; 429 N.E.2d at 65.

Mr. Haronian, who stated that he currently has no financial interest in his daughter's business DW&S, now seeks to expand his role to that of franchisor through his corporation Wine & Spirits, Inc., dba Douglas Wine & Spirits, a Rhode Island corporation with DW&S – Fall River, Inc., as his franchisee.

The franchise agreement submitted at the October 5, 2005 hearing before the Commission states that the franchisor "has developed under the name Douglas Wine & Spirits, a distinctive image including a system for the including a system for the establishments operation and marketing of retail stores engaged in the business of selling alcoholic beverages for consumption off the premises and other related items permitted by law." Wherein the franchisor desires to advise third parties in the operation of retail stores. The Franchise preamble further states that the franchisee desires to receive advice and marketing services. What services which will be offered, how much control is exercised by the franchisor and what will be the quid pro quo for these franchise services will be the focus of the Commission review of those issues.

Following a review of the franchise agreement the services or benefits provided under the "agreement" can be separated into 3 categories; A.) services or benefits with no additional fee required; B.) services or benefits with a mandatory fee; C.) option services or benefits with mandatory fees. With respect to franchisor controls there are also mandatory and elective controls. The service or benefits that the franchisee receives as a part of the franchise package is the use of the franchise name, protected territory, sample store specification layout (4.5), and advise as to store interior design (4.7), and computer equipment (4.9), as well as, training and assistance (5.2) and marks (6.2).

There is also a third category of benefits / services which is advertising and promotion fees (6.3), which appears to be an elective service / benefit. The advertising and promotional services furnished by the franchisor are voluntary. Participating franchisee shall pay a monthly advertising and promotional fee equal to one and one fifth percent (1.2) of franchisees total gross receipts .... as used herein the term total gross receipts shall mean and include all cash, credit and gift certificate sales to customers of the franchise less customer refunds.

The franchisor agreement calls for mandatory disclosure of financial records by the franchise (4.11.1) not less than annually and no later than ninety days following the end of the franchisee's fiscal year. Franchisee shall provide franchisor with its annual balance sheet (statement of financial condition) as well as, annual income (profit and loss statement). Franchisee shall provide franchisor with a copy of its federal and state tax returns within thirty days of their submission to the federal and state authorities. The franchisor also maintains the right to audit and inspect records without prior notice (4.13).

Under the Franchise Agreement, franchisor had the right to "prior approval" before the franchise could transfer its interest in the franchise and liquor license (13.2). "As used in this Agreement the term "transfer" shall include the voluntary, involuntary, direct or indirect assignment, sale, division, pledge, grant of a security interest, gift or

other transfer of any interest of Franchisee; (3) any sale of voting stock of Franchise or any security convertible to voting stock of Franchisee; (4) transfer of an interest in Franchisee, this Agreement, the Franchise or the franchised business in a divorce, insolvency, corporate or partnership dissolution proceeding, foreclosure proceeding.... Nothing in this provision prohibits the right of the Franchisee to sell or transfer its assets, provided that no right to the Franchise are transferred without approval." The franchisee is further obligated to pay a transfer fee of 50% of the current "Initial Consulting Fee" if the franchise is not sold to an existing owner.

## Discussion

Chapter 138, §15 as amended July 1, 2004, in pertinent to part, states, "[n]o person, firm, corporation, association, or other combination of persons directly or indirectly or through any agent, employee, stockholder, officer or other person or any subsidiary whatsoever, shall be granted, in the aggregate, more than three such licenses in the commonwealth *or participate in decisions regarding the purchasing of alcoholic beverages or the purchase of insurance or accounting or bookkeeping services or receive any percentage or fee derived from gross revenues in exchange for management assistance, or participate in any other action designed to effect common results of more than 3 licenses under this section.*"[2] As this Commission considers the legal ramifications of the applicant's franchise agreement, we do not hold, nor have we ever held, that §15 "package store" franchises are illegal per se. We are reviewing whether the business operations between John Haronian and Shirley A. Santoro result in a combination of persons holding a direct or indirect beneficial interest in more than 3 §15 licenses in the Commonwealth.

The issue begins as to what is a direct or indirect beneficial interest? In reviewing whether there is a direct or indirect or beneficial interest, the ABCC applies the definition expressed in the case of *Number Three Lounge Inc., v. ABCC*, 7 Mass.App.Ct. 301, 387 N.E.2d 181 (1979). In deciding this issue, the Commission must "pierce labels, look beyond form, and come to grips with the substance of the corporate relationship and the economic realities that are present." *Number Three Lounge*, 7 Mass.App.Ct. at 311; 387 N.E.2d 187.

