# Exhibit A



*Commonwealth of Massachusetts*
*Department of the State Treasurer*
*Alcoholic Beverages Control Commission*
239 Causeway Street
Boston, MA 02114
Telephone: (617) 727-3040
Fax: (617) 727-1258

**Timothy P. Cahill**
*Treasurer and Receiver General*

Eddie J. Jenkins
*Chairman*

Re:         Jatra Industries, Inc.
            dba L'il Peach
Premises:   52 Cabot Street
City/Town:  Beverly, MA 01915
Licensee:   WMP
Heard:      January 24, 2006

## DECISION

An informational hearing was held by the Alcoholic Beverages Control Commission, ("Commission") to determine whether the application of Jatra Industries, Inc., dba L'il Peach ("L'il Peach") should be approved or disapproved. The application raises the question whether the application if approved would result in a combination of persons having a direct or indirect interest in more than three (3) licenses in the Commonwealth contrary to the provisions of M.G.L. Ch.138, §15, as amended in 2004.

## Facts

The filed application sought Commission approval for the transfer of the ownership of this license and for the change of the location of the license. Attorney Jerald A. Parisella appeared on behalf of the applicant and submitted to the Commission a franchise agreement titled *Massachusetts Alcoholic Beverage Amendment* (Exhibit #1).

## Discussion

The Commission has previously identified the question presented by an application such as this.

> The issue begins as to what is a direct or indirect beneficial interest? In reviewing whether there is a direct or indirect or beneficial interest, the ABCC applies the definition expressed in the case of Number Three Lounge Inc., v. ABCC, 7 Mass.App.Ct. 301, 387 N.E.2d 181 (1979). In deciding this issue, the Commission must "pierce labels, look beyond form, and come to grips with the substance of the corporate relationship and the economic realities that are present." Number Three Lounge, 7 Mass.App.Ct. at 311; 387 N.E.2d 187.

In re: *DW&S Fall River, Inc. dba Tanza Liquors,* Fall River (ABCC Decision dated November 7, 2005). In the *DW&S Fall River* decision, the Commission also stated that "[i]n deciding whether there is a direct or indirect beneficial interest and /or a

combination of persons holding such a beneficial interest, the ABCC will look to the totality of circumstances in each particular relationship." See Powers v. Sixty Broadway Inc., 371 Mass. 296, 300 (1976); Griffin's Brant Rock Package Store, Inc. v. Alcoholic Beverages Control Commission, 12 Mass.App.Ct. 768, 429 N.E.2d 62 (1981); Number Three Lounge Inc., v. ABCC, 7 Mass.App.Ct. 301, 387 N.E.2d 181 (1979).

This informational hearing follows two Commission decisions, *In re: DW&S Fall River, Inc. dba Tanza Liquors*, Fall River (ABCC Decision dated November 7, 2005) and *In re: Satyanarayana Chandana dba 7-Eleven*, Rockland, (ABCC Decision dated November 7, 2005), involving whether a franchise agreement would result in a combination of persons having a direct or indirect interest in more than (3) licenses in the Commonwealth contrary to M.G.L. Ch.138, §15 as amended in 2004.

The *Chandana* decision in particular identified in that reviewed 7-Eleven franchise relationship 7 questionable and or prohibited practices as follows:

1. Flat fee for rental space of alcoholic beverages;
2. Bookkeeping and financial matters;
3. Deposit of cash daily to franchiser from franchisee with the franchisee to receive a draw;
4. Franchiser right to withdraw and use funds deposited by the franchisee;
5. Franchiser ordering of inventory for the franchisee;
6. Franchiser limiting franchisee ordering from only the franchiser's bona fide suppliers;
7. Franchisor's right to enter store and assume operation of the store.

The *Chandana* decision applied the provisions of the regulatory scheme the Commission is charged with administering. In *Chandana*, the Commission wrote that

> [i]n its decision in *Patriot Spirits*, the ABCC applied the so-called 3-store limit and the parallel limits set in M.G.L. c. 138, § 15 on the number of licenses able to held be held in a town (1 such license) and in a city (2 such licenses). The ABCC discussed the applicable analysis as follows.
>
> In *Johnson v. Martignetti*, 374 Mass. 784, 375 N.E.2d 290 (1978), the Supreme Judicial Court reviewed the language used in G.L. c. 138, § 15 and held that "[t]he phrase 'combination of persons' has a well established common law meaning, both generally and in the context of alcoholic beverage regulation. In general terms, the existence of a combination may be found where two or more persons engage in a mutuality of action designed to effect a common result. See generally Antoine v. Commonwealth Trust Co., 266 Mass. 202, 206, 165 N.E. 12 (1929); Commonwealth v. Dyer, 243 Mass. 472, 488-489, 138 N.E. 296 (1922); Cornellier v. Haverhill Shoe Mfrs. Ass'n, 221 Mass. 554, 559, 562, 109 N.E. 643 (1915); Commonwealth v. Hunt, 4 Met. 111, 121-125 (1842); Black's Law Dictionary 333 (rev. 4th ed. 1968); 1 von Kalinowski, Antitrust Laws and Trade Regulation s 6.01(1) at 6-2 to 6-4 (1975). ). Even more specifically, this court has

stated that, in the area of alcoholic beverage regulation, the existence of a "combination of persons" is a question of fact which may be inferred from such circumstantial evidence as: common group insurance policies, bookkeeping offices, employees, and bonus formulas; substantial intercompany dealings; common use of various assets; and a decision making pattern whereby the owner of one business entity has authority to act on behalf of others. See Cleary v. Cardullo's, Inc., 347 Mass. 337, 349, 198 N.E.2d 281 (1964). See also Powers v. Sixty Broadway, Inc., --- Mass. ---, --- [Footnote omitted], 356 N.E.2d 704 (1976). There is thus ample guidance as to proscribed activity in the Legislature's use of the phrase "combination of persons." *Johnson v. Martignetti*, 374 Mass. 784, 788-789, 375 N.E.2d 290, 294-295 (1978).

