UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
PEOPLES SUPER LIQUOR STORES, INC., et al.,          )
                                                    )
        Plaintiffs,                                 )
                                                    )
        v.                                          )          CIVIL ACTION NO.
                                                    )          04-12219 - PBS
EDDIE J. JENKINS, in his capacity as Chairman       )
of the Alcoholic Beverages Control Commission, et al.,  )
                                                    )
        Defendants.                                 )
_____)

**DEFENDANTS' CONSOLIDATED MEMORANDUM
IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION
AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR RECONSIDERATION**

The defendants submit this Consolidated Memorandum both in opposition to Plaintiffs' Motion for Reconsideration, which seeks reconsideration of the Court's dismissal of the free speech claim in Count I of the First Amended Complaint, and in support of Defendants' Cross-Motion for Reconsideration, which seeks reconsideration of the Court's refusal to dismiss the ERISA claim in Count VI. As elaborated upon below, the Court's Memorandum and Order did not address the defendants' Article III ripeness and standing arguments regarding the ERISA claim, and those threshold jurisdictional issues should be reached and resolved in the defendants' favor before the ERISA claim proceeds to consideration on the merits. On the other hand, the free speech arguments in Plaintiffs' Motion misapprehend the reasoning of both this Court in its Memorandum and Order and the First Circuit in Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36 (1st Cir. 2005) -- reasoning that Supreme Court strongly reaffirms in its own recent decision Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 126 S.Ct. 1297 (Mar. 6, 2006). This Court accordingly should deny Plaintiffs' Motion and allow Defendants' Cross-Motion, leaving only the dormant Commerce Clause claim in Count V for further litigation on the merits.

I.     **THE COURT SHOULD REACH AND ADOPT THE DEFENDANTS'
ARTICLE III ARGUMENTS THAT SUBJECT MATTER JURISDICTION DOES
NOT EXIST OVER COUNT VI'S ERISA CLAIM.**

The defendants raised two separate Article III challenges to the ERISA preemption

claim: ripeness and standing.  See Defendants' Supplemental Memorandum (Re ABCC's Tanza

Liquors Decision and First Circuit's Rowe Decision) in Support of Motion to Dismiss pp. 4-5 &

n. 4, 5 (filed November 23, 2005).  The Court's Memorandum and Order did not address those

jurisdictional arguments, instead summarizing the substance of the plaintiffs' ERISA claim and

then declining to reach that claim on the merits.  Memorandum and Order p. 31 ("there is a

factual question which may obviate the harder statutory one").  While the defendants briefed the

substance of the ERISA claim extensively, see Defendants' Memorandum in Support of Motion

to Dismiss pp. 16-20, they recognize and accept the Court's determination not to reach those

merits-based arguments, and Defendants' Cross-Motion does not ask the Court to reconsider

them.  However, the Court should address a threshold challenge to subject matter jurisdiction

before allowing a case to proceed to litigation of the merits.  See, e.g., Steel Co. v. Citizens for

Better Environment, 523 U.S. 83, 94-95 (1998);  Moran v. Kingdom of Saudi Arabia, 27 F.3d

169, 172 (5th Cir. 1994).[1]  As a result, the defendants do request that the Court resolve their

jurisdictional arguments now.

One clear threshold problem with the ERISA claim is that it is not ripe for review.  As

the Court recognized in its Memorandum and Order, "the Court does not have an opinion from

the [Commission] concerning the question of whether § 15 applies to ERISA plans."

Memorandum and Order p. 31.  The Commission's underlying administrative decision indeed

does not address Section 15's insurance language at all, and the Commission has yet to take a

---

[1]     This is why a District Court can entertain affidavits and even evidence on a Rule
12(b)(1) motion to dismiss at the outset of the case.  See, e.g., Gonzalez v. U.S., 284 F.3d 281,
287-88 (1st Cir. 2002); Valentin v. Hospital Bella Vista, 254 F.3d 358, 63-64 (1st Cir. 2001).
"[T]here is an exception . . . in which the jurisdictional facts . . . are inextricably intertwined with
the merits of the case.  In that event, the court may defer resolution of the jurisdictional issue
until the time of trial."  Valentin, 254 F.3d at 363 n. 3.  This exception is inapplicable here,
where none of the defendants' jurisdictional arguments regarding Count VI requires any
consideration of the intricacies of ERISA and the plaintiffs' claim under it.

