UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEOPLES SUPER LIQUOR STORES, INC., *et al.*,

    *Plaintiffs,*

v.

EDDIE J. JENKINS, in his capacity as Chairman of the Alcoholic Beverages Control Commission, *et al.*,

    *Defendants.*

Civil Action No. 04-cv-12219-PBS

**PLAINTIFFS' MEMORANDUM IN OPPOSITION to
DEFENDANTS' CROSS-MOTION for RECONSIDERATION on COUNT VI**

In their cross-motion for reconsideration, the Defendants' ask this Court to reconsider its decision to not dismiss Court VI of the Plaintiffs' complaint. The Defendants' argue that Plaintiffs' ERISA claim is not yet ripe, or in the alternative, that the Plaintiffs' lack standing to challenge the insurance restriction contained in the 2004 amendment to Chapter 138, §15. Although the ABCC has not issued an opinion on the applicability of the insurance provision of the amendment to ERISA plans. The plan word meaning of the insurance provision clearly makes its reach clear: "No person, firm, corporation, association, or other combination of persons, directly or indirectly . . . shall . . . participate in decisions regarding . . . the purchasing of insurance . . . designed to effect common results of more than 3 licensees . . . ." Mass. Gen. Laws, c. 138, § 15.

While the ABCC has interpreted other provisions of the amendment in a way that limits their impact, it did so based on an effort to read the amendment harmoniously with other provisions of the Massachusetts Liquor Control Act. For example, the ABCC has stated that it

will permit up to seven liquor stores to jointly advertise, with severe restrictions on how those ads are paid for. The Defendants have not pointed to any provision of Massachusetts law that would form the basis for reading the ban on "participa[tion] in decisions regarding . . . the purchasing of insurance" would not apply to insurance policies covered by ERISA.

There is nothing speculative about Plaintiffs' ERISA claims. Wine & Spirits Retailers provides an umbrella insurance policy of the type covered by ERISA. This umbrella insurance policy is an "employee welfare benefit plan," as defined by Section 3(1) of ERISA:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death . . . .

29 U.S.C. §1002(1).

The Defendants base their standing and ripeness argument on the fact that ABCC denied the request by Tanza Wine & Spirits to become a franchisee on grounds other than the joint insurance that would have accompanied the franchise agreement. But Tanza is not the relevant party in analyzing Plaintiffs' standing. In fact, pending this Court granting permission for the Plaintiffs motion to amend their complaint, Tanza is not a party at all. Wine & Spirits is actively in the business of selling franchises. Wine & Spirits is seeking additional Massachusetts franchisees, but in proposing the franchise relationship, it cannot offer its umbrella insurance policy as part of benefits offered without warning that expanding this joint insurance plan beyond the existing three stores would violate the text of Section 15. This umbrella insurance policy is one of the most significant saves provided by the franchise relationship.

Articles III's standing requirement should not be read as requiring plaintiffs to enter into agreements that are probably illegal in order to establish standing. Taking this approach is especially perilous in the area of highly regulated industries with licensing requirements. If a liquor store chooses to test the limits of the law, the consequences can be fines and even suspension or revocation of their liquor license for openly violating state law.

The Plaintiffs in *Wine & Spirits Retailers v. Rhode Island* did as the Defendants in the present case suggest is required and tested the limits of the 2004 amendment to the Rhode Island Liquor Control Act with regard to the use of a trade names in common. At the time it was unclear whether Rhode Island would follow the lead of the Massachusetts ABCC and read its law to permit some form name use agreements that permit multiple stores to have the same name. Those plaintiffs now face fine of $^{\$}$5,000.00 each and suspension of their licenses for 30 days because they did what the present Defendants say is necessary in order to eliminating any standing or ripeness argument.

This standing/ripeness argument lays a second trap for plaintiffs. In the *Wine & Spirits Retailers v. Rhode Island* case the Rhode Island Attorney General's office is arguing that because the Plaintiffs did continue to operate pending an interpretation by the Rhode Island equivalent of the ABCC of that state's new statutory provisions, relief should be denied based on the unclean hands doctrine.

So the standard government argument goes: If plaintiffs do not actively violate the plan language of a new statute, they lack standing. If they do, they have unclean hands and should be denied relief. Iif the Plaintiffs enter into joint insurance plans with more than three liquor stores in the hopes that the ABCC will ignore the legislative language, they risk penalization from the ABCC and a potential unclean hands argument.

3

In Wine & Spirits current search for new franchisees, it is currently being denied the ability to offer its new prospects the tremendous savings of joint employee benefits plans, one of the primary mechanisms for reducing the costs of business by entering into a franchise relationship.

### A.    Ripeness

Determining ripeness is based on a two part test considering fitness for review and hardship to the parties if the case does not proceed.

Under the fitness prong, the Court must consider whether the issue raised is predominantly legal in nature or predominately factual. If the issue is predominately legal in nature, then it is fit for judicial review even if all of the predicate facts have not come to fruition. *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). The question of preemption is an example of case where questions of law predominate.

