UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                        )
PEOPLES SUPER LIQUOR STORES, INC., et al.,    )
                                                        )
       Plaintiffs,                                     )
                                                        )
       v.                                             )           CIVIL ACTION NO.
                                                        )           04-12219 - PBS
EDDIE J. JENKINS, in his capacity as Chairman      )
of the Alcoholic Beverages Control Commission, et al.,   )
                                                        )
       Defendants.                                )
_____)

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT**

       The defendants submit this Opposition to Plaintiffs' Motion for Leave to Amend Their Complaint ("Motion to Amend"). The proposed pleading goes well beyond the plaintiffs' description of it in the Motion, and it would needlessly add yet further complexity to what is already a highly complicated matter. For a variety of reasons, set forth below, the Court should deny the Motion to Amend.

       1.       The proposed amendment represents a further twist in the ongoing question of whether the plaintiffs' various challenges to Mass. Gen. Laws c. 138, § 15 are "facial" or "as applied." The Court addressed this point in its Memorandum and Order:

> There has been confusion throughout this litigation as to whether the plaintiffs' challenges are "facial" or "as applied." The plaintiffs made their intentions clear in their opposition to Defendants' motion to dismiss, in which they stated unequivocally that their challenges were as applied: "The Plaintiffs challenge the amended statute as it is applied to them, not on its face." (Pls.' Opp. to Mot. to Dismiss 7). Plaintiffs also state: "Put simply, there is nothing facial about the Plaintiffs' claims." (Id.)

May 8, 2006 Memorandum and Order p. 6 n. 1 (emphasis added). Now it is apparently not so "simpl[e]." The proffered amendment both realleges all of the claims in the First Amended Complaint -- including those dismissed by the Court on May 8 -- and adds the allegation "that

Sections [sic] 15 of Chapter 138 violate the Plaintiffs' federally protected rights both <u>on their face</u> and as Section 15 has been applied to Plaintiffs." (Proposed) Second Amended Complaint ¶¶ 33-34 (emphasis added). Thus, after having disavowed any facial claim in their Opposition Memorandum (and thereby avoided the defendants' argument that they could not satisfy the difficult legal standard for one), <u>see</u> Memorandum and Order p. 6 n. 1, the plaintiffs have now decided that they want a facial challenge after all.[1] This "on-again, off-again" approach to pleading is grounds for denying a requested amendment. <u>See</u> Charles Alan Wright, <u>et al</u>., <u>Federal Practice and Procedure</u> § 1487, at 651 (2nd ed. 1990) (approving rejection of amendment where "the motion was denied when plaintiffs made a third request to amend . . . and the new matter sought to be added had been included in the first amended complaint, but was deleted when plaintiffs filed their second amended complaint").

      2.      An amendment adding a facial challenge to the ERISA preemption claim would also be futile, which is a separate ground for denying leave to amend. <u>See</u>, <u>e.g</u>., <u>Hatch v. Dep't for Children</u>, 274 F.3d 12,19 (1st Cir. 2001). As the defendants argued at pages 16-17 of their original Memorandum in Support of Motion to Dismiss (filed December 2004), a facial claim is "the most difficult challenge to mount successfully, since the challenger must establish that <u>no set of circumstances exists</u> under which the Act would be valid" -- <u>i.e</u>., that the statute will always be unconstitutional, under all scenarios. <u>Pharm. Research & Mfrs. of Am. v. Concannon</u>, 249 F.3d 66, 77 (1st Cir. 2001), <u>aff'd</u> 538 U.S. 644 (2003). The plaintiffs cannot meet this stringent standard for Section 15's "purchasing of insurance" provision, which is the target of the ERISA claim. Even if one were to assume that a challenge to this part of the statute were ripe for review,[2] and even if one were to assume that the joint purchase of insurance could establish

---

      [1]      They indeed may be seeking a facial challenge under the dismissed claims as well as those that are still extant. When read together, Paragraphs 33 and 34 of the proposed amendment create considerable ambiguity in this regard.

      [2]      <u>But see</u> Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Reconsideration and in Support of Defendants' Cross-Motion for Reconsideration pp. 2-3 (filed June 1, 2006 and currently pending; argues that Article III ripeness does not exist for ERISA claim).

an "employee benefits plan" for purposes of ERISA, that federal law does not in fact apply to several major types of employee-related insurance:

> The provisions of this subchapter shall not apply to any employee benefit plan if . . . .
>
> (3) such plan is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws.

