UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————

PEOPLES SUPER LIQUOR STORES, INC.,)
WINE & SPIRITS RETAILERS, INC., and JOHN)
HARONIAN,                                )
                                         )
              Plaintiffs,                )
                                         )
v.                                       )
                                         )
EDDIE J. JENKINS, in his capacity as Chairman of)
the  ALCOHOLIC  BEVERAGES  CONTROL)          CIVIL ACTION
COMMISSION, SUZANNE IANNELLA and)            NO. 04-CV-12219-PBS
ROBERT  CRONIN,  in  their  capacities  as)
Commissioners    of    the    ALCOHOLIC)
BEVERAGES CONTROL COMMISSION,            )
                                         )
              Defendants,                )
                                         )
v.                                       )
                                         )
WINE  &  SPIRITS  WHOLESALERS  OF)
MASSACHUSETTS  and  MASSACHUSETTS)
WHOLESALERS OF MALT BEVERAGES, INC.,)
                                         )
              Defendants/Intervenors.    )
                                         )

———————————————————

**WINE & SPIRITS WHOLESALERS OF MASSACHUSETTS AND
MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC.'S
MEMORANDUM IN SUPPORT OF THEIR MOTION
TO INTERVENE AS DEFENDANTS**

WINE & SPIRITS WHOLESALERS OF
MASSACHUSETTS and MASSACHUSETTS
WHOLESALERS OF MALT BEVERAGES, INC.

By their attorneys,

Robert S. Frank, Jr. (BBO No. 177240)
Robert M. Buchanan, Jr. (BBO No. 545910)
Christopher R. Blazejewski (BBO No. 665258)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Wine & Spirits Wholesalers of Massachusetts and Massachusetts Wholesalers of Malt Beverages, Inc. (collectively, the "Wholesalers") file this memorandum in support of their motion for leave to intervene in this case as defendants pursuant to Fed. R. Civ. P. 24. This Court's September 14 ruling denying motions for reconsideration, along with the result of the November 7 election, have brought into sharp focus the issues to be decided in this case. This Court has requested briefing of questions relating to ERISA preemption and the dormant Commerce Clause. See Memorandum and Order dated May 8, 2006, at pages 31 and 45. Particularly with respect to the dormant Commerce Clause issue, the Wholesalers' participation will bring industry knowledge and a unique perspective which will help to assess accurately whether the statutory provisions at issue have any effect on interstate commerce -- and, if so, whether that effect is clearly excessive in relation to the local benefits.

The defendants assent to intervention by the Wholesalers. The Wholesalers' intervention will not prejudice the plaintiffs and will not delay the disposition of this case. Accordingly, the Wholesalers qualify for intervention as of right under Rule 24(a). In the alternative, the Wholesalers respectfully urge that their participation will enhance the development and presentation of the issues in this action, and request permissive intervention under Rule 24(b).

## I.    STATEMENT OF INTEREST

Wine & Spirits Wholesalers of Massachusetts and Massachusetts Wholesalers of Malt Beverages, Inc. are the trade associations of wholesalers of alcoholic beverages in Massachusetts. Together, their members include substantially all wholesalers of alcoholic beverages in Massachusetts. Since 1933, these wholesalers and their predecessors have been a central component in the three-tier system of alcoholic beverage distribution in Massachusetts that is prescribed by statute -- suppliers who hold

certificates of compliance sell to licensed wholesalers, and licensed wholesalers sell to licensed retailers. Suppliers cannot be wholesalers; and, in general, wholesalers are not retailers. Mass. G.L. c. 138, §§ 18-18B. Each tier is subject to close supervision by the Massachusetts Alcoholic Beverages Control Commission (the "ABCC"). The ABCC regulates the conduct of, and adjudicates disputes between, industry members.

The structure described above, and many other provisions of Mass. G.L. c. 138, are designed to prevent aggregations of power in the alcoholic beverage industry. The statute that is at issue in this case, G.L. c. 138 § 15, is part of that structure. The requirement that no person control, directly or indirectly, more than three "package store" licenses applies equally to all Section 15 licensees and prospective licensees. It prevents the creation of statewide retail behemoths. Johnson v. Martignetti, 374 Mass. 784, 792 (1978). The Wholesalers have an interest in preserving the three-license limit, because it maintains the presently existing balance of negotiating power between individual wholesalers and their individual retailer customers. The Wholesalers have made investments in reliance on the three-license system, and they have a substantial interest in preserving it.

