FILED
IN CLERKS OFFICE
2006 DEC -7 P 12: 39
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEOPLE'S SUPER LIQUOR STORES, INC., WINE & SPIRITS RETAILERS, INC., and JOHN HARONIAN, <br><br> Plaintiffs, <br><br> v. <br><br> EDDIE JENKINS, in his capacity as Chairman of the Alcoholic Beverages Control Commission, SUZANNE IANELLA and ROBERT CRONIN, in their capacities as Commissioners of the Alcoholic Beverages Control Commission, <br><br> Defendants. | Civil Action <br> No. 04-CV-12219-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF
MASSACHUSETTS PACKAGE STORES ASSOCIATION INC.'S
MOTION TO INTERVENE AS OF RIGHT PURSUANT TO FED. R. CIV. P. 24(a)(2)**

The applicant for intervention, the Massachusetts Package Stores Association, Inc. (hereinafter "MassPack"), on behalf of its members, submits this memorandum of law in support of its motion for intervention as of right as a defendant in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. MassPack, which represents the hundreds of independent retail package stores in Massachusetts, has a clear and tangible interest in the outcome of this dispute. Now that the case has recently moved past motions to dismiss and the issues, both factual and legal, are coming into clearer focus, it is appropriate to allow MassPack to intervene to defend its interest and to assist the Court in resolving the constitutional and statutory challenges presented by the Plaintiffs. The Defendants have assented to this motion and the

Plaintiffs will not be prejudiced by allowing MassPack to intervene. Accordingly, the Court should grant MassPack's motion to intervene as of right.[1]

## Background

This case principally concerns the constitutionality, under the dormant commerce clause, of a provision of the Massachusetts General Laws that requires package store owners to reside in Massachusetts and further limits each owner to three retail package stores. G.L. ch. 138, § 15 provides in substance that "no person, firm, corporation, association or other combination of persons, directly or indirectly, or through any agent, employee, stockholder, officer or other person or subsidiary whatsoever, shall be granted, in the aggregate, more than three such licenses in the Commonwealth ...." The statute further provides that licenses may only be granted to "applicants therefore who are citizens and residents of the Commonwealth, or partnerships composed solely of such citizens and residents or to corporations organized under the laws of the Commonwealth and whereof all directors shall be citizens of the United States and a majority residents of the Commonwealth...."

Plaintiffs, two retail liquor stores and their owner, filed this action in October 2004 alleging that G.L. ch. 138, § 15, violated the Commerce Clause (Art. 1, § 8, cl. 3) and the first, fifth, and fourteenth amendments to the United States Constitution, and was also preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. See First Amended Complaint. The Plaintiffs have sought an order declaring the three store limit and the Massachusetts residency requirement invalid. The Defendants, who are sued in their official

---

[1] Alternatively, MassPack requests that permissive intervention be allowed pursuant to Fed. R. Civ. P. 24(b).

capacity as the chairman and members of the Alcoholic Beverages Control Commission (the "ABCC" or the "Commonwealth"), moved to dismiss the complaint.

After a lengthy evaluation of the Commonwealth's motion, the Court issued a decision dismissing all but three of the Plaintiffs' claims. People's Super Liquor Stores, Inc. et al. v. Jenkins, et al., 432 F. Supp. 2d 200 (D. Mass. 2006). The Court held, among other things, that the Massachusetts residency requirement was facially discriminatory under the dormant Commerce Clause and that the burden shifted to the Commonwealth to demonstrate that the statute serves a legitimate local purpose and that this purpose could not be served as well by available nondiscriminatory means. 432 F. Supp. 2d at 218. This Court also addressed the Plaintiffs' claim, made only in passing, that the three store limit violated the dormant Commerce Clause but declined to dismiss that claim, even though it would be analyzed under the balancing test in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), because there had not been any litigation on this question from either party in this case. Accordingly, the Court declined to dismiss this claim without further briefing from the parties. Id.[2] The Court subsequently denied various motions for reconsideration and in September of this year, issued a scheduling order directing that fact discovery was to be closed on January 31, 2007 and summary judgment motions were to be heard on July 11, 2007. Shortly thereafter, the Plaintiffs filed a Second Amended Complaint, but have apparently not yet propounded any discovery.

