UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PEOPLES SUPER LIQUOR STORES, INC.,
*et al.*,

     *Plaintiffs,*

*v.*

EDDIE J. JENKINS, in his capacity as
Chairman of the Alcoholic Beverages
Control Commission, *et al.*,

     *Defendants.*

Civil Action No. 04-cv-12219-PBS

**PLAINTIFFS' MEMORANDUM IN OPPOSITION to the MOTIONS of
(1) WINE & SPIRITS WHOLESALERS OF MASSACHUSETTS and
MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC. and
(2) MASSACHUSETTS PACKAGE STORES ASSOCIATION, INC.,
SEEKING LEAVE to INTERVENE as DEFENDANTS**

The Plaintiffs oppose the two motions seeking leave to intervene filed by (1) Wine & Spirits Wholesalers of Massachusetts and Massachusetts Wholesalers of Malt Beverages, Inc. and (2) Massachusetts Package Stores Association, Inc. Whenever a statute is challenged, there will always be some group of individuals or businesses who could claim to have a more personal stake in the outcome of the litigation than the governmental entity defending that statute or the general public. Given that fact, Rule 24 sets, as a matter of public policy, a higher standard for interventions where the government is a party. *Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999).

This is not the first time that Wine & Spirits Wholesalers of Massachusetts, Massachusetts Wholesalers of Malt Beverages, Inc. and MassPack have sought to intervene in a case challenging the three-store limit. Judge Woodlock of this Court previously addressed a challenge to the three-store limit. That challenge, based on the Sherman Act, was rejected under

the state action doctrine. *Massachusetts Food Ass'n v. Sullivan*, 184 F.R.D. 217, 228 (D.Mass. 1999), *aff'd*, *Massachusetts Food Ass'n v. Massachusetts Alcoholic Beverages Control Commission*, 197 F.3d 560, 563-66 (1st Cir. 1999), *cert. denied*, 529 U.S. 1105 (2000).[1] Wine & Spirits Wholesalers of Massachusetts, Massachusetts Wholesalers of Malt Beverages, Inc. and MassPack sought to intervene in that case. The motions were rejected based on the failure to show a legally protected right at issue in litigation over the three-store limit and based on the presumption that the state will adequately represent the interests of the Associations. *Massachusetts Food Ass'n*, 184 F.R.D. at 221 ("Applying First Circuit teachings to this case, I find that the Wholesalers have not set out an interest sufficient to justify intervention as of right"); *id*. at 222 ("I find that MassPack's interests are adequately represented by the Commonwealth"). More recently, on December 18, 2006, Judge Zobel denied a motion by the Wholesaler Associations, which was nearly identical to the present motion, seeking to intervene in a case challenging the Massachusetts statute governing direct shipments of wine. *See Family Winemakers of California et al v. Jenkins et al*, 06-cv-11682.

The Wholesalers and MassPack fail to present grounds for disrupting this litigation through the addition of unnecessary additional parties or grounds for overcoming the presumption that the Commonwealth will adequately defend its statute. They claim to have an interest that is different from the Commonwealth, but the only interests identified are the

---

[1] In rejecting the Sherman claim, the First Circuit noted that the three-store limit could be subject to a Commerce Clause challenge:

> But unless such a statute licenses or commands a *private* restraint, this is a matter for the voters and not for the federal courts—at least so far as the Sherman Act is concerned. Of course, such state statutes remain subject to the constraints of the Commerce Clause and other constitutional provisions.

*Massachusetts Food Ass'n*, 197 F.3d at 566.

potential lost profits due to more efficient competition in the retail industry.  Protection from competition is not a legitimate interest sufficient to pass even *Pike* scrutiny.  *See Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 36 (1980) ("where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected"), *quoting, Philadelphia v. New Jersey*, 437 U.S. at 624.  The would-be intervenors seek to intervene and protect that which by law is not protectable.  If the Wholesalers and MassPack have facts to add, they can do so as witnesses for the Defendants.  If they have legal arguments to raise, they can do so through amicus briefs.

**ARGUMENT**

**I.     Restrictions of interstate commerce cannot be justified on the grounds of protectionism**

**A.     Any additional arguments to be offered by the Wholesalers would not assist this Court in resolving the matter**

The Wholesalers seek to intervene in order to protect their "interest in preserving the three-license limit, because it maintains the presently existing balance of negotiating power between individual wholesalers and their individual retailer customers."  *Wholesalers Memorandum in Support of Intervention*, p. 2.  The Wholesalers note that without the three-store limit, "[t]he Wholesalers would find themselves negotiating with businesses -- Wal-Mart might be an example -- that are vastly larger than the individual members of the wholesaler associations."  *Id*, p. 4.

