UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
PEOPLES SUPER LIQUOR STORES, INC., WINE &       )
SPIRITS RETAILERS, INC., and JOHN HARONIAN,     )
                                                )
                      Plaintiffs,               )
v.                                              )
                                                )
EDDIE J. JENKINS, in his capacity as Chairman of the )
ALCOHOLIC BEVERAGES CONTROL                     )
COMMISSION, SUZANNE IANNELLA and ROBERT )
CRONIN, in their capacities as Commissioners of the )
ALCOHOLIC BEVERAGES CONTROL                     )
COMMISSION,                                     )
                      Defendants,               )
                                                )        CIVIL ACTION
v.                                              )        NO. 04-CV-12219-PBS
                                                )
WINE & SPIRITS WHOLESALERS OF                   )
MASSACHUSETTS and MASSACHUSETTS                 )
WHOLESALERS OF MALT BEVERAGES, INC.,            )
                                                )
                      Defendants/Intervenors,   )
v.                                              )
                                                )
MASSACHUSETTS PACKAGE STORES                    )
ASSOCIATION, INC.,                              )
                                                )
                      Defendant/Intervenor.     )
_____ )

**REPLY MEMORANDUM IN SUPPORT OF THE WHOLESALERS'
MOTION TO INTERVENE**

WINE & SPIRITS WHOLESALERS OF
MASSACHUSETTS and MASSACHUSETTS
WHOLESALERS OF MALT BEVERAGES, INC.

By their attorneys,

Robert S. Frank, Jr. (BBO No. 177240)
Robert M. Buchanan, Jr. (BBO No. 545910)
Christopher R. Blazejewski (BBO No. 665258)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

The Wholesalers – Wine & Spirits Wholesalers of Massachusetts and Massachusetts Wholesalers Of Malt Beverages, Inc.[1] – seek to intervene in this action. The Massachusetts Attorney General, charged with advancing the public interest, has assented to the Wholesalers' motion to intervene. Plaintiffs, advancing their private interest, have opposed the Motion. The plaintiffs would prefer to exclude all industry participants, apart from themselves, as parties to a case whose decision will affect the entire industry in Massachusetts. This Memorandum responds to the plaintiffs' Opposition ("Opp."). The Wholesalers' participation will enhance the development and presentation of the facts, and will sharpen analysis of the issues that remain in this case. Intervention will not "disrupt" the process of this action.

Plaintiffs' Opposition argues as though the Wholesalers must assert a winning position on the merits before they are permitted to intervene. The Opposition seeks to mix Rule 24 analysis with argument on the merits. This Reply Memorandum will briefly address each of the issues in their separate turn. Section I below sets out the steps that must be applied in Commerce Clause analysis of the Three-Store Limit. Section II below addresses the required tests for intervention under Rule 24(a). Section III below addresses Rule 24(b).

## I.    PLAINTIFFS' ARGUMENTS ON THE MERITS ARE MISDIRECTED AND INCORRECT.

Plaintiffs begin by mischaracterizing the Wholesalers' position and arguing the merits of this case. The Wholesalers pointed to their economic self-interest as a difference, and potential conflict, between their interests and those of the defendant

---

[1] MWMBI has changed its name to Beer Distributors of Massachusetts, Inc. If the Wholesalers' motion to intervene is granted, an Answer will be filed by Wine & Spirits Wholesalers of Massachusetts and Beer Distributors of Massachusetts, Inc.

members of the Massachusetts Alcoholic Beverages Control Commission ("ABCC"). The Wholesalers did not, and do not, argue that their self-interest is the justification for the Three-Store Limit established by G.L. c.138, § 15. The plaintiffs do not dispute the proposition that the Wholesalers' interest is different from that of the ABCC and the Massachusetts Attorney General. They argue instead that the Wholesalers' interest is not a sufficient justification for the Three-Store Limit. Their argument misses the point.

    A.    <u>The Three-Store Limit Is Distinct From The Residency Requirement</u>.

Plaintiffs assert that "[t]he purpose and effect of the challenged three-store rule . . . is to protect local business from more efficient interstate competitors." Opp. at 6. Their contention is not supported by evidence of record or legal authority. Moreover, plaintiffs incorrectly conflate the Three-Store Limit with the Residency Requirement. They are not the same. They serve distinct purposes. The Wholesalers will first address the plaintiffs' attack on the Three-Store Limit, and then reply to the plaintiffs' Rule 24 arguments.