As stated in *Number Three Lounge*, "stockholders, directors and officers, family relationship, guidance, assistance and financial support and joint activities (emphasis supplied) are relevant criteria to be considered." The court went on to say that "indirect interest means indirect beneficial interest," supra at 312. The Court with respect to the Commission inquiry and charge as stated in Number Three Lounge Inc., supra at 312, "Because of this the licensing authorities have the legitimate right to expect full disclosure of holdings in the notice of substantial indirect as well as direct beneficial interests in an entity which seeks to own a license... so that agencies will be able to properly discharge their obligations of ensuring that the applicant meets the requirements imposed upon a prospective licensee. In *Number Three Lounge Inc.*, the Commission looked beyond the shares of stock and corporate officers, and focused on the equity, pledge of stock, the authority to write checks, hire, interview and fire. The court concluded that the transferee was merely a shell and that an indirect beneficial interest

---

[2] The italicized language was inserted by the Acts of 2004, Chapter 149, Section 428.

3

went unreported. The courts have also reviewed cases concerning "financial backing and support." In *Powers v. Sixty Broadway Inc.* 371 Mass. 296, 300 (1976), the court held "the judge was not bound to accept the intra family transactions at true face value," (at 299). In *Powers*, the defendants principal contention was that a finding of management control was essential to a ruling that M.G.L. Ch.138, §15 was violated. The court concluded, "[c]ommon management is one way of violating §15 but is not the only way. In stockholders, directors, officers, family relationships, guidance, assistance and financial support and joint activities warranted the judge's findings in the present case that there were a "combination of persons." "Combination of Persons" was further defined in *Johnson v. Martignetti*, 374 Mass. 784 at 788. "The phrase combination of persons has a well established common law meaning, both generally and in the context of alcoholic beverages regulations. In general terms, the existence of a combination may be found where two or more persons engage in a mutual action designed to affect a common result."

The ABCC has previously applied the regulatory scheme it is charged with administering. The decision issued *In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003), the ABCC acknowledged that

> [t]he Supreme Judicial Court has summarized the public policy of the Commonwealth regarding the sale of alcoholic beverages and the function of the Commission in administering that public policy when the Court held that "[t]he powers of the States in dealing with the regulation of the sale of intoxicating liquors are very broad. What they may wholly prohibit, they may permit only on terms and conditions prescribed by the Legislature. Supreme Malt Products Co., Inc., v. Alcoholic Beverages Control Commission 334 Mass. ----, 133 N.E.2d 775; Ziffrin, Inc. v. Reeves, 308 U.S. 132, 138-139, 60 S.Ct. 163, 84 L.Ed. 128; Carter v. Virginia, 321 U.S. 131, 137-143, 64 S.Ct. 464, 88 L.Ed. 605. In dealing with a trade, which, because of its great potential evils, can be wholly prohibited, a wide power is given to the Legislature with respect to the delegation of discretionary powers. Particularly in view of the extent to which the policy of c. 138, and the basis for action under it, have been specified, as already indicated, there is no invalid delegation of authority to the commission in leaving to it, as was done in § 15, the power to approve or disapprove applicants for licenses. See Butler v. East Bridgewater, 330 Mass. 33, 36-37, 110 N.E.2d 922." *Connolly v. Alcoholic Beverages Control Commission*, 334 Mass. 613, 619, 138 N.E.2d 131, 135-136 (1956).
> The approval or disapproval of the action of local licensing authorities, that history [Footnote omitted] indicates that the commission was charged with important responsibilities and that it was not to be narrowly restricted in performing them." *Connolly v. Alcoholic Beverages Control Commission*, 334 Mass. 613, 616-617, 138 N.E.2d 131, 133-134 (1956).

*In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 4, para. 18).

In its decision in *Patriot Spirits*, the ABCC has applied the so-called 3-store limit and the parallel limits set in M.G.L. c. 138, § 15 on the number of licenses able to be held

4

in a town (1 such license) and in a city (2 such licenses). The ABCC discussed the applicable analysis as follows.