*In re: Satyanarayana Chandana dba 7-Eleven*, Rockland, (ABCC Decision dated November 7, 2005) citing *In Re: Patriot Spirits, Incorporated dba Patriot Spirits*, (ABCC Decision dated May 13, 2003)(pg. 5, para. 23).

Upon review of the L'il Peach store *Massachusetts Alcoholic Beverages Amendment* presented here, the Commission determines that this Amendment does not totally suffer from the 7 issues discussed in the *Chandana* decision. However, there are (2) provisions of the *Amendment*, Paragraph I.1.(i) and Paragraph II.5 which are problematic and raise issues of compliance with § 15, as amended.

The Commission finds problematic the language of paragraph II.5. in the L'il Peach *Massachusetts Alcoholic Beverages Amendment*. This section states

> the term of this license for the Licensed Space will be the same as the term of our underlying lease of the Store, or the term of the Franchise Agreement, which ever is shorter. If you cease the sale of Alcoholic Beverages without intention of resumption, and so notify us in writing, this license for the Licensed Space will cease as of the end of the next succeeding full monthly period, and the entire Store will be operated as provided in the Franchise Agreement.

The language of this section sets out a change in the lease space fee based upon the franchisee's decision to "cease the sale of alcoholic beverages." It therefore calls into question that there is a hidden fee for the leased space or the licensed operation of the alcoholic beverages sales. In *Chandana*, the Commission acknowledged that M.G.L. c. 138, §15, as amended, specifically prohibits a third party to receive a fee that is a based on a percentage of gross revenue in exchange for management assistance. The Commission discussed the issue presented where

> the Commission's attention is drawn to a more obvious problem wherein the franchisor is charging a fee for approximately 10% of liquor related inventory and storage when they have already paid the cost of the storage in the lease itself. A flat fee tied to gross revenue contravenes the intent of §15. If a flat fee is assessed and is not related to an expense, it gives the perception that the flat fee is tied to gross revenue.

3

*In re: Satyanarayana Chandana dba 7-Eleven*, Rockland, (ABCC Decision dated November 7, 2005.) In the present application, the language of paragraph II.7. in the L'il Peach *Massachusetts Alcoholic Beverages Amendment* applies without exception, even when the franchisee continues to hold a license to sell alcoholic beverages, but does not conduct the licensed business. In this circumstance, this contractual language operates identically to the language disapproved in *Chandana*, so long as the license held by the franchisee/license holder continued in existence. *See, e.g., Board of Selectmen of Saugus v. ABCC*, 32 Mass.App.Ct. 914, 585 N.E.2d 754 (1992).

The Commission finds the requirement in Paragraph I.1.(i) by this Li'l Peach franchisor for the franchisee/license applicant to disclose "(i) copies of your bank statements from deposits with the monthly sales records of Alcoholic Beverages," as controlling and prohibited here as we found in the *Chandana* decision. If the franchisor has no right to cash receipts and deposits, then the Commission finds no *bona fide*, objective justification, other than control over operations, to obtain the otherwise confidential financial monthly bank statements from an independent business operation. It is the Commission's belief that said information is exclusive to the franchisee and could be used by the franchisor as a form of control.

Lastly, with respect to termination of the alcoholic beverages business by the franchisee, or a cancellation of the franchise agreement, or a default or cancellation of the franchise or lease, with the purpose of preventing violations of chapter 138, see M.G.L. c. 138, § 24, the Commission would take this opportunity to inform the applicant, as well as the franchiser, and reiterate that the right to operate or transfer said license is still retained by the franchisee/licensee and at no time does the franchiser have the right to enter the licensed premises and seize control. As the Commission held in *Chandana*,

> [u]nder no circumstances can a third party ever come into a store which has a §15 license and take control of it without the prior approval of both the local licensing authorities and the Alcoholic Beverages Control Commission. To give enforcement to a contract such as this is contrary to public policing. *Hasting Associates Inc. v. 369 3/9 Fund Inc.*, 42 Mass.App.Ct. 162, 675 N.E.2d 403 (1997).

*In re: Satyanarayana Chandana dba 7-Eleven*, Rockland, (ABCC Decision dated November 7, 2005.)

## Conclusion

Therefore, the Commission would consider approving the application without the language discussed above in the L'il Peach *Massachusetts Alcoholic Beverages Amendment*, as it presently operates as discussed above, so long as the applicant does not have a direct or indirect interest in more than 3 licenses in the Commonwealth.

4

The Commission will return to the local board this application without action to approve or disapprove the application in order to permit the licensee to amend its proposal to comply with M.G.L. c. 138, § 15 and to avoid any risk to the applicant of a statutory disqualification from a second application pursuant to the provision of M.G.L. c. 138, §§ 15A and 16B.[1]

Alcoholic Beverages Control Commission

Eddie J. Jenkins, Chairman  _____

Suzanne Iannella, Commissioner  _____

Robert H. Cronin, Commissioner  _____

Dated at Boston, Massachusetts this 10th day of May 2006.

You have the right to appeal this decision to the Superior Court under the provisions of Chapter 30A of the Massachusetts General Laws within thirty days of receipt of this decision.

cc:   Local Board
      Chief Inv.
      Jerald A. Parisella
      Trish Farnsworth, Esq.
      File

---

[1] The Commission is amenable to revising its action to a formal disapproval upon the request of the applicant if the applicant believes its interests are better served by a formal disapproval.

5