formal position, articulated in a decision or regulation, regarding whether the 2004 amendment in fact imposes a per se prohibition on four or more licensees jointly insuring in all instances. The ripeness doctrine accordingly precludes the plaintiffs' anticipatory ERISA claim. "A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. U. S., 523 U.S. 296, 301 (1998); see McInnis-Misenor, 319 F.3d 63, 70 (1st Cir. 2003) ("The ripeness doctrine seeks 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). Here there is just such a "contingent future event[ ]" that "may not occur at all" -- the Commission ultimately may not construe Section 15 in the manner the plaintiffs fear. See, e.g., Pfizer, Inc. v. Shalala, 182 F.3d 975, 978 (D.C. Cir. 1999) (competitor's claim unripe where "[t]he critical fact remains that the FDA may never approve [a drug company's] application" for a new drug). The Commission thus might construe the 2004 amendment as not imposing a per se ban on joint insurance by four or more licensees in all instances, or, as the Court postulated, it might interpret the statute as not applying to ERISA plans at all.[2] An insurance-based claim is accordingly unripe.

This is not the only Article III barrier facing the plaintiffs. Even if the Commission had already construed Section 15 in the insurance context, these particular plaintiffs still would lack standing to pursue a preemption claim. As the defendants have previously argued,[3] the Commission's decision in this matter rested not upon a violation of Section 15's insurance language but instead upon a more general finding of beneficial interest in/indirect control over a fourth package store license. Commission Decision pp. 6-7[4]; see Memorandum and Order p. 27.

---

[2]     Indeed, as the Court observed with respect to those portions of Section 15 that the Commission has construed, "the [Commission's] interpretation of the statute [ha]s not [been] nearly as broad as Plaintiffs [had] predicted at the outset of this case." Memorandum and Order p. 13.

[3]     See Defendants' Supplemental Memorandum (Re ABCC's Tanza Liquors Decision and First Circuit's Rowe Decision) in Support of Motion to Dismiss p. 5  n. 5 (filed November 23, 2005).

[4]     The Commission's Decision in the Tanza Liquors matter is attached as Exhibit A to Defendants' Supplemental Memorandum (Re ABCC's Tanza Liquors Decision and First Circuit's Rowe Decision) in Support of Motion to Dismiss (filed November 23, 2005).

The Court recognized this, ruling that Section 15's ban on a "percentage or fee derived from gross revenues in exchange for management assistance" in and of itself supported a "beneficial interest" finding:

> The [Commission's] decision is ambiguous as to whether, but for this provision of the statute, the Commission would have approved the Santoro license. However, the converse is clear; even if there were none of the other factors involved in this case, the [franchise agreement's 1.2 % of gross sales] fee would have invalidated the franchise agreement because it is in direct violation of § 15.

Memorandum and Order pp. 15-16; accord id. p. 18 ("a fee derived from a percentage of gross liquor sales would constitute a beneficial interest in a fourth license"); see also id. pp. 16-19, 25-30 (rejecting legal challenges to this component of Section 15). As a result, there was at least one independent reason why the Santoro business arrangement was not approved, regardless of the legality of any joint insurance arrangements.[5] The ERISA claim cannot satisfy the Article III standing requirements of causation and redressability when the Commission disapproved the license on a ground that was different from the provision in Section 15 that the ERISA claim challenges as supposedly illegal.[6] The First Circuit is unequivocal that a plaintiff "must ensure that he establishes standing for each claim" brought and, to do so, "must show a causal connection between the asserted injury and the challenged action" in each specific instance. Donahue v. Boston, 304 F.3d 110, 115, 116 (1st Cir. 2002); accord DaimlerChrysler Corp. v.

---

[5]    Of course, both the Massachusetts Courts and the Commission have long held that "joint activities" -- including joint insurance -- can be considered as a piece of circumstantial evidence that, in combination with other facts, can support a finding of beneficial interest in a particular case. Memorandum and Order p. 5; Commission Decision pp. 3-4 (citing case law); see id. p. 6 (citing such joint action as one piece of evidence here). Selective use as evidence in a particular case is wholly different from banning the joint activity in all instances, and the plaintiffs have made no argument that such episodic evidentiary usage is itself illegal, let alone a basis for challenging the statute.

[6]    It is indeed unclear whether there is even an "injury in fact." With the proposed Santoro arrangement not qualifying for a valid license for this independent reason, there is no fourth licensee to bring into play any restriction that Section 15 might impose on joint insurance arrangements of four or more licensees, and any challenge to Section 15's insurance language is necessarily hypothetical.