> The question of preemption is predominantly legal, and although it would be useful to have the benefit of California's interpretation of what constitutes a demonstrated technology or means for the disposal of high-level nuclear waste, resolution of the preemption issue need not await that development.

*Pacific Gas,* 461 U.S. at 201.

The state statute at issue in *Pacific Gas*, restricted construction of nuclear power plants in California. Two separate provisions of this statute were challenged. Even though California had not yet interpreted these provisions, the Court held that the preemption challenge to the statutory moratorium on new construction could proceed, but the challenge to the provision that instructed the California's Energy Commission to do a case-by-case review of each power plant proposal to

determine if it provided for adequate storage of nuclear waste was not ripe because no such case-by-case review had occurred yet. *Pacific Gas,* 461 U.S. at 200-01.

While the present case may initially appear to fall in the category of the case-by-case review provision at issue in *Pacific Gas*, the amendment to Section 15 banning "combination[s] of persons, directly or indirectly . . . participate[ing] in decisions regarding . . . the purchasing of insurance . . . designed to effect common results of more than 3 licensees . . . " does not provide for the same kind of discretionary review called from by the unripe provision in *Pacific Gas*. Section 15, like the *Pacific Gas* provision found to be ripe for judicial review, constitutes a ban on certain activity. While it is true that the ABCC could choose not to follow that ban based on ERISA preemption, just as the California Energy Commission could have chosen to not apply the moratorium on new construction based on the preemption by the federal Atomic Energy Act, Section 15 vests no discretionary authority in the ABCC to determine what types of joint insurance policies are prohibited.

The second part of the ripeness inquiry considers the hardship that might result if judicial review is denied. In *Pacific Natural Gas*, the Court found the hardship prong to be satisfied where, absent judicial review, the plaintiffs would find themselves investing resources in business ventures without first knowing whether or not the law will ultimately block those ventures. "To require the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship on the utilities." *Pacific Gas,* 461 U.S. at 201-02.

Wine & Spirits is currently attempting to sell a financial product that includes joint insurance. Its ability to do so is currently being hampered by the language of Section 15, which forbids "combination[s] of persons, directly or indirectly . . . participate[ing] in decisions

5

regarding . . . the purchasing of insurance . . . designed to effect common results of more than 3 licensees . . . ." Mass. Gen. Laws, c. 138, § 15.

### B.      Standing / mootness

The argument that standing is lacking because of the ABCC's decision related to Tanza misconstrues both the nature of standing and the structure of the case. Events occurring after the filing of the complaint are only relevant to a mootness argument, not to the existence of standing. More importantly, Tanza is not currently a party to this action. The relevant injury is to Wine & Spirits, through the ongoing denial of its ability to offer joint employee benefit packages that include joint insurance as part of its franchise package. The relevant injury is to Peoples Super Liquor Stores, which seeks to reduce the considerable cost of its employee benefit package through the addition of more Massachusetts franchisees.

It is understandable that defendants often couch mootness arguments as in terms of standing. A defendant urging a finding of mootness bears a heavy burden. "It is no small matter to deprive a litigant of the rewards of its efforts . . . Such action on grounds of mootness would be justified only if it were absolutely clear that the litigant no longer had any need of the judicial protection that it sought." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216 (2000) (*Per Curiam*).

> [J]urisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that 'there is no reasonable expectation …' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.
>
> When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.
>
> The burden of demonstrating mootness 'is a heavy one.'

*County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal).  The decision of the ABCC on Tanza does not end the Plaintiffs' efforts to sign up additional franchisees in Massachusetts.  Joint insurance would be an integral part of any additional franchise agreements.  The ABCC has presented no evidence to meet its burden of demonstrating that an interim event has "completely and irrevocably eradicated the effects of the alleged violation."

To have standing to obtain forward-looking relief, a plaintiff must show a sufficient likelihood that she will be affected by the allegedly unlawful conduct in the future.  *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  The existence of standing is measured as of the time of the filing of the complaint.  *Mullen v. Torrance*, 22 U.S. 537, 539, 9 Wheat. 237 (1824) ("It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992).

As of the time the complaint was filed and today, Section 15 says that any joint insurance plan offered by Wine & Spirits as part of the franchise agreements it is attempting to sell into Massachusetts.

## CONCLUSION

This Court should deny the Defendants' cross motion for reconsideration.  Unlike Plaintiffs' motion for reconsideration, the Defendants have not meet their burden of demonstrating "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" justifying reconsideration of this Court's decision.  *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at n. 42.5.

Respectfully submitted,

PEOPLES SUPER LIQUOR STORES, INC.,
WINE & SPIRITS RETAILERS, INC.
and, JOHN HARONIAN,

By their Attorneys,

   /s/ Michael Williams
Evan T. Lawson        (BBO# 289280)
Robert J. Roughsedge   (BBO# 638180)
Michael Williams       (BBO# 634062)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile:  (617) 439-3987
MWilliams@Lawson-Weitzen.com

**CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 15, 2006.

   /s/ Michael Williams