29 U.S.C. § 1003(b)(3). As a result, if (for example) disability insurance were jointly purchased for the employees of several package store licensees, ERISA by its terms would not apply, id., and any state law regulating that joint purchase would fall entirely outside of the federal statute. This hypothetical scenario is but one of many possible "sets of circumstances" where the 2004 Amendment plainly would not violate federal law, thereby rendering any amendment to assert a facial challenge futile given the legal standard for such claims.[3]

   3. Futility also precludes the requested amendment to add two new plaintiffs, the Massachusetts corporation DW&S-Fall River ("Tanza Liquors")[4] and the Rhode Island company Douglas Wine & Spirits-Cranston, Inc. ("Cranston"), because both would raise hypothetical claims that cannot satisfy Article III's ripeness and standing requirements. See (Proposed)

---

   [3] The defendants recognize that the Court has determined not to reach the substance of the plaintiffs' original as-applied ERISA claim at the present time, Memorandum and Order p. 31, and they accordingly make no merits-based arguments regarding that as-applied claim now. See Defendants' Cross-Motion for Reconsideration (filed June 1, 2006) (asking Court to resolve only the Article III jurisdictional challenges to the as-applied ERISA claim). The defendants' present point is that any new facial challenge under ERISA would be futile given the "dauntingly high hurdle" that exists for such a claim. Donovan v. Haverhill, 311 F.3d 74, 77 (1st Cir. 2002). In addition to the facial ERISA claim, any attempted facial challenge to Section 15 on First Amendment, takings, or equal protection grounds -- i.e., under any of the legal theories where the Court has already dismissed an as-applied claim -- should similarly be rejected as futile. See (Proposed) Second Amended Complaint ¶¶ 33-34 (reassertion of dismissed claims creates ambiguity as to whether those claims are now being enlarged post hoc to include facial challenges). If the plaintiffs cannot make out as-applied claims for those dismissed counts, then a fortiori they cannot establish facial ones either.

   [4] This is the entity, already familiar to the Court, that unsuccessfully sought Commission approval of a proposed franchise agreement with Douglas Wine & Spirits. See Memorandum and Order pp. 2-4.

Second Amended Complaint ¶¶ 35-47.  Tanza Liquors thus asserts that it is "currently seeking permission to do business under the name 'Douglas Wine & Spirits -- Fall River'"; that it "is entering into a consulting agreement with W&S[5], which will be submitted to the ABCC and local licensing authority for approval"; and that "[o]nce [it] has approval . . . , it will jointly advertise with the three Peoples's stores," "will" pay DW & S for management and advertising services, and "will" jointly insure through DW&S.  (Proposed) Second Amended Complaint ¶¶ 37, 40, 42, 45-47.  The allegations regarding Cranston are similarly couched in contingent terms and phrased in the future tense.  Id. ¶¶ 39, 41, 43, 45-47 (all using the auxiliary verb "will").  These assertions about what supposedly will happen in the future are speculative on their face and cannot establish ripeness and standing.  See Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Reconsideration and in Support of Defendants' Cross-Motion for Reconsideration pp. 2-5 (filed June 1, 2006) (citing authorities).  Moore's Federal Practice aptly summarizes the problems with such an approach:

> If the facts are uncertain and the court is being asked to make a legal ruling based on the possibility that certain facts will be found exist at some point in the future, then a decision would constitute nothing more than an advisory opinion based upon a hypothetical scenario.  It is this type of judicial intervention that is prohibited, and the rationale seems clear.  There is no actual dispute currently before the court, the facts may never develop consistent with the hypothetical scenario, thus rendering the court's opinion of no legal effect, and the parties are not yet, and may never be, subject to any harm.