The Wholesalers should be allowed to participate in this action in order to represent this interest. Their intervention will enhance the presentation and development of the issues. As we will explain more fully below:

(a) The Wholesalers have a private interest in preserving the three-license limit. Their private interest is not antithetical to the public interest, but it is different from the interest of the general public, and, for that reason, is not adequately represented by the Alcoholic Beverages Control Commission or the Attorney General's Office.

(b) The Wholesalers and their counsel have knowledge about the real world dealings between suppliers, wholesalers and retailers, knowledge that is different, in this respect, than the knowledge of the ABCC or the Attorney General's Office.

(c) The Wholesalers' participation will enhance litigation and briefing of the remaining issues under ERISA and the dormant Commerce Clause. As the Court proceeds to balance the various considerations that are relevant under <u>Pike v. Bruce Church Inc.</u>, 397 U.S. 137 (1970), it will be helpful to have the Wholesalers' participation.

(d) Intervention is sought prior to the commencement of discovery in this case and will not delay the resolution of the case.

## II.    ARGUMENT

The Attorney General's Office has assented to the Wholesalers' motion to intervene. As this assent indicates, the Wholesalers' intervention will enhance the adjudication of this action, will not prejudice the existing parties, and will advance an interest that is not now fully represented. <u>See Daggett v. Comm'n on Gov't Ethics and Election Practices</u>, 172 F.3d 104, 114 (1st Cir. 1999) (observing that "the position of the Attorney General in favor of intervention ... is entitled to some weight in the Rule 24 equation") (Lynch, J., concurring). <u>See also Johnson v. Suffolk University</u>, C.A. No. 02-12603-PBS, 2002 WL 31426734 (Oct. 28, 2002) (Saris, J.) (allowing motion to intervene and noting that the motion was unopposed).

A.    The Wholesalers May Intervene As Of Right Under Rule 24(a)

Rule 24(a)(2) states, in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: ... [1] when the applicant claims an interest relating to the property or transaction which is the subject of the action and [2] applicant is so situated that the disposition of the action may as a practical matter

-3-

impair or impede the applicant's ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties.

The Wholesalers meet all of the requirements for intervention under Rule 24(a)(2).

    1.    <u>The Wholesalers Have An Interest Relating to the Subject of the Action</u>

The Wholesalers have a substantial private interest in preserving the three-license limit and statutory provisions that are ancillary to that limit. The Plaintiffs' challenge to Section 15, if successful, would allow aggregations of power at the retail level of the alcoholic beverage industry that the legislature intended to prevent. <u>Johnson</u>, 347 Mass. at 792. The Wholesalers would find themselves negotiating with businesses -- Wal-Mart might be an example -- that are vastly larger than the individual members of the wholesaler associations.

The courts have applied a "broad reading of interest" under the first criterion stated in Rule 24(a)(2). That criterion is readily satisfied where (as here) a trade association's members are significantly affected by the statute that is at issue. <u>Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n</u>, 197 F.3d 560, 566 (1st Cir. 1999). <u>Accord</u> <u>Conservation Law Foundation v. Mosbacher</u>, 966 F.2d 33, 43 (1st Cir. 1992) (fishing associations had sufficient interest because changes in fishing regulations would affect their business directly); <u>Daggett</u>, 172 F.3d at 110 (prospective candidates who planned to run for office using public funding had sufficient interest in action challenging the funding statute); <u>New York Public Interest Group, Inc. v. Regents of Univ. of State of New York</u>, 516 F.2d 350, 351-52 (2d Cir. 1975) (pharmacist association had sufficient interest because changes in the regulation of prescription drug advertising would have an economic effect on pharmacists).

2.    The Disposition Of This Action, As A Practical Matter, May Impair Or
      Impede The Wholesalers' Ability To Protect Their Interest

The Wholesalers are so situated that the disposition of this action may, as a practical matter, impair or impede the Wholesalers' ability to protect their interest. If this Court were to rule in favor of the plaintiffs, striking down the three-license limit, the ABCC would cease to enforce the statute and the Wholesalers would have no realistic chance to relitigate the issue. Such a scenario "easily satisfies" the practical test of adverse effect. See Daggett, 172 F.3d at 110-11 (the possibility of a federal court injunction, enjoining a state commission from implementing a statute, "easily satisfies" the test).