---

[2] The Court also declined to dismiss the Plaintiff's ERISA pre-emption claim because the issue had not been briefed extensively and there was no ruling from the ABCC concerning the applicability of § 15 to ERISA plans. Id.

### The Proposed Intervenor

Established in 1942, MassPack is a trade organization whose membership consists primarily of hundreds of independent retail package stores. MassPack was created to provide a unified voice for independent retailers on legislative and regulatory matters, especially those relating to control of the sale of alcohol and the maintenance of public welfare and safety. MassPack has over 700 members, including stores of all sizes and types. As required by § 15, those of MassPack's members who own retail package stores are limited to three stores each and must be Massachusetts residents.

MassPack and its members have strong interest in the outcome of this litigation. As a retail market participant, MassPack has a perspective on the operation of § 15 that is different from the regulatory perspective of the ABCC. Moreover, now that the case has moved past motions to dismiss and the parties are attempting to frame the factual issues for summary judgment, MassPack's participation in this lawsuit will assist the Court in the development of a factual record on which the Plaintiffs' remaining constitutional and statutory challenges can be properly evaluated.

In addition, MassPack has a unique economic interest in preserving both the three store license limit and the Massachusetts residency requirement. That interest, which is not shared by members of the public at large or by any other party in the industry, was recognized by this Court in Massachusetts Food Association, et al. v. Sullivan, 184 F.R.D. 217, 222 (D. Mass. 1999). That interest is also different than the public interest and the defendants, who are represented in this case by the Office of the Attorney General.

Moreover, because MassPack's interest is different from that of the Commonwealth, MassPack should have a "seat at the table" to ensure that its interest is adequately protected.

Last but not least, this case differs in one important respect from this Court's decision in Massachusetts Food Association, et al. v. Sullivan, where the case was dismissed on purely legal issues and prior to discovery. Because some of the Plaintiffs' claims have survived a motion to dismiss, this Court will have to consider a factual record. MassPack's intimate familiarity with the realities and economics of the retail package store industry will ensure a full development of the factual record. Therefore, MassPack's intervention will augment the resources of the Attorney General's Office and of the ABCC with respect to the highly regulated retail package store industry.

## Argument

Intervention as of right is governed by Fed. R. Civ. P. 24(a)(2), which requires an applicant to show the following four elements: (1) the application must be timely; (2) the applicant must claim an interest relating to the property or transaction that is the subject matter of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect its interest; and (4) the applicant must show that its interest may not be adequately represented by existing parties. Public Service Co. of New Hampshire v. Patch, 136 F.3d 197 (1st Cir. 1998); Travelers Indemnify Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989).

As discussed below, MassPack satisfies each of these requirements and therefore should be permitted to intervene as of right.

A. The Application To Intervene Is Timely Filed

As noted above, after the Court dismissed all of the Plaintiffs' claims except for two claims under the dormant commerce clause and a claim that a portion of G. L. ch. 138, § 15 is preempted by ERISA. The Defendants have only recently filed an answer and the Plaintiffs have not propounded any discovery. Pursuant to the Court's scheduling order, the close of fact discovery is currently set for January 31, 2007 and motions for summary judgment are due to be heard in July 2007. Although MassPack, if permitted to intervene, does not intend to conduct extensive discovery, it intends to play an active role in the development and presentation of a factual record that will demonstrate that neither the residency requirement nor the three store limit violate the dormant Commerce Clause. The Court has thus far been focused on purely legal issues. MassPack's motion to intervene is timely because it is filed soon after the Court defined those of Plaintiffs' claims that must be decided by summary judgment and prior to the commencement of discovery by the Plaintiffs. See Cabot LNG Corp. v. Puerto Rico Electric Power Authority, 162 F.R.D. 427, 429 (D. P.R. 1995).

B. MassPack Has A Substantial Interest In The Subject Of This Action

To justify intervention as of right, a prospective intervenor's claim must bear a "sufficiently close relationship" to the dispute between the original parties and must be direct, not contingent. Public Service Co. of New Hampshire v. Patch, 136 F.3d 197 (1st Cir. 1998); Conservation Law Foundation v. Mosbacher, 966 F.2d 39, 42 (1st Cir. 1992); Dingwell, 884 F.2d at 638. The interest must also be "significantly protectable." Patch, 136 F.3d at 205; Mosbacher, 966 F.2d at 41. As set forth below, MassPack's interest in the subject matter of this litigation meets these requirements, for any judicial determination that the three store limit and

the Massachusetts residency requirement contained in G.L. ch. 138, § 15 violates the dormant Commerce Clause will significantly impact the business of MassPack's members.