This interest in maintaining economic power cannot justify discrimination against interstate commerce or the excessive burdening of products that flow within the stream of interstate commerce.  As recently noted by the First Circuit, "laws which deter competition simply to benefit those entities already operating within a state are not legitimate exercises of

state power." *Walgreen Co. v. Rullan*, 405 F.3d 50, 56, n.4 (1st Cir. 2005), *cert. denied*, 126

S.Ct. 1059 (2006).  See also, *H.P. Hood & Sons, Inc. v. Du Mond,* 336 U.S. 525, 531-32 (1949)

(finding unconstitutional licensing restriction that, in the name of limiting competition, prevented

a milk producer from adding additional facilities); *Yamaha Motor Corp., U.S.A. v. Jim's*

*Motorcycle, Inc.*, 401 F.3d 560 (4th Cir. 2005) (invalidating, on dormant Commerce Clause

grounds, state law which regulated the ownership of local motorcycle franchises to prevent

excessive competition with existing franchises).[2]

The Wholesalers admit to the protectionist effect of this law in stating that "[t]hey do not

wish to be subject to the exercise of market power by multi-license retail giants." *Wholesalers*

*Memorandum in Support of Intervention*, p. 5.  These in-state Wholesalers further claim that

their participation "will help to present the ***local*** benefits of Section 15 as weighed against any

claim of a 'clearly excessive' burden." *Id.*, p. 9 (emphasis added).[3]  The Supreme Court has

---

[2] Both the wholesalers and MassPack claim the Plaintiffs' Commerce Clause challenge is limited to a claim of excessive burdening (the *Pike* test).  This is incorrect.  In addressing Plaintiff's motion for leave to amend their complaint, the ABCC conceded that amendment was not necessary because the claims in the existing complaint were broad enough to encompass an excessive burdening claim and a discrimination against interstate commerce claim.  *Transcript of September 14, 2006 Hearing*, 15:5-15:11 ("MR. CRAY:  Well, in terms of -- their motion to amend has lots of different aspects to it, but in terms of simply the extent to which they say they want to be able to make a Commerce Clause challenge to the three-store rule, they have.  The Court has acknowledged that briefly in the prior opinion.  It's in the case. I understand the rules of notice pleading, and it's going forward").  Should the wholesalers or MassPack intend to challenge the breadth of Plaintiffs' dormant Commerce Clause claims, this would again unnecessarily add to the cost of this litigation and delay reaching the merits of the constitutional claims.

[3] At least one of the local benefits is increased profit to the Wholesalers. *See, e.g., Wholesalers Memorandum in Support of Intervention*, p. 5.  The Wholesalers later take the contradictory position in this brief that this local benefit has no effect on interstate commerce.  *Id.,* p. 12.  As Justice Cardozo stated:

> The argument is pressed upon us, however, that the end to be served by the Milk Control Act is something more than the economic welfare of the farmers or of any other class or classes. The end to be served is the maintenance of a regular and adequate supply of pure and wholesome milk, the supply being in jeopardy when the farmers of the state are unable to earn a living income.  Let such an exception be admitted, and all that a state will have to do

rejected the argument that a State may act to save local industry. *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 205 (1994) ("If we were to accept these arguments, we would make a virtue of the vice that the rule against discrimination condemns. Preservation of local industry by protecting it from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits.").

Economic protectionism not only fails as justification under the dormant Commerce Clause, the interest is so illegitimate, that it fails even under the most lenient form of constitutional scrutiny – the rational basis test. "Courts have repeatedly recognized that protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Craigmiles v. Giles*, 312 F.3d 220, 224 (6th Cir. 2002) (invalidating restrictions on casket sales on rational relationship grounds), citing, *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624 (1978) ("where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected"); *H.P. Hood & Sons*, 336 U.S. at 537-38; *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411 (1983) (distinguishing between legitimate state purposes and "providing a benefit to special interests").

---

in times of stress and strain is to say that its farmers and merchants and workmen must be protected against competition from without, lest they go upon the poor relief lists or perish altogether. To give entrance to that excuse would be to invite a speedy end of our national solidarity. The Constitution was framed under the dominion of a political philosophy less parochial in range. It was framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division.

*Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 522-23 (1935).

**B.     The interest in protecting "local industry" from "highly capitalized non-resident corporations" offered by MassPack is not a valid defense to Plaintiffs' Commerce Clause claims**

The reason Plaintiffs' Commerce Clause challenge is based on both discrimination and excessive burdening theories is clearly stated by MassPack. "Because the number of package store licenses in Massachusetts is essentially fixed, allowing highly capitalized non-resident corporations to own an unlimited number of package stores will have an immediate and negative impact on current retailers, who are essentially small [in-state] retail businesses." *MassPack's Memorandum In Support of Intervention*, p.9. The residency requirement contained within Section 15 means that the benefits of keeping efficient competition runs to a group consisting entirely of in-state entities. *Compare Walgreen*, *supra* (finding unconstitutional pharmacy restriction that appeared facially neutral, but that had a disproportionate impact on out-of-state entities). The purpose and effect of the challenged three-store rule and residency requirement is to protect local business from more efficient interstate competition. *MassPack's Memorandum In Support of Intervention*, p.9. (elimination of the challenged provisions "poses a significant threat to a local industry . . ."). The function of the Commerce Clause is to elimination efforts by state to protect local business interests from interstate competition. "Preservation of local industry by protecting it from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 205 (1994). Therefore, MassPack's offered justification for the challenged provisions would fail as a matter of law.

## II.    Intervention as of right

### A.    Adequacy of representation

In order to grant the motion to intervene as of right, this Court would first have to find that the Massachusetts Attorney General's office will do an inadequate job of defending this case. Rule 24(a) does not permit intervention where, "the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24. "[T]he adequacy of interest requirement is more than a paper tiger. A party that seeks to intervene as of right must produce some tangible basis to support a claim of purported inadequacy." *Public Serv. Co. v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998) (rebutting the presumption "requires 'a strong affirmative showing' that the agency (or its members) is not fairly representing the applicants' interests").

The proposed intervenors share the same goal as the Defendant ABCC – defending the constitutionality of the challenged statute. The Wholesalers have even stated that they "will join in the Answer filed by the Attorney General." *Wholesalers' Motion*, p.2. "[A]dequate representation is presumed where the goals of the applicants are the same as those as the plaintiff or defendant." *Daggett*, 172 F.3d at 111. The burden of overcoming this presumption of adequate representation is on the party seeking to intervene. *Daggett*, 172 F.3d at 111.

As acknowledged by the Wholesalers and MassPack, the normal presumption of adequate representation is stronger where the government is a party. "[T]he government[,] in defending the validity of the statute[,] is presumed to be representing adequately the interests of all citizens who support the statute." *Daggett*, 172 F.3d at 111. Where the government is the party that the would-be intervenor seeks to support, "[a] minimal showing that the representation may be inadequate is not sufficient. The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state."

*Environmental Defense Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979).  The

Wholesalers and MassPack argue that they meet this requirement of showing a divergent interest

from that of the Commonwealth because of their direct economic interest in the continuation of

the restriction on competition.  With most economic legislation, there is usually some group of

businesses that enjoys the financial rewards of the business opportunities or isolation from

competition that the statutory scheme creates. Given this, Courts have rejected "direct economic

interest" as grounds for overriding the presumption of adequate representation and against

permitting intervention, when a state is defending a statute.

> [T]he [applicants] failed to overcome the presumption that their interests will be
> adequately represented by the State of Colorado.  They may indeed have a more
> direct economic interest in the operation of the water projects in issue than does
> the state.  Nevertheless, there appears to be no possible divergence between their
> position and the state's position on the primary issue. All oppose the claim that a
> comprehensive environmental impact statement is required by law.   The
> arguments of the water districts would be merely cumulative.

*Higginson*, 631 F.2d at 740.

In *United Nuclear Corp. v. Cannon*, 696 F.2d 141 (1st Cir. 1982), a would-be intervenor

could not overcome the presumption the Rhode Island Attorney General would adequately

defend the constitutionality of a state statute by arguing that it had a more substantial interest in

subject matter.  *United Nuclear Corp.*, 696 F.2d at 144.  Even the introduction of an internal

memorandum of the Attorney General's concluding that the statute was unconstitutional was not

enough to overcome the presumption that the Attorney General would adequately represent the

interest of the would-be intervenors.  *United Nuclear Corp.*, 696 F.2d at 144 ("In this case,

although CLF may have a more specialized interest, the state and CLF have the same ultimate

goal of upholding and defending the constitutional validity of the Rhode Island statute.  The

practical litigation posture of CLF would be identical to that of the state").  *See also, Ruthardt v.*

*United States*, 164 F. Supp. 2d 232, 246-47 (D.Mass. 2001) (Woodlock, J.) ("It may be true that the Commissioner has less personal economic interest in the outcome of this action, but her defense of Massachusetts' distribution scheme has been well developed and vigorous").