    B.    <u>Commerce Clause Analysis Of The Three-Store Limit</u>.

The Commerce Clause "limits the powers of states 'to erect barriers against interstate trade.'" <u>Walgreen Co. v. Rullan</u>, 405 F.3d 50, 55 (1st Cir. 2005) (citing <u>Lewis v. BT Investment Managers, Inc.</u>, 447 U.S. 27, 35 (1980)). However, "[i]f the state law regulates in-state and out-of-state interests evenhandedly, the statute will be upheld 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" <u>Walgreen</u>, 405 F.3d at 55 (quoting <u>Pike v. Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970) (bracketed word added by the court)). A three-step analysis applies. We are directed (1) to "examine the burden the statute places on interstate commerce;" (2) "to evaluate the nature of the putative local benefits advanced by the statute;" and (3) "to consider whether the burden on interstate commerce is clearly

excessive as compared to the putative local benefits." Pharmaceutical Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 312 (1st Cir. 2005).

> 1. Plaintiffs Cannot Show A Significant Burden On Interstate Commerce.

First, "we must examine the burden the statute places on interstate commerce." Id. The second sentence of G.L. c. 138, §15 provides that: "No person shall be granted, in the aggregate, more than three such licenses in the Commonwealth. . . ." On its face, this Three-Store Limit is entirely neutral. It treats in-state entities and out-of-state entities alike, limiting each to a total of three package store licenses. It does not discriminate against interstate commerce. Therefore, plaintiffs must show that the Three-Store Limit, as applied, imposes a burden on interstate commerce. However, plaintiffs cite no fact and offer no argument that suggests that the facially neutral Three-Store Limit somehow disadvantages interstate commerce.

The District Court in Rhode Island (Torres, J.) recently addressed plaintiff John Haronian's attack on a Rhode Island statute prohibiting the holding of multiple retail licenses. Judge Torres correctly framed the analysis as follows:

> The Commerce Clause prevents states from adopting regulations that discriminate against interstate commerce by treating it less favorably [than] intrastate commerce.
>
> Notwithstanding the 21st Amendment, the ban on discrimination against interstate commerce applies to the sale of liquor as well as to the sale of other commodities. However, the State regulation of liquor sales does not necessarily run afoul of the Commerce Clause simply because it may have some incidental affect on interstate commerce.
>
> And this is where the 21st Amendment does have some significance. The 21st Amendment grants the states virtually complete control over whether to permit the importation of sale of liquor and how to structure the liquor distribution system if liquor sales are permitted.
>
> So a state may entirely ban the importation of liquor; it may prevent anyone other than the state from selling liquor as New Hampshire has

- 3 -

done; or it may regulate the system by which liquor is distributed, as Rhode Island has done.

The Commerce Clause is implicated only where the regulation discriminates against interstate commerce by significantly favoring in-state commercial interests over out-of-state commercial interests. As the Supreme Court said in Granholm, if the State chooses to allow direct shipment of wine, it must do so on even-handed terms.

If the State law regulates in-state and out-of-state interests even-handedly, the statute passes muster under the Commerce Clause unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.

The burden of establishing that a regulation is discriminatory rests on the party challenging it, in this case the plaintiffs.

Transcript of Bench Opinion in Wine & Spirits Retailers, Inc. v. Greer, No. 04-418T (D.R.I.) on June 20, 2006, at 19-20 (emphasis added) (copy attached as Exhibit A).[2] The Court ruled that plaintiff John Haronian had wholly failed to carry his burden of establishing that the Rhode Island statutes, which prohibit "chain store" and franchisor/franchisee relationships in the retail sale of alcoholic beverages, discriminate against interstate commerce on their face, or as applied. The Court characterized Mr. Haronian's Commerce Clause argument as "a logical non-sequitur." Id. at 22. Judge Torres said, "[B]y prohibiting franchise sales by anyone, the State has not conferred any competitive advantage on in-state sellers over out-of-state sellers, and the fact that the prohibition might have the incidental effect of preventing out-of-state interests as well as in-state interests from conducting franchise operations does not by itself establish

---

[2] The December 1, 2006 amendments to the Federal Rules recognize citation of unpublished decisions. See, e.g., FRAP Rule 32.1(b) ("If a party cites a federal judicial opinion, order, judgment, or other written disposition that is not available in a publicly accessible electronic database, the party must file and serve a copy of that opinion, order, judgment, or disposition with the brief or other paper in which it is cited.").

discrimination against interstate commerce." Id.[3]  Accordingly, the Court held that Rhode Island's chain store ban does not violate the Commerce Clause.