> In *Johnson v. Martignetti*, 374 Mass. 784, 375 N.E.2d 290 (1978), the Supreme Judicial Court reviewed the language used in G.L. c. 138, § 15 and held that "[t]he phrase 'combination of persons' has a well established common law meaning, both generally and in the context of alcoholic beverage regulation. In general terms, the existence of a combination may be found where two or more persons engage in a mutuality of action designed to effect a common result. See generally Antoine v. Commonwealth Trust Co., 266 Mass. 202, 206, 165 N.E. 12 (1929); Commonwealth v. Dyer, 243 Mass. 472, 488-489, 138 N.E. 296 (1922); Cornellier v. Haverhill Shoe Mfrs. Ass'n, 221 Mass. 554, 559, 562, 109 N.E. 643 (1915); Commonwealth v. Hunt, 4 Met. 111, 121-125 (1842); Black's Law Dictionary 333 (rev. 4th ed. 1968); 1 von Kalinowski, Antitrust Laws and Trade Regulation s 6.01(1) at 6-2 to 6-4 (1975). ). Even more specifically, this court has stated that, in the area of alcoholic beverage regulation, the existence of a "combination of persons" is a question of fact which may be inferred from such circumstantial evidence as: common group insurance policies, bookkeeping offices, employees, and bonus formulas; substantial intercompany dealings; common use of various assets; and a decision making pattern whereby the owner of one business entity has authority to act on behalf of others. See Cleary v. Cardullo's, Inc., 347 Mass. 337, 349, 198 N.E.2d 281 (1964). See also Powers v. Sixty Broadway, Inc., --- Mass. ---, --- [Footnote omitted], 356 N.E.2d 704 (1976). There is thus ample guidance as to proscribed activity in the Legislature's use of the phrase "combination of persons." *Johnson v. Martignetti*, 374 Mass. 784, 788-789, 375 N.E.2d 290, 294-295 (1978).

*In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 5, para. 23).

> The Supreme Judicial Court has also held that "[c]ommon management control is one way of violating s 15, but it is not the only way. Interlocking stockholders, directors and officers, family relationships, guidance, assistance and financial support, and joint activities warranted the judge's finding in the present case that there was a 'combination of persons.'" *Powers v. Sixty Broadway, Inc.*, 371 Mass. 296, 297, 356 N.E.2d 704, 706 (1976). The Supreme Judicial Court also held that a fact-finder "was not bound to accept intra-family transactions at face value or as conducted at arm's-length." *Powers v. Sixty Broadway, Inc.*, 371 Mass. 296, 299, 356 N.E.2d 704, 705 (1976).

*In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 5-6, para. 24).

In *In re: Patriot Spirits*, the ABCC reviewed its prior decisions applying the so-called 3-store limit and the parallel limits set in M.G.L. c. 138, § 15 on the number of licenses able to held be held in a town (1 such license) and in a city (2 such licenses). The ABCC wrote that

5

> [t]he application by Patriot is not the first case in which the Commission has been called upon to apply the principles of *Johnson v. Martignetti* and *Powers v. Sixty Broadway, Inc.* In 1995, among other decisions, the Commission disapproved an application that would result in a combination of persons holding a direct or indirect interest in licenses in excess of the statutory limit set in G.L. c. 138, § 15. *In re: Berkshire Spirits, Inc.*, (ABCC decision dated July 21, 1995). In disapproving the application, the Commission found that the funding source disclosed in the application was not the funding source identified during the hearing before the Commission. The funding source identified in the application did not even make a commitment to the applicant to fund the business that was the subject of the application, that up to the point of the hearing before the Commission the funding source identified in the application had made no agreement to finance the business that was the subject of the application, and that the 2 businesses that together held a direct or indirect interest in licenses in excess of the statutory limit set in G.L. c. 138, § 15 employed the same professionals, i.e., attorney and accountant.

*In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 6, para. 25).

The Commission continued its review of its prior administrative decisions, and further wrote

> In 1990, the Commission found a violation of G.L. c. 138, § 15 by a "husband-wife, father-son interests" in 2 stores within a town. *In re: Downtown Liquors, Inc. dba Willow Street Liquors*, (ABCC decision dated January 30, 1990). In concluding that a violation existed, the Commission expressly found that "both the granting of the [second] license in 1987 by the [local licensing authority] and its approval by this Commission were in error." Only after holding that "[w]e do not find a knowing or long-standing violation of the liquor licensing statute in this case" did the Commission impose a penalty short of revocation, conditioned upon the licensee taking steps in a finite period of time to divest itself and comply with the statutory limit set in G.L. c. 138, § 15.

*In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 6, para. 26).

In deciding whether this particular franchise relationship amounts to a combination of persons, holding a direct or indirect beneficial interest in more than 3 licenses, the Commission finds that the interrelationship between the two persons, father and daughter, and their corporations are clearly defined.