Cuno, 74 U.S.L.W. 4233, 4239 (U.S. May 15, 2006) (standing a claim-by-claim inquiry).[7]  The plaintiffs cannot make the required showing for their ERISA claim, and both standing and ripeness pose insuperable threshold barriers to Count VI.

## II.      THE COURT CORRECTLY REJECTED THE PLAINTIFFS' FREE SPEECH CLAIM IN COUNT I, AS A RECENT SUPREME COURT DECISION STRONGLY REAFFIRMS.

In their Motion for Reconsideration, the plaintiffs again attempt to distinguish their free speech claim in this case from the First Circuit's Wine & Spirits decision.  Motion for Reconsideration pp. 1-6.  They remain off the mark.  In Wine & Spirits, the First Circuit made two separate rulings regarding the free speech challenge.  First, it held that the Rhode Island statute at issue "d[id] not prohibit the communication of advice," but instead restricted the recipient's ability to act on that advice.  Wine & Spirits, 418 F.3d at 47-48.  Second, and more important, it also ruled that the statute would not violate the Free-Speech Clause even if the law in fact did restrict communication:

> The conclusion that otherwise valid regulation of commercial interactions between business entities does not offend the First Amendment merely because such interactions have a communicative component would apply with equal force to our analysis of Part V(A)(1) [of the First Circuit's opinion, which addressed the plaintiffs' "managerial advice" free speech claim], had we found that the relevant

---

[7]      See also Howard v. N.J. Dep't of Civ. Serv., 667 F.2d 1099, 1101-02 (3rd Cir. 1981) (job applicant plaintiffs fail to satisfy causation and redressability requirements and therefore lack standing to challenge physical agility test when they "were refused employment because they failed the initial written examination, not because they failed the . . . agility test"); Fuller v. Norton, 86 F.3d 1016, 1027 (10th Cir. 1996) ("Even if we were to strike the challenged provision, the [plaintiff] still would not fulfill the remaining requirements of the Colorado statute, and could not benefit from our decision"); Joelson v. U.S., 86 F.3d 1413, 1422-23 (6th Cir. 1996); GBA Assoc. v. Gen. Serv. Admin., 32 F.3d 898, 900-01 (4th Cir. 1994).

> sub-paragraphs of section 3-5-11(b)(1) did in fact impede communications between W&S and the holders of Class A liquor licenses.

Id. at 53 n. 5; see also id. at 50-53 (elaborating on the reasoning for this second free speech ruling in the context of rejecting a related "expressive association" claim).  This Court recognized both of the First Circuit's separate rulings in its dismissal of the plaintiffs' free speech claim here.  Memorandum and Order pp. 16-19.  The plaintiffs, however, focus exclusively on the first ruling, wholly ignoring the second.  Motion for Reconsideration pp. 1-6.

This is inadequate.  Even if one were to assume for the sake of argument that Section 15 directly restricts the "speech" of "management advice" (by imposing a "financial burden" on it in certain circumstances)[8], the First Circuit is clear that that would not violate the Free Speech Clause where the restricted communication is simply the "communicative component" of regulated commercial activity.  Wine & Spirits, 418 F.3d at 53 n. 5; see also id. at 50-53.   The plaintiffs have not adequately responded to this second prong of the First Circuit's free speech decision, and it is in fact dispositive here.

The Supreme Court's recent Rumsfeld decision strongly reaffirms this conclusion.  Rumsfeld, 126 S.Ct. at 1297.  In Rumsfeld, an 8-0 decision authored by Chief Justice Roberts,[9] the Supreme Court rejected First Amendment challenges to the Solomon Amendment, a federal statute that requires any law school receiving Congressional funding to "offer military recruiters the same access to its campus and students that it provides to the nonmilitary recruiter receiving the most favorable access."  Id. at 1304.  The law schools challenging the Amendment tried to get around the fact that "[a]s a general matter, the Solomon Amendment regulates conduct, not

---

[8]     As this Court detailed in its ruling, any arguable "burden" imposed by Section 15 is restricted to extremely limited circumstances.  Memorandum and Order p. 18 ("There are no restrictions at all so long as the advisor does not have a beneficial interest in three liquor stores.  Once an advisor has an interest in three liquor stores, the fee must be fixed and not come from liquor sales revenue, because a fee derived from a percentage of gross liquor sales would constitute a beneficial interest in a fourth license.  Any supposed burden on Plaintiffs' speech only kicks in at the point the advisor acquires a fourth beneficial interest by taking a fee linked to gross sales.").  The two additional Commission decisions stressed in the Motion for Reconsideration are consistent with this reading of Section 15.