15 Daniel R. Coquillette, et al., Moore's Federal Practice § 1201.75, at 101-152 (3rd ed. 2006).

4.      In addition to being entirely speculative, the extensive factual allegations about what Tanza and Cranston "will" do in the future have curiously little connection with the actual legal claims -- Counts VIII and IX -- that the Second Amended Complaint seeks to add.  While both counts arise under the dormant Commerce Clause, and while the Motion to Amend characterizes the amendment as adding two Commerce Clause claims, the new factual allegations relate not to any Commerce Clause contentions but instead to the now-dismissed First Amendment claims.  Compare (Proposed) Second Amended Complaint ¶¶ 51-57 (legal

---

[5]      "W&S" refers to the current plaintiff Wine & Spirits Retailers, Inc.  See First Amended Complaint ¶ 8.

claims) with id. ¶¶ 37-50 (factual allegations).  For example, the proposed pleading contains extensive allegations about Tanza's and Cranston's potential plans for engaging in joint advertising and receiving management advice, which have nothing to do with any Commerce Clause argument but much to do with the dismissed free speech claims.  Id. ¶¶ 40-46.  The inference that these allegations may be actually directed at the dismissed counts is strengthened by the pleading's characterization of them as "Facts Common to All Claims."  Id. p. 2 (emphasis added); see also id. ¶ 33 (realleging all counts in First Amended Complaint with ambiguous language; see fn. 1 supra).  Given the Motion to Amend's assertion that the amendment relates solely to the Commerce Clause, see Motion for Leave to Amend p. 1, it is puzzling why these free-speech related allegations are included in the proposed pleading at all.  To the extent that the plaintiffs add the allegations to improve their chances of securing reversal of the First Amendment rulings on appeal, that would not be an appropriate use of the amendment process, because it would be trying to have the Court of Appeals review this Court's decision on the basis of assertions that were not before it at the time the decision issued.

     5.     The first of the amendment's two legal claims, a proposed Count VIII, is duplicative of a claim already made in First Amended Complaint and thus would serve no purpose.  The putative Count VIII asserts a dormant Commerce Clause challenge to the "three-store rule" -- Section 15's longstanding prohibition against common ownership of more than three package stores.  (Proposed) Second Amended Complaint ¶¶ 51-53.  However, the First Amended Complaint already includes, as part of Count V's still-extant Commerce Clause claims, the unambiguous assertion that "Chapter 138, § 15 . . . limits the number of licenses any one individual or entity may own to three thereby exceeding the power of a state to regulate commerce."  First Amended Complaint ¶ 25.  The Court has recognized this already pending Commerce Clause challenge to the three-store rule in Count V and specifically declined to dismiss it.  Memorandum and Order p. 45.  Given the current existence of a Commerce Clause challenge to the three-store rule in the First Amended Complaint, and given the proposed new pleading's explicit reallegation of all claims made in the earlier document, see (Proposed) Second Amended Complaint ¶ 33, repeating the same Commerce Clause claim in a "new" Count VIII is wholly duplicative and serves only to complicate this convoluted matter even further.

See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (660 F.2d 594, 598 (5th Cir. 1981) ("it is appropriate for the court to consider judicial economy" in ruling on a motion to amend).[6]

6.      The proposed pleading's second legal claim is a variation on its first, asserting that Section 15's supposed "limitations" on "[t]he ability to sell more than three [package store] franchises in Massachusetts" violate the Commerce Clause.  (Proposed) Second Amended Complaint ¶¶ 54-57 (new Count IX) (emphasis added).  Such a franchise-based claim would be futile because it would be premised on a contention that the Court has already rejected in ruling on the Motion to Dismiss -- that Section 15 in fact bans multiple franchising in the Commonwealth.  See Memorandum and Order pp. 11-12 ("the ABCC confirmed that the amended statute does not . . work a complete ban on package store franchising"), 17 (specifically contrasting Section 15 with "the Rhode Island statutes, which completely ban franchise agreements").  Futility is again a ground for denying amendment, Hatch, 274 F.3d at 19, and the plaintiffs' Motion fails to pass muster.

---

[6]     The plaintiffs' Memorandum describes at some length a legal argument that they want to make in support of their Commerce Clause challenge to the three-store rule.  Memorandum in Support pp. 3-4.  However, the plaintiffs are already fully able to advance this legal argument given (a) the explicit articulation of the three-store claim in the existing Count V and (b) the generous rules of notice pleading applicable to Count V's claims.  The plaintiffs accordingly do not need a new Count IX to be able to assert it here.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to Amend Their Complaint.

                                By their attorneys,

                                THOMAS F. REILLY
                                ATTORNEY GENERAL


                                /s/ Pierce O. Cray
                                Pierce O. Cray, BBO # 104630
                                Assistant Attorney General
                                Government Bureau
                                One Ashburton Place
                                Boston, MA 02108
                                (617) 727-2200, ext. 2084

Dated:   July 6, 2006