3.    The Wholesalers' Interest Is Not Adequately Represented By The Existing
      Parties

The Wholesalers have a distinct private interest in preserving the three-license limit. They do not wish to be subject to the exercise of market power by multi-license retail giants, whether they are supermarkets, retail chains, or franchise grants. Although the ABCC, represented by the Attorney General's Office, is defending Section 15 in this action, it represents (and should represent) the interest of the public at large. As demonstrated by the recent referendum campaign, its primary focus is on regulatory supervision of industry members, the prevention of the sale of alcoholic beverages to minors, and the public health and safety interests associated with the sale and consumption of alcoholic beverages. It cannot, and should not, be expected to champion the private interest of the Wholesalers. The defendant members of the ABCC, moreover, are responsible for supervising and regulating the conduct of the individual wholesalers. Their perspective is inherently different from that of the Wholesalers themselves.

-5-

"Typically, an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 545-46 (1st Cir. 2006). "An intervenor need only show that representation *may* be inadequate, not that it is inadequate." Conservation Law Foundation, 966 F.2d at 44, citing Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972) (emphasis supplied). "Doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action." Sierra Club v. Robertson, 960 F.2d 83, 86 (8th Cir. 1992).

This year the First Circuit explained that: "[W]e have stressed the case-specific nature of this inquiry ... and have discouraged district courts from identifying only a limited number of 'cubbyholes' for inadequate representation claims." B. Fernandez & Hnos., 440 F.3d at 546 (citations omitted). Although there is a "presumption" of adequate representation where the state defends a statute, "the intervenor need only offer an adequate explanation as to why it is not sufficiently represented by the named party" in order to overcome that presumption. Id. Thus, "'[p]resumption' means no more in this context than calling for an adequate explanation as to why what is assumed -- here, adequate representation -- is not so." State of Maine v. Director, U.S. Fish and Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001). See also State Police for Automatic Ret. Ass'n v. DiFava, 164 F. Supp.2d 141, 152 (D. Mass. 2001) (Saris, J.) (summarizing the considerations in a case where motion to intervene had been granted earlier).

"The facts of these cases vary greatly and whether the proposed intervenors' explanation of inadequacy suffices must be determined 'in keeping with a commonsense view of the overall litigation.'" State of Maine, 262 F.3d at 19 (citing Public Service Co. of New Hampshire v. Patch, 136 F.3d 197, 204 (1998)). In this case, common sense

-6-

shows -- and the assent of the Attorney General's Office illustrates -- that the Wholesalers' private interest diverges from the interest of the ABCC and is not adequately represented by the Attorney General's Office.

(a) <u>Distinct Private Interest.</u> "One way for [an] intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named party." <u>B. Fernandez & Hnos.</u>, 440 F.3d at 546. The Wholesalers have a pecuniary stake in preventing the aggregation of bargaining power by individual retailers. For the reasons stated above, the private interest of the Wholesalers in preserving the three-license limit is different from the interest of the ABCC and the general public.

In <u>State of Maine</u>, 262 F.3d at 20, the First Circuit noted that it had reversed district court decisions denying intervention where "the intervenors had direct private interests which the government had and could have no interest in protecting." <u>Cotter v. Mass. Ass'n of Minority Law Enforcement Officers</u>, 219 F.3d 31 (1st Cir. 2000), and <u>Conservation Law Foundation</u> were cited as examples. The court explained that "in each of those cases the intervenors had direct private interests (in <u>Cotter</u>, 219 F.3d at 34-37, the jobs and promotions available to black police officers and in <u>Conservation Law Foundation</u>, 966 F.2d at 44, commercial fishing interests) which the government had and could have no interest in protecting." <u>State of Maine</u>, 262 F.3d at 20. The same is true here. The Wholesalers have a specific private interest that the Attorney General's Office is not charged with protecting.