Preliminarily, it is well established that a trade association may intervene to protect the economic interests of its members. For example, in Mosbacher, public interest groups sought to require the Secretary of Commerce to adopt a regulatory scheme to eliminate overfishing. Finding that the intervenor fishing associations had an interest in the litigation because their members were the subjects of the regulatory plan at issue, and changes in the regulations would directly effect their business, the First Circuit upheld the order allowing them to intervene pursuant to Fed. R. Civ. P. 24(a)(2). Id. at 43; see also NYNEX Corp. v. FCC, 153 F.R.D. 1, 6 (D. Me. 1994) (Association members' economic interests in sustaining statute so that local telephone companies did not enter market would be directly affected by outcome of litigation). The implicit finding of these cases that the associations were the proper parties to intervene on behalf of their members is consistent with the well-settled law on this issue. See New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, 516 F. 2d 350, 352 (2d Cir. 1975) (pharmaceutical association); Charlesgate Nursing Center v. Rhode Island, 723 F. Supp. 859, 862-63 (D. R.I. 1989) (associations representing hospitals and nursing homes); National Wild Life Federation v. Hodel, 651 F. Supp. 473, 474 (E.D. Ky. 1987) (trade associations representing coal mining companies); General Motors Corporation v. Burns, 50 F.R.D. 401, 403 (D. Hawaii 1970) (automobile dealers association).[3]

---

[3] MassPack's right to intervene to protect the interests of its members has previously been recognized. See, e.g., Bond Liquor Store, Inc. v. ABCC, 336 Mass. 70, 71 (1957).

MassPack's members have a direct economic interest in the continued enforcement of G.L. ch. 138, § 15. As the Supreme Judicial Court noted in Johnson v. Martignetti, 374 Mass. 784 (1978): "[M]any sound reasons had been advanced to support restrictions on the number of liquor licenses allowed any one business interest. Concentration of retailing in the hands of an economically powerful few has been thought to intensify the dangers of liquor sales stimulations, thereby threatening trade stability and the promotion of temperance. Regulation of the number of licenses issued, therefore, aims at controlling the tendency towards concentration of power in the liquor industry; preventing monopolies; avoiding practices such as indiscriminate price cutting and excessive advertising; and preserving the right of small independent liquor dealers to do business." Id. at 792. In the event the statute is invalidated, MassPack's members will bear the brunt of these practices in the form of detrimental economic effects.

Significantly, in a prior challenge to the three store limit contained in G.L. ch. 138, § 15, this Court concluded that MassPack had a "sufficient interest in the case for intervention purposes." See Massachusetts Food Association, et al. v. Sullivan, 184 F.R.D. 217 (D. Mass. 1999). In that case, the Massachusetts Food Association sought to invalidate the three store limit contained in G.L. ch. 138, § 15 on the grounds that it violated the Sherman Anti-Trust Act. This Court (per Judge Woodlock) found that MassPack had an economic interest in the preservation of "a state regulatory statute which it claims benefits its members and which in part be intended to benefit its members." 184 F.R.D. at 222. The Court concluded MassPack's interest in economic security seems direct and concrete enough to find that MassPack has a sufficient interest in the case for intervention purposes." Id.

If anything, the instant case presents a stronger case for intervention by MassPack because, unlike the Plaintiffs in <u>Massachusetts Food Association</u>, who only sought to invalidate the three store limit, the Plaintiffs in this case are also challenging the residency requirement of G.L. ch. 138, § 15. Elimination of both the three store limit and the residency requirement will likely have a greater impact than simply removing the three store limit, which, as this Court noted in <u>Massachusetts Food Association</u>, will accelerate the "entry of more and larger competitors into the retail liquor market (which) will have a negative economic impact on some retail operations." <u>Id</u>. Because the number of package store licenses in Massachusetts is essentially fixed, allowing highly capitalized non-resident corporations to own an unlimited number of package stores will have an immediate and negative impact on current retailers, who are essentially small retail businesses. Therefore, allowing non-residents to own retail package stores not only threatens a detailed regulatory scheme, it poses a significant threat to a local industry entrusted by the Legislature with selling alcoholic beverages. As a result, this Court should again find that MassPack has a substantial interest in the subject of this action.