The Eighth Circuit has provided an example of what constitutes a sufficient showing to rebut the presumption of adequacy of reorientation where the government is a party. "This presumption may be rebutted by a strong showing of inadequate representation, as, for example, by showing that the interest of the would-be intervenor cannot be subsumed within the public interest represented by the government entity." *Curry v. Regents of the Univ.,* 167 F.3d 420, 423 (8th Cir. 1999) (students seeking to intervene in First Amendment challenge to student activity fees). Neither the Wholesalers nor MassPack have offered such an interest. Instead they merely assert that they seek the same interest as the governmental defendants – defending the constitutionality of the challenged statute. *Wafe v. Goldschmidt*, 673 F.2d 182, 186, n. 7 (7th Cir. 1982) ("it is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represents an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty").

In *Daggett*, *supra*, the would-be intervenors argued that the Maine Attorney General may have been reluctant to defend Maine's Clean Elections Law by pointing to alleged corruption associated with the pre-reform Maine election system. The First Circuit rejected this argument holding "it would take more than speculation to show that he is likely to soft-pedal arguments so clearly helpful to his cause--and perhaps even essential to it." *Daggett*, 172 F.3d at 112. The First Circuit went on to reject arguments that the would-be intervenors could overcome the presumptions of adequate representation by pointing out that their arguments would differ from

those of the Attorney General.  The Court held that, "[e]ven if the state were not prepared to stress this corruption issue, so-called 'legislative facts,' which go to the justification for a statute, usually are not proved through trial evidence but rather by material set forth in the briefs, the ordinary limits on judicial notice having no application to legislative facts . . . There may be instances where the amicus brief would not do the job, but once again applicants have made no showing on this point."  *Id.*  Here, the Wholesalers have affirmatively stated that they will raise the same defenses as the Commonwealth.  *Wholesalers' Motion*, p.2 ("The Wholesalers will join the Answer filed by the Attorney General").  MassPack has offered no grounds to believe that the Commonwealth will not continue to fully defend Section 15.  Other than vague assertions that their interests are different from those of the public, MassPack fail to indicate precisely how their arguments and factual presentations will differ from those of the Commonwealth.

The suggestion that the "unique perspective" and "industry knowledge" of the Wholesalers means that their interest would not be adequately represented if they were not present as parties to this litigation is an argument specifically rejected by the First Circuit.  As noted by the First Circuit, in such a case, the would-be intervenors could simply be called as witnesses in the case or assist the Attorney general in the preparation of its case.  *Daggett*, 172 F.3d at 113; *United Nuclear Corp.*, 696 F.2d at 144.

While Judge Woodlock did find "[t]he interest in economic security seems direct and concrete enough to find that MassPack has a sufficient interest in the case for intervention purposes" in his next sentence he found: "By contrast, I find that MassPack's interests are adequately represented by the Commonwealth in this case."  *Massachusetts Food Ass'n*, 184 F.R.D. at 222 (denying intervention to MassPack).  The finding that the Commonwealth would adequately represent MassPack's interest was not limited to the fact that the case was resolved at

the motion to dismiss phase as suggested by MassPack. The decision was based on the failure of the Wholesalers and MassPack to overcome the presumption of adequate representation. "First Circuit precedent, however, suggests that this potential divergence of interests by itself is insufficient to overcome the dual presumptions of adequate representation present in this case." *Id*. at 223. "[T]he First Circuit generally finds inadequate representation by a governmental agency only when that agency fails to pursue a case wholeheartedly or when its interests diverge in fact from the proposed intervenors' interests." *Id*. The First Circuit agreed with this assessment: "Here, there is no doubt that the Commonwealth was zealously interested in upholding the validity of the statute." *Massachusetts Food Ass'n*, 197 F.3d at 567.