Similarly, here, the plaintiffs have not even attempted to sustain their burden as it relates to the Three-Store Limit.  By definition, Massachusetts liquor stores are located in Massachusetts.  Each store occupies a single location in Massachusetts.  Thus, the immediate impact of the Three-Store Limit is solely on intrastate commerce.  Moreover, the Three-Store Limit treats everyone alike.  It applies to interstate businesses – to WalMart and Stop and Shop – in the same way that it applies to purely local businesses.

The cases cited by plaintiffs illustrate various burdens on interstate commerce, none of which are present here.  In Pike v. Bruce Church, 397 U.S. at 137, for example, Arizona's regulations governing the packing of cantaloupes had the practical effect of requiring a California business to build an expensive packaging plant in Arizona.  In Walgreen, 405 F.3d at 55, a Puerto Rico statute, as it was actually applied, discriminated against out-of-state companies that wanted to open new pharmacies in Puerto Rico.  In Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc., 401 F.3d 560 (4th Cir. 2005), the Court examined the record established by a three-day trial and concluded that out-of-state motorcycle manufacturers were principally burdened by a state statute protecting incumbent dealers.[4]

---

[3] Judge Torres also said, in terms equally applicable to this case, ". . . whether a non-resident may obtain a Class A [retail] license has nothing whatever to do with the prohibition against chain stores and franchises, because even if an out-of-state entity could obtain a Class A license, it, like local Class A licensees, still would be prohibited from operating a chain store or participating in a franchise operation." Id. at 25.

[4] The "economic protectionism" cases cited by Plaintiffs (on pages 3-5 of their Opposition) involved either actual discrimination against interstate commerce or a burden on commerce in another state.  In Lewis v. BT Investment Managers, Inc., 447 U.S. 27 (1980), Florida statutes prohibited out-of-state banks and holding companies from owning or controlling certain Florida business and barred out-of-state corporations from exercising various trust powers and duties in Florida.  In H.P. Hood & Sons, Inc. v. DuMond, 336 U.S. 525 (1949), a New York statute, as applied, discriminated against out-of-state companies that wanted to operate additional facilities to acquire and ship milk in interstate commerce.  In West Lynn Creamery, Inc. v. Healy, 512 U.S. 186 (1994), the state imposed a fee on imports of milk, and distributed the funds to Massachusetts dairy farmers.  In Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511 (1935), a New York statute

The plaintiffs must, at some point, argue that, as a practical matter, the Three-Store Limit discriminates against interstate commerce.  If, and when, they advance such a position, the Wholesalers will be well-positioned to respond.

 2. The Three-Store Limit Serves Interests That Are Well Recognized Under State and Federal Law.

Second, "we are to evaluate the nature of the putative local benefits advanced by the statute."  Rowe, 429 F.3d at 312.  It is established in Massachusetts that the Three-Store Limit serves legitimate state interests.  The Supreme Judicial Court has held that:

> [M]any sound reasons had been advanced to support restrictions on the number of liquor licenses allowed any one business interest.  Concentration of retailing in the hands of an economically powerful few has been thought to intensify the dangers of liquor sales stimulations, thereby threatening trade stability and the promotion of temperance.  Regulation of the number of licenses issued, therefore, aims at controlling the tendency towards concentration of power in the liquor industry; preventing monopolies; avoiding practices such as indiscriminate price cutting and excessive advertising; and preserving the right of small independent liquor dealers to do business.

Johnson v. Martignetti, 374 Mass. 784, 792 (1978).