In this case, Shirley Santoro was a bona fide owner and qualified manager. In fact, the ABCC approved her license application in December 2004. But when John Haronian with his existing interest in three licenses advertises, promotes, buys joint insurance, combines managers and accounting, he creates a direct or indirect beneficial interest by taking this control. *Powers v. Sixty Broadway Inc.* 371 Mass. 296, 300 (1976); *Griffin's Brant Rock Package Store, Inc. v. Alcoholic Beverages Control*

6

*Commission,* 12 Mass.App.Ct. 768, 429 N.E.2d 62 (1981); *Number Three Lounge Inc., v. ABCC,* 7 Mass.App.Ct. 301, 387 N.E.2d 181 (1979).

In deciding whether there is a direct or indirect beneficial interest and /or a combination of persons holding such a beneficial interest, the ABCC will look to the totality of circumstances in each particular relationship. In this case, the Commission cannot ignore the fact the John Haronian operates 3 retail package stores and has a daughter, Shirley Santoro, who purchased DW&S with the assistance of her father in the background. Mr. Haronian now presents to this Commission a Franchise Agreement, which authorizes an initial fee of $10,000, a Mark fee of $36,000 (yearly), an advertising fee of 1.2 % of gross sales, complete disclosure of financial records, unbridled access to corporate financial records, the right to prior approval and payment of a fee for the transfer of any interest. With these facts, this particular agreement has created a beneficial interest in the franchisor. The agreement by gives him, not only substantial power over DW&S, but also fees generated from a percentage of the gross sales that includes alcoholic beverages in violation of Ch.138, §15.

The 2004 amendment to section 15 by the Massachusetts Legislature expressly provides, in pertinent part, that no person or combination of persons may "receive any percentage or fee derived from gross revenues in exchange for management assistance, or participate in any other action designed to effect common results of more than 3 licenses under this section." At hearing before the Commission, Mr. Haronian testified under oath that the fee for advertising to be paid to him by DW&S under the proposed franchise agreement would be a percentage of gross sales (1.2%) per year that includes alcoholic beverages. This fee to be paid was calculated to be in the range of $24,000.00 to $36,000.00 per year. Mr. Haronian testified that DW&S as the franchisee does not "have to be part of the ad, but they have to pay the 1.2 [per cent fee]." The Commission is persuaded and finds that the plain language of the M.G.L. c. 138, § 15 as amended in 2004 prohibits this provision of the franchise agreement. The Commission cannot approve this particular business operation.

The Commission reads the most recent amendment to section 15 in conjunction with the pre-existing language of M.G.L. c 138, § 24 that was not amended. Section 24 permits licensees to advertise product prices jointly or cooperatively provided not more than seven licensees participate in the joint advertising activity. The Commission may read these statutes together to prohibit third parties and section 15 licensees from receiving or paying a fee above the actual cost of publication of the joint advertisement conducted in compliance with section 24 of chapter 138. But this application did not present this question to the Commission for resolution.

Section 15 appears to permit fixed fees that do not create a direct or indirect beneficial interest in a person or combination of persons when such fixed fees are paid for services not specifically prohibited by section 15, so long as sufficient revenue to pay all such fixed fees is derived by the license holder from a source other than the sale of alcoholic beverages. See *Fairview Auditorium Corp. v. Fairview Auditorium Club,* 121 N.E.2d 712 (1954). No evidence was submitted to the Commission that DW&S had sufficient sources of revenue apart from the sales of alcoholic beverages sufficient to pay

7

these fees. Thus the Commission cannot rule now whether this particular business operation might be approved with amendments.

## Conclusion

The Alcoholic Beverages Control Commission does not approve the application since the proposed business as presented would result in operations that do not comply with M.G.L. c. 138, § 15. The Commission will return the application without action of approval to the local licensing authority.

The Commission returns the application without action to permit the licensee to amend its proposal to comply with M.G.L. c. 138, § 15 and to avoid any risk to the applicant of a statutory disqualification from a second application pursuant to the provision of M.G.L. c. 138, §§ 15A and 16B.[3]

ALCOHOLIC BEVERAGES CONTROL COMMISSION

Eddie J. Jenkins, Chairman _____

Suzanne Iannella, Commissioner _____

Dated at Boston, Massachusetts this 7th day of November 2005.

You have the right to appeal this decision to the Superior Court under the provisions of Chapter 30A of the Massachusetts General Laws within thirty days of receipt of this decision.

cc:   Local Board
      Chief Inv.
      Evan T. Lawson, Esq.
      File

---

[3] The Commission is amenable to revising its action to a formal disapproval upon the request of DW&S if the licensee believes its interests are better served by a formal disapproval.

8