[9]     Justice Alito did not participate in the decision.

speech"[10] by pointing out that those law schools that ordinarily choose to assist visiting employers by "send[ing] e-mails and post[ing] notices on bulletin boards on [their] behalf" must "also send e-mails and post notices on behalf of the military to comply with the Solomon Amendment." Rumsfeld, 126 S.Ct. at 1307, 1308.  While acknowledging that any such involuntary e- mails and notices on behalf of the military technically could qualify as "compelled statements of fact . . . subject to First Amendment scrutiny," the Supreme Court made it clear that any such "compelled speech," like the regulated business communications at issue here and in W & S, cannot support a First Amendment claim when it is incidental to otherwise valid government regulation of conduct:

> The compelled speech to which the law schools point is plainly incidental to the Solomon Amendment's regulation of conduct, and "it has never been deemed an abridgment of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 . . . (1949).  Congress, for example, can prohibit employers from discriminating in hiring on the basis of race.  The fact that this will require an employer to take down a sign reading "White Applicants Only" hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct.  See R.A.V. v. St. Paul, 505 U.S. 377, 389 . . . (1992) ("[W]ords can in some circumstances violate laws directed not against speech but against conduct").  Compelling a law school that sends scheduling e-mails for other recruiters to send one for a military recruiter is simply not the same as forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display

---

[10]      This is because "[i]t affects what law schools must <u>do</u> -- afford equal access to military recruiters -- not what they may or may not <u>say.</u>" Rumsfeld, 126 S.Ct. at 1307 (emphasis in original).

the motto "Live Free or Die," and it trivializes the freedom protected in
Barnette[11] and Wooley[12] to suggest that it is.

Id. at 1308. The Supreme Court's reasoning applies equally here: even if one were to assume

that Section 15, like the Solomon Amendment, in fact affected speech (in the Amendment's case

by "compelling" it, in Section 15's by supposedly "burdening" it), the statute's impact on

communication would be "plainly incidental" to its regulation of conduct (specifically, economic

concentration in the liquor industry) and hence outside of the First Amendment's ambit under

Giboney and now Rumsfeld.

The Supreme Court indeed made it clear that it takes a dim view of aggressive attempts

to import First Amendment doctrines into contexts where they have no bearing:

> In this case, [the law schools] ha[ve] attempted to stretch a number of First
> Amendment doctrines well beyond the sort of activities these doctrines protect.
> The law schools object to having to treat military recruiters like other recruiters,
> but that regulation of conduct does not violate the First Amendment. To the
> extent that the Solomon Amendment incidentally affects expression, the law
> schools' effort to cast themselves as just like the schoolchildren in Barnette, the
> parade organizers in Hurley,[13] and the Boy Scouts in Dale[14] plainly overstates
> the expressive nature of their activity and the impact of the Solomon Amendment
> on it, while exaggerating the reach of our First Amendment precedents.

Id. at 1313. As the First Circuit makes clear in Wine & Spirits, the plaintiffs are similarly

"overstat[ing] the expressive nature of their activity" here. See, e.g., W & S, 418 F.3d at 53

("[I]t is nose-on-the-face plain that W & S's commercial conduct exhibits nothing that even the

---

[11]     West Virginia Bd. of Educ. v. Barnette, 319 U.S. 624 (1943) (holding
unconstitutional state law that required schoolchildren to recite the Pledge of Allegiance).

[12]     Wooley v. Maynard, 430 U.S. 705 (1977) (holding unconstitutional New
Hampshire law that required that state's motorists to display its "Live Free or Die" motto on
their license plates).

[13]     Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc., 515
U.S. 557 (1995) (state law cannot require a parade to include a group whose message the
parade's organizer does not wish to publicize).

[14]     Boy Scouts of America v. Dale, 530 U.S. 640 (2000) (expressive association
cannot be required to accept members it does not desire).

most vivid imagination might deem uniquely expressive"). This Court should accordingly decline to revisit its free speech ruling.

**III.    CONCLUSION**

For the foregoing reasons, the defendants respectfully request that the Court deny Plaintiffs' Motion for Reconsideration and allow Defendants' Cross-Motion for Reconsideration re Count VI.

By their attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ Pierce O. Cray
Pierce O. Cray, BBO # 104630
Assistant Attorney General
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 727-2200, ext. 2084

Dated:  June 1, 2006