(b) <u>The ABCC Regulates Wholesalers And Does Not Speak For Them.</u> The ABCC regulates and supervises the Wholesalers. It does not speak on their behalf. Ordinarily, ABCC decisions are developed after parties present their opposing interests in

a litigation format. Moreover, because the ABCC is the regulatory body charged with interpreting and applying Chapter 138, it has interpreted, and likely will issue further interpretations of, Section 15 that are relevant to this case. The Wholesalers (who are not likely to be parties to any proceeding in which the ABCC interprets Section 15) should have an opportunity to present their views as to the proper interpretation of the Section 15, before this Court rules on the constitutional permissibility of relevant parts of that statute.

(c) Additional Knowledge. The Wholesalers are intimately familiar with the business realities of the dealings between suppliers, wholesalers and retailers. To be sure, the ABCC has substantial expertise in the alcoholic beverage industry from its vantage as the regulator. However, the ABCC does not have direct knowledge of the day-to-day reality of the business that the Wholesalers possess. In this respect, the Wholesalers' knowledge is greater -- as well as more detailed and less theoretical -- than the knowledge of the ABBC or the Attorney General's Office, and they may be better situated to respond to arguments made by industry participants, like the plaintiffs. The Wholesalers are better positioned, as a practical matter, to deal with expert discovery than is the Attorney General.

(d) Enhanced Presentation. The Court has called for further litigation and briefing with respect to the dormant Commerce Clause and ERISA preemption. See Memorandum And Order dated May 8, 2006, pages 31, 45. The plaintiffs have asserted — "almost in passing" — that the three-license limit violates the Commerce Clause. Id. As the Court has noted, analysis of this challenge, if Plaintiffs advance it to the starting point, will require a balancing test. Id. "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly

-8-

excessive in relation to the putative local benefits." <u>Pike</u>, 397 U.S. at 142. <u>See also</u>

<u>Pharm. Research and Mfrs. Of America v. Concannon</u>, 249 F.3d 66, 83-84 (1st Cir. 2001)

(state's program to reduce drug prices valid under the dormant Commerce Clause). At

the September 14, 2006 hearing in this case, the plaintiffs attempted to characterize

Section 15 as inherently discriminatory. The Wholesalers' knowledge of the business

realities will help to refute any further arguments of that kind. If the plaintiffs advance

any serious theory that the three-license limit burdens interstate commerce, the

Wholesalers' participation will help to test that theory. And, if a balancing test is applied,

the Wholesalers' perspective as industry participants will help to present the local

benefits of Section 15 as weighed against any claim of a "clearly excessive" burden.

        (e) <u>Representation In Discussions Of Settlement Or Appeal</u>. Any case

may be resolved by a discussion of compromise. Because the Wholesalers' interests are

different from those of the ABCC, the Wholesalers' interests may not be adequately

represented by the Attorney General's Office. Similarly, if the case is not settled, and in

the event that any aspect of Section 15 is struck down, the Wholesalers' and the ABCC's

interests may diverge with respect to the pursuit of an appeal. <u>See</u> <u>Mass. Food Ass'n</u>,

197 F.3d at 566; <u>see also</u> <u>Sea Shore Corp. v. Sullivan</u>, 158 F.3d 51 (1st Cir. 1998).

    For all of these reasons, the interest of the Wholesalers is not adequately

represented by the Attorney General's Office. The assent of the Attorney General's

Office speaks volumes, as Judge Lynch explained in <u>Daggett</u>:

> It is a political reality that no state Attorney General is
> likely to say that the legal representation provided by his or
> her office is inadequate.... While the position of the
> Attorney General in favor of intervention cannot be
> dispositive, it is entitled to some weight in the Rule 24
> equation. If the Attorney General felt that intervenors

> would burden the defense of the statute or prolong the litigation, he could easily say so. He has not done do here.

172 F.3d at 114 (concurring opinion).

    4.    <u>The Wholesalers' Application Is Timely Under The Circumstances</u>

Rule 24(a) states that a motion to intervene must be "timely." "[T]imeliness is to be determined from all of the circumstances." <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d 775, 784 (1st Cir. 1988) (quoting <u>NAACP v. New York</u>, 413 U.S. 345, 366 (1973)) (intervention should be allowed, even twelve weeks after the judgment on the merits and after the time for appeal from that judgment had expired).[1] In appropriate cases, intervention has been found timely even where final judgment had already been entered. <u>See</u> <u>United Airlines, Inc. v. McDonald</u>, 432 U.S. 385, 394-95 (1977). <u>See, e.g.</u>, <u>In re Wyoming Tight Sands Antitrust Cases</u>, 121 F.R.D. 685 (D. Kan. 1987) (intervention permitted after three year delay). This factor does not present a substantial issue in the circumstances of this case.