    C.    <u>The Disposition Of This Action Will Impair The Ability</u>
<u>Of MassPack's Members To Protect Their Interests</u>

MassPack's members are "so situated that the disposition of this action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). In this matter, the Plaintiffs seek a declaration that the three-store limit and the Massachusetts residency requirement contained in G.L. ch. 138, § 15 is violative of the dormant Commerce Clause of the United States Constitution. Should this Court issue a decision invalidating this statute, MassPack would be affected adversely by that determination but unless it is allowed to

intervene, it would be without recourse to litigate the issue subsequently. Mosbacher, 966 F.2d at 43 (should plaintiff prevail adverse impact on fisherman would be direct rather than contingent on the outcome of later proceedings).[4] Given the adverse and permanent nature of such a ruling, it is appropriate that MassPack be heard within the context of this lawsuit.

        D.       The Interests Of MassPack's Members May Not Be Adequately Represented by the ABCC

MassPack is not required to establish that the representation of its members' interests is inadequate as a prerequisite to intervention under Rule 24(a)(2). Rather, as the United States Supreme Court has held, this prong is satisfied as long as the party seeking intervention can show that representation of its interests may be inadequate. Trbovich v. United Mine Workers, 404 U.S. 528, 538 n. 10 (1972); see also Mosbacher, 966 F.2d at 44. The Trbovich court characterized this burden as "minimal." 404 U.S. at 538 n. 10.

In Mosbacher, the First Circuit determined that the Secretary of Commerce could not adequately represent the interests of the intervening fishing associations in that

> The secretary's judgments are necessarily constrained by his view of the public welfare. While the secretary may well believe that what best serves the public welfare will also best serve the overall interests of the fisherman, the fact remains that the fisherman may see their own interests in a different perhaps more parochial light.

Id. at 44. The Court went on to express skepticism about a government entity's ability to represent adequately the interests of private parties, and further noted the potential for conflict of

---

[4] The direct nature of the adverse impact MassPack members would experience if the plaintiffs succeed in striking down the three-store limit contrasts with those decisions finding the interest claimed to be contingent and therefore denying requests for intervention. See Dingwell, 884 F.2d at 638-39 (insurer that reserved right to deny coverage could not intervene in federal CERCLA action against insured because state courts were available to adjudicate coverage issue later).

interest. See id. at 44-45 (citing National Farm Lines v. Interstate Commerce Commission, 564 F.2d 381, 383-84 (10th Cir. 1977) (government representation is frequently inadequate to protect the interest of private parties)); Dimond v. District of Columbia, 792 F.2d 179, 192-93 (D.C. Cir. 1986) (government would be shirking its duty were it to advance narrow financial interests of intervenor insurer at the expense of public interest); see also Chiglo v. City of Preston, 104 F.3d 185, 187-88 (8th Cir. 1997); Cabot LNG Corp., 162 F.R.D. at 431.

Of additional value in this context is the decision in New York Public Interest Research Group, Inc. cited by the First Circuit in Mosbacher, 966 F.2d at 43. In that case, a pharmaceutical association and individual pharmacists sought to intervene as defendants in an action brought by consumers to enjoin enforcement of a regulation prohibiting advertisement of prescription drug prices. The regulation allegedly resulted in consumer ignorance of where drugs could be purchased at the lowest price and therefore was favorable to pharmacists. While the pharmacists and the government both sought to sustain the regulation, the court found the government inadequate to represent the interest of the pharmacists since the pharmacists would likely make a more vigorous presentation of the economic issues and the government acknowledged that the pharmacists' interests may differ significantly. Id. at 352; see also Dimond, 792 F.2d at 192-93 (insurer permitted to intervene as defendant in constitutional challenge to no fault laws because it sought to protect a financial interest not shared by the citizens of the District of Columbia); Natural Resources Defense Council v. Costle, 561 F.2d 904, 912 (D.C. Cir. 1977) (rubber and chemical companies permitted to intervene in proceedings in which EPA was to establish pollution regulations because companies focused more narrowly than EPA on regulations affecting their industries).