As demonstrated by the successful defense (on Sherman grounds) mounted by the ABCC and Attorney General in the *Massachusetts Food Ass'n* case, the Commonwealth has previously wholeheartedly defended the three-store limit. Judging by the motion to dismiss, which was supported by multiple supplemental memoranda and a motion for reconsideration, filed by the ABCC so far in this litigation, there is no reason to believe it will not continue to vigorously defend the three-store limit in this case.

### B.    Standing

The Wholesalers and MassPack do not have standing to become parties to this action. *Curry,* 167 F.3d at 422 ("Article III standing is a prerequisite for intervention in a federal lawsuit"). Whether or not retailers are permitted to possess a beneficial interest in more than three liquor stores does not affect any ***legally protected*** interest of the members of the Wholesaler Associations or MassPack. The interest asserted by the Wholesalers is one of preserving their superior economic position in negotiations with retailers, not one of protecting their own businesses from ***legal*** harm. MassPack states its interest as protecting its members

from having to compete with "highly capitalized non-resident corporations."  Again, having to function within free market competition is not a ***legal*** harm.

Article III standing requires a showing of:  (1) an injury in fact, which is an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent; (2) causation; and (3) redressability.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).[4] These standing requirements are incorporated into Rule 24's requirement that a party seeking to intervene must demonstrate "a significantly protectable interest."  *Patch*, 136 F.3d at 205 (rejecting an "interest in the lower electric rates expected to result from restructuring falls well outside the pale").

The interest the Wholesalers seek to protect through their intervention is their superior bargaining power over fractured retailers.  *Wholesalers' Memorandum*, p. 1 ("Together, [Wholesalers Associations'] members include substantially all wholesalers of alcoholic beverages in Massachusetts"); *Id*, p. 2 ("The Wholesalers have an interest in preserving the three-license limit, because it maintains the presently existing balance of negotiating power between individual wholesalers and their individual retailer customers").  In order to establish standing, the Wholesaler Associations must establish that their members enjoy a ***legally*** protected right in maintaining that superior bargaining power over retailers.  No such legally

---

[4] As the proposed intervenors are associations presumably seeking to act on behalf of their members rather than based on some legally cognizable right of the associations themselves, organizational standing must also be demonstrated.

> An organization has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of the individual members in the law suit.

*Hunt v. Washington State Apple Advertising Com's*, 432 U.S. 333, 343 (1977).

protected interest exists, and so the Wholesaler Associations lack the Article III standing required for their intervention. *Curry,* 167 F.3d at 422. The same is true of MassPack, whose offered interest is protecting the profitability that results from the lack of competition. Instead of offering a legally protected right, the would-be intervenors speculate that they would financially benefit from the continued fractionalization of the retail liquor market. Speculative economic interests cannot form the basis for an intervention.

> To cinch matters, the Grouped Appellants' interest in obtaining lower electric rates also has an overly contingent quality. This is not a case in which ongoing litigation directly threatens an economic right or benefit presently enjoyed by any would-be intervenor. It is, rather, a case in which these would-be intervenors root their professed economic interest in an as yet unrealized expectancy of lower electric rates.

*Patch*, 136 F.3d at 205-06 (internal citations omitted). The Wholesaler and MassPack root their professed economic interest in the unrealized expectancy that the elimination of the three-store limit will result in decreased profitability for their members. This is simply too speculative to form the basis for intervention and provides no basis at all from Article III standing.

> The Wholesalers' economic interests in this case are simply too general and too contingent to be sufficient . . . §15 does not address the Wholesalers at all; it merely affects a broad market in which they play a separate part . . . the Wholesalers' interests are entirely contingent.

*Massachusetts Food Ass'n*, 184 F.R.D. at 221. The Wholesalers admit as much in the instant motion by complaining that they "are not likely to be parties to any proceeding in which the ABCC interprets Section 15. *Wholesalers' Memorandum*, p. 8. If the Wholesalers have no standing before the agency charged with oversight of this issue, there is no reason to give them standing in a case challenging the constitutionality of that provision. MassPack similarly speculates that its members will not thrive in an open market.

## III.    Permissive intervention

Permissive intervention should only be granted "[u]pon timely application" and where it is shown that the intervention "will [not] unduly delay or prejudice the adjudication of the rights of the original parties."  Fed.R.Civ.P. 24(b)(2).