It is entirely consistent with the Constitution for a state legislature to protect small retailers from the accumulation of market power by larger rivals.  As the Supreme Court said in Lewis v. BT Investment Managers, 447 U.S. 27, 43 (1980): "Discouraging economic concentration . . . is undoubtedly [a] legitimate state interes[t]."

In Wine & Spirits Retail, Inc. v. Rhode Island, 418 F.3d 36, 51 (1st Cir. 2005), the First Circuit said of a statute limiting the number of retail licenses available to plaintiff Haronian in Rhode Island:

---

set a minimum price for purchases of milk from New York producers, and barred importers from bringing into New York milk that was purchased below that price in other states.  Finally, Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400 (1983) and Craigmiles v. Giles, 312 F.3d 220 (6th Cir. 2004) did not involve the Commerce Clause at all.

> … the statute is tantamount to an antitrust law – a category of regulation that recognizes the authority of the State to adjust the distribution of market power among commercial entities so as to prevent conditions that are, in its reasonably held view, harmful to healthy competition and free trade.
>
> It is black letter law that the constitutionality of the antitrust laws is not open to debate.  <u>Calif. Motor Transp.</u>, 404 U.S. at 515, 92 S.Ct. 609.  Such laws, by definition, regulate the ways in which market players may pool their capabilities to acquire market power.

Economists may debate the wisdom of preventing the aggregation of economic power in the hands of a few or encouraging a multiplicity of small businesses.  However, it is beyond dispute that the state Legislature has the constitutional authority to do so.  This authority is particularly clear in the alcoholic beverages industry, where the 21st Amendment expressly permits states to regulate the industry.[5]

It is not the role of the courts to decide whether the Legislature has made the correct public policy choice.  <u>See</u> <u>Rowe</u>, 429 F.3d at 312-13 ("It is not the place of this court . . . to pass judgment on the wisdom of the policies adopted by the Maine legislature.").  It is enough if the Legislature's choice has "putative" benefits.  <u>Rowe</u>, 429 F.3d at 312.  Plaintiffs argue that "protection from competition is not a legitimate interest sufficient to pass even <u>Pike</u> scrutiny."  Opp. at 3.  This is a <u>non</u> <u>sequitur</u>.  Many statutes limit the aggregation of economic power and thus could be styled protectionist.  Simply calling a statute protectionist does not render it unconstitutional.  In fact, there is flourishing competition among small retail establishments in Massachusetts.

---

[5] And particularly in Massachusetts, where in November, 2006 the citizens of the Commonwealth voted, by a margin of 54% to 46%, to affirm the Three-Store Limit as applied to sales of wine by supermarkets.  <u>See</u> The Official Massachusetts Information for Voters: 2006 Ballot Questions at 5 (published by William F. Galvin, Secretary of the Commonwealth) (copy attached as Exhibit B).

       3.     **Plaintiffs Cannot Show A Clearly Excessive Burden On Interstate Commerce.**

Third, "we are to consider whether the burden on interstate commerce is 'clearly excessive' as compared to the putative local benefits." <u>Rowe</u>, 429 F.3d at 312. In order to overcome the legitimate state interests noted above, plaintiffs would need to show that the Three-Store Limit imposes a "clearly excessive" burden on interstate commerce. So far, plaintiffs have failed to identify *any* burden on interstate commerce. The Three-Store Limit simply does not "discriminate against out-of-state goods." <u>Granholm v. Heald</u>, 544 U.S. 460, 484-85 (2005).

In sum, the plaintiffs' argument that the Three-Store Limit is unconstitutional fails at every step of the analysis.

## II.    THE WHOLESALERS HAVE MET THE TEST FOR INTERVENTION AS OF RIGHT.

The Massachusetts Attorney General on behalf of the ABCC – who will be on the same side as the Wholesalers – supports the Wholesalers' motion to intervene. Plaintiffs – which will be on the opposite side of the case – wish to avoid facing the Wholesalers as an opponent, and wish to exclude all industry participants, other than themselves, from this case.

    A.    <u>The Wholesalers Undeniably Have An Interest In The Outcome</u>.

Plaintiffs argue that the Wholesalers have "the same interest as the governmental defendants – defending the constitutionality of the challenged statute." Opp. at 9. That is the wrong analysis. The Wholesalers' <u>objective</u> – to defend the constitutionality of the statute – is the same as that of the governmental defendants. The Wholesalers' <u>interest</u> – to be free from the exercise of undue market power by giant retailers – is different from that of the governmental defendants.