    a.    <u>Length Of Time</u>

This Court's September 14 ruling denying motions for reconsideration has brought into sharp focus the issues to be decided, and it has moved this case from a stage in which pure legal issues were presented to a stage where facts are to be developed and industry realities determined. Although this case has been pending since October 22, 2004, only the motion to dismiss stage is complete. Discovery has not yet begun.

---

[1] The First Circuit has identified four factors that should be considered, along with others, in determining whether a motion to intervene is timely. Those factors are: (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention. <u>United States v. Metropolitan District Comm'n</u>, 865 F.2d 2, 5 (1st Cir. 1989). In that case the First Circuit held that a petition to intervene was properly denied, where the motion was brought more than two years after a similarly situated party had been granted permission to intervene, and where the issue of liability had already been resolved. There has been no such delay in this case.

Moreover, on November 7, 2006, the voters of Massachusetts defeated Referendum Question 1. If passed, Referendum Question 1 would have eliminated the three-license restriction for retail sales of wine in food stores, and would immediately have rendered this case moot to that extent for these sales of wine (and, likely, moot in the future with respect to other alcoholic beverage products). The Wholesalers are seeking to intervene promptly after this Court's rulings on the motion to dismiss framed the issues and the voters preserved the relevant part of Section 15.

b.     No Prejudice To The Existing Parties Due To Length Of Time

"The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion." Fiandaca v. Cunningham, 827 F.2d 825, 834 (1st Cir. 1987) (reversing district court's denial of motion to intervene); Stallworth v. Monsanto, 558 F.2d 257, 265 (5th Cir. 1977) (petition to intervene should have been allowed, even where motion was brought after summary judgment had been granted and remedial order entered).

There will be no cognizable prejudice to the existing parties from the Wholesalers' intervention, as the defendants' assent to this motion illustrates. The existing parties' positions will be no different if the Wholesalers are allowed to intervene now than they would have been if the Wholesalers had intervened earlier.

B.     The Wholesalers Should Be Permitted To Intervene Under Rule 24(b)

For all of the reasons stated above, and as indicated by the Attorney General's assent, the Court should conclude that the Wholesalers may intervene as of right under Rule 24(a). In the alternative, the Wholesalers respectfully request permissive intervention under Rule 24(b). This approach would make it unnecessary to decide

intervention-as-of-right issues, which have presented the First Circuit with substantial questions in the several cases cited above.

Rule 24(b)(2) provides in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Wholesalers' motion readily meets these standards. Where (as here) an intervenor demonstrates a distinct private interest, and where (as here) the intervention will not delay the decision of the case on the merits, the courts have ordinarily permitted intervention. See, e.g., Antilles Cement Corp. v. Acevedo Vila, 408 F.3d 41 (1st Cir. 2005) (granting permissive intervention, on appeal, to a cement manufacturer in an action challenging under the dormant Commerce Clause a statute regulating cement packaging and use); Mangual v. Rotger-Sabat, 317 F.3d 45 (1st Cir. 2003) (reversing district court and granting permissive intervention).

    1.    The Wholesalers' Participation Will Enhance This Litigation

The Attorney General's Office, in assenting to this Motion, has recognized that participation by the Wholesalers will enhance the development and presentation of the facts of this case, particularly with respect to the local benefits of the three-license limit and its practical (non-) effect on interstate commerce. For exactly this reason, the Court should permit intervention. See Daggett, 172 F.3d at 113.

    (a)    Distinct Private Interest. As noted earlier, the Wholesalers have a private interest in preserving the three-license limit. As explained above, the Wholesalers view the three-license limit from a different perspective than the ABCC, the Attorney General's Office, or the general public.

(b)    <u>The ABCC Regulates Wholesalers And Does Not Speak For Them</u>. As noted above, the ABCC regulates and supervises the Wholesalers. It does not speak on their behalf. In this action, the Wholesalers may disagree with the ABCC's statutory interpretations and should have an opportunity to present their own arguments.