The Defendants in this case are members of a government agency charged by statute with the "general supervision of the conduct of the business of manufacturing, importing, exporting, storing, transporting, and selling alcoholic beverages." G.L. ch. 6, § 44. The ABCC has the duty to recommend legislation it deems necessary or desirable for the regulation and control of traffic in alcoholic beverages and for the promotion of temperance. Id. Thus, the Defendants must litigate this action with an eye toward fulfilling these statutory responsibilities.

In contrast, MassPack will focus more narrowly on preserving a competitive marketplace and thereby protecting the financial interests of its members in that marketplace. MassPack's members are largely small, local retail establishments. Such interests would be affected dramatically by an invalidation of the three store limit and the residency requirement contained in ch. 138, § 15. Therefore, while some of the arguments of MassPack and the ABCC members may be similar, the latter's position concerning the statute and regulations is constrained by its view of the public interest and its statutory obligations as set forth above. MassPack will defend the action from the perspective of a regulated industry rather than the general public and, therefore, allowance of its motion as an intervenor is necessary to protect its interests. See NYNEX Corp., 153 F.R.D. at 3 (whereas FCC would likely defend challenge to federal statute from perspective of national public welfare, intervenor association would present perspective from local cable market); see also Burns, 50 F.R.D. at 405-06.

The portion of this Court's decision in Massachusetts Food Association that MassPack's interests would be adequately represented by the Commonwealth is not applicable to this case. In Massachusetts Food Association, the case was dismissed by the Court on purely legal

arguments advanced by the ABCC. Thus, the Court concluded in that case that MassPack's participation in that case would be duplicative of the Commonwealth. 184 F.R.D. at 224.

By contrast, in this case, some of the Plaintiffs' have survived the Commonwealth's motion to dismiss. In particular, this Court has ruled that the residency requirement discriminates against out-of-state retailers and the Defendants bear the burden of showing there is a legitimate local purpose. Therefore, a factual record must be developed by the Commonwealth to defend the statute. Although this case may ultimately be resolved by summary judgment, there are a number of important factual issues that will need to be developed to defend the constitutionality of the statute. As noted above, MassPack and its members have a unique perspective, gathered from years of experience as a day-to-day market participant, and not available to the Commonwealth, that will assist the Court in understanding the statute being challenged.

Second, should the Commonwealth seek to resolve this matter by settlement, there is no assurance that MassPack's interests will be adequately represented by the Commonwealth. To the contrary, given the inherently adversarial nature of the relationship between the Commonwealth and the package store owners, MassPack has a significant interest in ensuring that the interests of its members are not compromised. In short, unless MassPack is allowed to intervene at this stage, it will not have a 'seat at the table' in any later discussions.

    E.    In the Event the Court Declines to Allow MassPack to Intervene as of Right, Permissive Intervention Should be Allowed Pursuant to Fed. R. Civ. P. 24(b)

There is abundant support under the present circumstances for MassPack to be allowed to intervene as of right. In the event the court concludes that the required elements have not been

shown, however, MassPack requests that the court grant permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2). See 7C Wright, Miller & Kane, Federal Practice and Procedure, ' 1902 at 231 (1986) ("[a]n applicant who does not meet the test of subdivision (a) may be permitted to intervene under subdivision (b)(2) if his claim or defense and the main action have a question of law or fact in common"). From the discussion set forth above, it is apparent that this prerequisite has been satisfied.

### Conclusion

For all of the above reasons, the Massachusetts Package Stores Association respectfully requests that the court grant its motion to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2). Alternatively, MassPack requests that permissive intervention be granted under Fed.R.Civ.P. 24(b).

> Respectfully submitted,
>
> MASSACHUSETTS PACKAGE
> STORES ASSOCIATION, INC.
>
> By its attorneys,
>
> _____
> Bruce A. Singal, BBO #464420
> Richard Goldstein, BBO #565482
> DONOGHUE, BARRETT & SINGAL, P.C.
> One Beacon Street, Suite 1320
> Boston, Massachusetts 02108
> (617) 720-5090

Dated: December 7, 2006