This matter was filed in 2004.  The Wholesalers and MassPack waited until December of 2006 to file their motions for leave to intervene.  Their applications are not timely.  As noted above, the arguments in favor of economic protectionism will add little of value to this litigation given that economic protectionism is not a legitimate interest that could satisfy the requirements of heightened scrutiny under the Commerce Clause.  In fact, the elimination of such economic protectionism is the very purpose of the dormant Commerce Clause.  *Philadelphia v. New Jersey,* 437 U.S. 617, 625 (1978) ("where simple economic protectionism is effected by state legislation, a virtually *per se* rule of invalidity has been erected"); *Massachusetts Food Ass'n,* 184 F.R.D. at 225 ("I conclude that they would contribute little more to this case than alternatively phrased legal arguments").  Any additional citations or differing take on legal authority the Wholesalers and MassPack may raise can be adequately brought to this Court's attention through amici briefs.

While both proposed intevenors assert that permitting their intervention would not delay this litigation, MassPack hints that if permitted to intervene, it would seek to extend discovery. *MassPack Memo In Support of Intervention*, p.6 ("the close of fact discovery is <u>currently</u> set for January 31, 2007" (emphasis added)).  By waiting more than 25 months before filing their motions for leave to intervene, the Wholesalers and MassPack have created a dilemma for themselves, they must distinguish the First Circuit's decision in *Massachusetts Food Association* – rejecting their intervention because of adequate representation.  They attempt to do so by

saying that the present case will raise factual issues that they will be able to address. But they must also claim their motions are not untimely and will not delay or add to the cost of the litigation. The 25 month delay in seeking leave to intervene must either delay and add to the cost of this litigation or the would be intervenors must claim that there is little they can add in discovery because there is little in the way of additional factual development they can add to this case. The truth is, there is little they can add to this litigation that cannot be accomplished through amici briefs. The addition of new parties will result in the reopening of discovery so that the Plaintiffs can explore what, if any, new theories or facts the Wholesalers and MassPack would bring to the case.

> Unquestionably, allowing the Consumer applicants full-party status would delay the adjudication of this action. Even if the intervenors were to call no witnesses of their own, they would be the source of an additional layer of motions, briefs, objections, and cross-examinations that would invariably show the progress of this case. The Court might be willing to accept such delays if the efforts of the prospective intervenors could be expected to contribute to the just and equitable resolution of the issues at bar. However . . ., [where a state] seeks the same ultimate outcome in this litigation as the Consumer applicants--appears ready, willing, and able to advance all of the arguments that the Consumer applicants would offer. Because their full-party presence would only engender delays and repetition, and thus unnecessarily place further demands on the resources of this Court and of the parties, the Consumer applicants will not be permitted to intervene in this action.

*Public Service Co. of New Hampshire v. Patch*, 173 F.R.D. 17, 29 (D.N.H. 1997), *aff'd*, *Patch*, *supra*. The same has already been found to be true concerning the Wholesalers and MassPack with regard to challenges to the three-store rule. Even though "the Wholesalers would add very little to this case", *Massachusetts Food Ass'n*, 184 F.R.D. at 225, their presence would unquestionably add to the expense of this litigation:

> [D]espite their protestations to the contrary, MassPack and the Wholesalers would, if brought into this lawsuit, inevitably increase the demands of case management for the court and the other parties. I conclude that they would contribute little more to this case than alternatively phrased legal arguments. This they can do through their present role as amici curiae. Because they have

> "not shown any justification for the delay and added demands on resources of the court and the parties that [their] intervention would be likely to cause,"

*Id.*  This was true of the last challenge to the three-store limit and it remains true with the present litigation.  This action was filed in 2004.  The Plaintiffs before this Court should not have to bear the added expense and delays that would result from the inclusion of these additional parties.

## CONCLUSION

This Court should deny the untimely motions of (1) Wine & Spirits Wholesalers of Massachusetts and Massachusetts Wholesalers of Malt Beverages, Inc. and of (2) MassPack, seeking leave to intervene as defendants.  The inclusion of additional parties in this action will only serve to increase the costs of this litigation, while delaying a final determination of the constitutional questions raised in this matter.

Respectfully submitted,

PEOPLES SUPER LIQUOR STORES, INC.,
WINE & SPIRITS RETAILERS, INC.
and JOHN HARONIAN,

by their attorneys,

_____/s/  Michael Williams_____
Robert J. Roughsedge  (BBO# 638180)
Michael Williams       (BBO# 634062)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210-1736
Telephone: (617) 439-4990
Facsimile:  (617) 439-3987
MWilliams@Lawson-Weitzen.com

**CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 20, 2006.

_____/s/ Michael Williams_____