The case law recognizes a "broad reading of interest." Massachusetts Food Ass'n v. ABCC, 197 F.3d 560, 566 (1st Cir. 1999); see also Wholesalers' Memorandum at 4-5. Plaintiffs acknowledge that the Wholesalers do have an interest. See Opp. at 3, 11-13. They do not deny that the Wholesalers' interest is different from that of the existing defendants.

Plaintiffs correctly note that case law includes a "presumption" that the state will adequately represent the interests of those who wish to uphold the constitutionality of a statute. Opp. at 7. However, plaintiffs fail to acknowledge the limited character of this "presumption." As the First Circuit has explained, "'[p]resumption' means no more in this context than calling for an adequate explanation" by the intervenor. State of Maine v. Director, U.S. Fish and Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001); see also Wholesalers' Memorandum at 6. The Wholesalers explained their interest in their Memorandum at 5-10, and explained five reasons why their interest is different from, and not adequately represented by, the Attorney General's Office. They are:

> (a) The Wholesalers have a distinct private interest – in keeping free from the exercise of market power by giant retailers – which the Attorney General's Office is not charged with advancing.
>
> (b) The ABCC regulates the Wholesalers. It does not speak for them.
>
> (c) The Wholesalers have additional real world knowledge that is not readily available to the ABCC.
>
> (d) As this litigation turns to fact development and (potentially) to a Pike balancing test, the Wholesalers' participation will enhance the presentation of the issues.
>
> (e) The Wholesalers should have a direct voice in case of settlement or appeal.

See Wholesalers' Memorandum at 8-9. The plaintiffs do not substantively contest any of these five propositions.

Plaintiffs rely heavily on Judge Woodlock's decision denying leave to intervene in Massachusetts Food Ass'n v. Sullivan, 184 F.R.D. 217 (D. Mass. 1999). See Opp. at pages 2, 10-11, 13-15. As the Wholesalers have already noted, the circumstances in this case are different. Massachusetts Food Ass'n was decided on a motion to dismiss. The Court determined that there was no need to develop the facts of that case. By contrast, this Court has denied (in part) the motion to dismiss and has indicated that factual development is needed. Industry participants are better situated than the Attorney General's Office to present real world facts about the industry in which they operate on a daily basis.

B.    Plaintiffs' Arguments On Standing Are Mistaken.

Recorking the same arguments in a different bottle, plaintiffs argue that the Wholesalers cannot intervene because they lack standing. Opp. at 11. Plaintiffs incorrectly assert that the Wholesalers must demonstrate Article III standing to intervene *as defendants*. Id. The First Circuit has described as "complex" and "confused" the question whether an intervenor needs standing to enter *as a plaintiff*. See Mangual v. Rotger-Sabat, 317 F.3d 45, 61-62 (1st Cir. 2003); Daggett v. Comm'n on Governmental Ethics and Election Practices, 172 F.3d 104, 109 (1st Cir. 1999). The First Circuit has never ruled that standing is required to enter *as a defendant*.

In order to initiate a suit, a plaintiff must have Article III standing. The standing concept simply does not apply to defendants. Moreover, there is already an Article III case or controversy between the existing parties. In these circumstances, intervention should be allowed where the tests set forth in Rule 24 is satisfied.

The Plaintiffs seem to assume that the Wholesalers must demonstrate a winning position on the merits before they may intervene. That assumption is incorrect. The

plaintiffs do not cite any cases under Rule 24 that require a showing that the intervenor's participation will vindicate a "legally protected interest." Cf. Opp. at 11-12. Even if standing were required here, the Wholesalers would readily satisfy the requirement. The Wholesalers have a concrete stake in this action. They will suffer economic disadvantage if the Three-Store Limit is declared unconstitutional. Their interest is decidedly different from the interest held by every other citizen or taxpayer. See Daggett, 172 F.3d at 109-110; see also Wholesalers' Memorandum at 5-10.