(c)    <u>Additional Knowledge</u>. The Wholesalers are familiar with the day-to-day dealings between suppliers, wholesalers and retailers. In this respect, their knowledge is inherently greater than the knowledge of the ABCC or the Attorney General's Office. The Wholesalers are particularly well positioned to participate in expert discovery and to respond to allegations made by the industry participant plaintiffs.

(d)    <u>Enhanced Presentation</u>. The remaining Commerce Clause issue may require a balancing test. See Memorandum And Order dated May 8, 2006, page 45. As the Plaintiffs struggle to advance a theory of harm to interstate commerce, and as the Court balances any such alleged burden versus the local benefits of Section 15, it will be valuable to have the Wholesalers' perspective.[2] <u>See</u> pages 8-9, above.

(e)    <u>Representation In Any Discussion Of Compromise Or Appeal</u>. As noted above, the Wholesalers' interests may diverge from the interests of the ABCC with respect to any settlement discussions or the pursuit of an appeal. <u>See</u> page 11, above.

---

[2] In <u>Mass. Food Ass'n v. Sullivan</u>, 184 F.R.D. 217 (D. Mass. 1999) (Woodlock, J.), <u>aff'd</u> 197 F.3d 560 (1st Cir. 1999), Judge Woodlock granted a motion to dismiss and at the same time denied a motion to intervene. The Massachusetts Food Association had asserted that the three-license limit was preempted by the Sherman Act. Judge Woodlock (and later, the First Circuit) ruled that this assertion had no legal merit, because there were no private restraints at work. <u>Mass. Food Ass'n</u>, 197 F.3d at 565. Since the plaintiff's legal theory failed at the very first step in analysis, there was no need for further participation by intervenors. Judge Woodlock wrote: "This is not a fact-based dispute, so different facts, opinions and perspectives are of relatively limited assistance to the court." 184 F.R.D. at 225. The current case is different. Certain of plaintiffs' claims have survived the defendant's motion to dismiss. Fact issues may now be determined, and the balancing test described in <u>Pike v. Bruce Church</u> applied. <u>See</u> Memorandum And Order dated May 8, 2006, page 45. Therefore, the reasons that supported Judge Woodlock's ruling are inapplicable to this case at its present stage.

2.    The Wholesalers' Defense And The Existing Defense Have Questions Law And Fact In Common

The Wholesalers' defense and the present action arise from a common body of law and facts.  The Wholesalers seek to join in support of the Attorney General's Answer.  The Wholesalers' intervention will not increase the number of issues to be decided in the case.  This factor favors permitting intervention.  See Arizona v. California, 460 U.S. 605, 614 (1983) (allowing new party to intervene to assert identical claim in a case arising under the Supreme Court's original jurisdiction).

3.    The Wholesalers' Intervention Will Not Prejudice The Original Parties

The Attorney General's Office has assented to the Wholesalers' motion to intervene.  The existing plaintiffs will be in no worse position than if the Wholesalers had intervened earlier.  Thus the Wholesalers' intervention at this stage will not result in any cognizable prejudice to the existing parties.  See page 11, above.

4.    The Wholesalers' Intervention Will Not Unduly Delay The Adjudication Of The Rights Of The Original Parties

Finally, the Wholesalers' intervention will not delay the adjudication of this case. See In re Wyoming Tight Sands Antitrust Cases, 121 F.R.D. at 688.  Rather, as we have shown, the Wholesalers' intervention will enhance the presentation of the issues.

-14-

### III.    **CONCLUSION**

For all of the reasons stated above, the Wholesalers' motion to intervene as a defendant should be granted -- either as of right under Rule 24(a), or else on a permissive basis under Rule 24(b).

WINE    &    SPIRITS    WHOLESALERS    OF MASSACHUSETTS    and    MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC.

By its attorneys,


/s/ Robert S. Frank, Jr.
Robert S. Frank, Jr. (BBO No. 177240)
Robert M. Buchanan, Jr. (BBO No. 545910)
Christopher R. Blazejewski (BBO No. 665258)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

Date:  December 6, 2006

-15-

## CERTIFICATE OF SERVICE

I, Robert S. Frank, Jr., hereby certify that the above document filed through the

ECF system will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) on December 6, 2006.


/s/ Robert S. Frank, Jr.