Plaintiffs argue that the Wholesalers' interest is not "legally protected". Opp. at 11. Their conclusion is not supported by any analysis. G.L. c. 138, § 15 is part of a larger statutory scheme that is designed to disperse and balance power in the alcoholic beverage industry. The statutes establish a three-tier system – supplier, wholesalers and retailers. Suppliers may not own wholesalers or retailers and, except in limited circumstances, may not refuse to sell to wholesalers. G.L. c. 138, §§ 18B and 25E. Wholesalers may not operate more than three warehouses. G.L. c. 138, § 20. Wholesalers may not discriminate in price among retailers. G.L. c. 138, § 25A. Licensees may not loan money to each other. G.L. c 138, § 25. No more than three package stores may be owned in common. G.L. c. 183, § 15. The Wholesalers have a real, substantial and cognizable interest in maintaining the legislatively-established balance.

Plaintiffs argue that this case is analogous to Public Serv. Co. v. Patch, 136 F.3d 197 (1st Cir. 1998). Opp. at 13. In Patch the intervenors sought the benefit of "as yet unrealized expectancy of lower electric rates." Patch, 136 F.3d at 205-06. This case is the opposite. Although they are burdened by other statutory provisions, the Wholesalers

are benefited by the Three-Store Limit. The plaintiffs seek to deprive them of this protection. The effect of such a change is not at all speculative.[6]

### III. THE WHOLESALERS HAVE ADVANCED GOOD GROUNDS FOR PERMISSIVE INTERVENTION.

A.     Intervention By The Wholesalers Will Not "Disrupt" This Litigation.

Plaintiffs assert without explanation that intervention by the Wholesalers will "disrupt" this litigation. Opp. at 2. Not so. It is only recently that the issues that require factual development have been framed.

Plaintiffs argue that this is no time for "reopening" discovery. Opp. at 15. However, by December 20, the date plaintiffs filed their Opposition, no party had conducted any discovery. No documents had been requested or produced. No interrogatories had been propounded or answered. No depositions had been noticed or taken. Only after the Wholesalers had moved to intervene – and after the plaintiffs had filed their Opposition – did the plaintiffs take their first steps seeking to initiate discovery. And even now, to our knowledge, the plaintiffs have not even served their Rule 26(a) Initial Disclosures.

B.     The Wholesalers' Motion Is Therefore Timely.

A motion to intervene is timely if it will not prejudice the existing parties. See Wholesalers' Memorandum at 11; see also Fiandaca v. Cunningham, 827 F.2d 825, 834 (1st Cir. 1987) ("The timeliness requirement was not designed to penalize prospective intervenors for failing to act promptly; rather, it insures that existing parties to the

---

[6] Plaintiffs refer to the requirement of showing organizational standing. Opp. at page 12, n. 4. Assuming that a prospective defendant must demonstrate standing, the Wholesalers satisfy the relevant test. First, the Wholesalers' members have a concrete stake in this action that is different from the public interest held by every other citizen or taxpayer. Second, the Wholesalers seek to protect their members' collective interest by preserving the Three-Store Limit. Third, the Wholesalers' efforts to preserve the Three-Store Limit do not require the participation of their individual members in this action. See New Hampshire Motor Transport Ass'n v. Rowe, 448 F.3d 66, 71-72 (1st. Cir. 2006) (holding that trade associations had representational standing to challenge provisions of Maine statute).

litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion"). The Wholesalers' motion will not disrupt this litigation or materially delay its progress. Therefore, the motion is timely.

## CONCLUSION

For all of the reasons stated above, the Wholesalers' motion to intervene as defendants should be granted.

<div style="margin-left:40%;">

WINE & SPIRITS WHOLESALERS OF
MASSACHUSETTS and MASSACHUSETTS
WHOLESALERS OF MALT BEVERAGES, INC.

By its attorneys,


*/s/ Robert M. Buchanan, Jr.*
Robert S. Frank, Jr. (BBO No. 177240)
Robert M. Buchanan, Jr. (BBO No. 545910)
Christopher R. Blazejewski (BBO No. 665258)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-5000

</div>

Date: January 4, 2007

**CERTIFICATE OF SERVICE**

 I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 4, 2007.

         *s/ Stacy L. Blasberg*
         Stacy L. Blasberg

4158011v6