UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEOPLE'S SUPER LIQUOR STORES, INC., WINE & SPIRITS RETAILERS, INC., and JOHN HARONIAN, <br><br> Plaintiffs, <br><br> v. <br><br> EDDIE JENKINS, in his capacity as Chairman of the Alcoholic Beverages Control Commission, SUZANNE IANELLA and ROBERT CRONIN, in their capacities as Commissioners of the Alcoholic Beverages Control Commission, <br><br> Defendants, <br><br> and <br><br> MASSACHUSETTS PACKAGE STORES ASSOCIATION, INC., <br><br> Defendant-Proposed Intervenor, <br><br> and <br><br> WINE & SPIRITS WHOLESALERS OF MASSACHUSETTS and MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC., <br><br> Defendants-Proposed Intervenors. | CIVIL ACTION <br> No. 04-CV-12219-PBS |

**MASSPACK'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE**

The Massachusetts Package Stores Association, Inc. ("MassPack") respectfully submits this reply memorandum in further support of its motion to intervene.[1]

---

[1] Many of the arguments in favor of MassPack's motion to intervene are also discussed in the Reply Memorandum filed by the Wholesalers. Accordingly, in order to avoid duplication, MassPack relies upon and incorporates by

Preliminary Statement

In this case, the Plaintiffs, who are retail merchants, are challenging the constitutionality, under the Commerce Clause of the United States Constitution, of the Residency Requirement and the Three Store Limit contained in G.L. ch. 138, § 15.  Retail package stores are among the most heavily regulated businesses in the Commonwealth.  Johnson v. Martignetti, 375 Mass. 290 (1978).  G.L. ch. 138, which is an integrated statutory scheme enacted by the Massachusetts Legislature in the wake of Prohibition, created a three-tier system or manufacturers, wholesalers, and retailers that, despite the passage of more than seventy years, remains "unquestionably legitimate."  Granholm v. Heald, 544 U.S. 460, 125 S. Ct. 1885 (2005).

In furtherance of the purposes sought to be advanced by the Legislature, G. L. ch. 138 imposes a number of restrictions on the operations of retail package stores, including (but not limited to) what kinds of alcohol sales licenses are allowed in each municipality, § 11, limitations on the total number of licenses in the Commonwealth, § 17, the location of stores, § 16C, the hours of operation, § 15, the character of the licensee in the community where the license is sought, § 15, the prices that can be charged, § 25A, the transferability of licenses, § 23, and prohibitions on loans to or from licensees, § 25.  G.L. ch. 138 also manifests a high degree of municipal control of alcohol sales and licensing, including the use of local licensing authorities, § 4, and municipal electoral approval prior to the issuance of any alcohol sales licenses, § 11.  The economics, scale, and financial structure of the retail package industry that has emerged as a result of the three-tier statutory scheme established by G.L. ch. 138 dovetails with the goals of

---

reference a number of the arguments addressed in the Wholesalers' Reply Memorandum, including the Wholesalers' defense of the Three Store Limit (Wholesalers' Reply Memorandum at pp. 2-8), why the Commonwealth will not necessarily provide adequate representation of MassPack's interests (Wholesalers' Reply Memorandum at p. 9), standing (Wholesalers' Reply Memorandum at pp. 10-12), and that intervention is timely and will not be disruptive of this litigation.  (Wholesalers' Reply Memorandum at pp. 12-13).

local control and regulation.  The Residency Requirement and the Three Store Limit are part of that integrated regulatory structure.  There is little doubt that if the Plaintiffs prevail in this action, the character and operations of retail package store licensees will be impacted.  This will alter the economics, local character, and financial structure of the three tier system crafted by the Legislature.  Johnson v. Martignetti, 375 Mass. 290, 297 (1978).  MassPack, an association including Massachusetts retail package stores that are subject to the two statutory provisions under attack by the Plaintiffs, seeks to intervene in this action for the purpose of demonstrating that the Residency Requirement and the Three Store Limit are constitutional.

Plaintiffs' opposition to MassPack's motion to intervene is grounded largely on the substantive arguments underlying Plaintiffs' theory that the Residency Requirement and the Three Store Limit are unconstitutional forms of economic protectionism.  MassPack vigorously denies that these provisions are unconstitutional and will be prepared, at the appropriate time, to demonstrate in detail why the Plaintiffs' claims of unconstitutionality lack merit.  However, Plaintiffs' arguments on the merits are irrelevant to the question of whether MassPack should be allowed to intervene.

The issues presented by MassPack's motion to intervene are defined solely by Fed. R. Civ. P. 24(a) and (b), which are: (a) whether the motion to intervene is timely; (b) whether MassPack has an interest in the outcome of the case; and (c) whether Masspack's interests will be adequately represented by the existing parties.  Fed. R. Civ. P. 24(a)(2); Daggett v. Commission on Governmental Ethics and Election Practices, 172 F.3d 104 (1st Cir. 1999); Public Service Co. of New Hampshire v. Patch, 136 F.3d 197 (1st Cir. 1998).  The time for the Court to address the constitutionality of the Residency Requirement and the Three Store Limit is not in the context of a motion to intervene, but rather, after the parties, including the proposed

intervenors, have had an opportunity to make a factual record that can be appropriately evaluated by the Court in the context of a dispositive motion.[2]

1.  MassPack Has A Direct and Concrete Interest In This Litigation

MassPack should be allowed to intervene in this case because it has demonstrated – and the Plaintiffs' implicitly concede – that MassPack has an interest in the outcome of this litigation. Although that interest is primarily economic, it is sufficiently "direct and concrete enough" to meet the standards of Rule 24(a). See Massachusetts Food Association v. Sullivan, 184 F.R.D. 217, 222 (D. Mass. 1999) (finding that MassPack had an interest in a constitutional challenge to the Three Store Limit for the purposes of a motion to intervene). Moreover, even if MassPack has an economic interest in intervening in this case, Plaintiffs incorrectly infer that MassPack will advance protectionist arguments in defense of the statute.

To the contrary, MassPack expects to be able to establish there are legitimate local purposes for this law that cannot be served as well by other means. See Maine v. Taylor, 477 U.S. 131 (1986). In particular, and as a result of the regulatory concerns inherent in G.L. ch. 138, which emphasizes local licensing boards and local decision-making, the Massachusetts retail package industry consists largely of independent businesses with a strong attachment to the local community. If the Residency Requirement is declared unconstitutional, this raises regulatory concerns because of the changes that will undoubtedly occur in the economic structure and character of the retail package store industry that is a consequence of the regulatory scheme created in G.L. ch. 138. Because MassPack has a tangible interest in the outcome of this case, it should be allowed to articulate its unique retail perspective on the important local

---

[2] That the issue of intervention is separate from the merits is demonstrated by Cooper v. McBeath, 11 F.3d 547 (5th Cir. 1994). In that case, the trial court permitted intervention by three advocacy organizations, including the Texas Package Store Association. 11 F.3d at 550, n. 4.

interests that are furthered by the Residency Requirement and the Three Store Limit. That can only be achieved if MassPack is allowed to intervene and make a factual record.

    2.    **MassPack Should Be Allowed To Intervene to Defend The Constitutionality of the Three Store Limit and The Residency Requirement**

Even though it is premature to consider the merits of the Plaintiffs' constitutional challenges, it is nevertheless important to explore the standards for assessing the constitutionality of the Residency Requirement and the Three Store Limit to appreciate the role that MassPack intends to play in this case.

As a preliminary matter, there is a distinct difference between the Residency Requirement and the Three Store Limit. Although both provisions are found in § 15 and both are part of a larger statutory and regulatory structure, they serve different purposes. The Residency Requirement is condition of obtaining a license. The Three Store Limit affects how many licenses one may obtain.

        <u>The Three Store Limit</u>

There has not been any finding that the Three Store Limit is excessively burdensome on interstate commerce. To the contrary, the Court has held that the Three Store Limit is <u>not</u> facially discriminatory. Thus, it remains the Plaintiffs' heavy burden to demonstrate that the Three Store Limit fails to satisfy the relatively low standard established by <u>Pike v. Bruce Church</u>. <u>See</u> Memorandum and Order dated May 8, 2006. Indeed, as noted by the Wholesalers, the Three Store Limit serves important local interests and it places virtually no burden on interstate commerce. <u>See</u> Wholesalers' Reply Memorandum at pp. 2-7.

<u>The Residency Requirement</u>

Although the Court has observed that the Residency Requirement is facially discriminatory, that does not constitute a finding that the statute violates the dormant Commerce Clause.  As the Court noted, a facially discriminatory statute may be constitutional if it serves a legitimate local purpose that cannot be served as well by available non-discriminatory means."  <u>See</u> Memorandum and Order, 432 F. Supp. 2d at 218.

The Commonwealth's defense of the Residency Requirement has, as the Court noted in its Memorandum and Order on the Commonwealth's motion to dismiss, been limited to the argument that the Twenty-first Amendment gives the states broad authority to regulate the sale and distribution of alcohol within its borders.  <u>Id</u>.  The Commonwealth has not thus far articulated the purposes for the Residency Requirement.  If its motion to intervene is allowed, and in addition to arguments raised by the Commonwealth pertaining to the Twenty-first Amendment, MassPack will attempt to demonstrate that important local purposes are served by the Residency Requirement and that these purposes could not be served as well by other means.  Accordingly, MassPack should be allowed to intervene to ensure that critical facts concerning the economics, finances, and local character of the retail package industry uniquely within the experience of retail package store owners are placed before the Court.

3.  MassPack Should Be Allowed To Intervene
    To Ensure That That Facts Relating To Its
    <u>Retail Perspective Are Placed In The Record</u>

MassPack and the Alcohol Beverages Control Commission ("ABCC") occupy very different (and often adversarial) positions in the statutory scheme established under G.L. ch. 138.  Therefore, although MassPack and the Commonwealth both intend to defend the Residency Requirement and the Three Store Limit, they approach the statute from opposite perspectives.

The ABCC, which regulates the sale of alcohol in the Commonwealth, has an inherently adversarial relationship with MassPack's members. Therefore, the ABCC will not necessarily advocate MassPack's retail perspective. Now that this case has moved beyond a motion to dismiss based on purely legal arguments and some factual record will be necessary, MassPack is positioned to provide the facts that have not yet been advanced in the Commonwealth's defense. Moreover, in the event of an adverse ruling, the retailers should have a 'seat at the table' in the event of any settlement discussions.

    4.    <u>Standing</u>

The Plaintiffs also assert that MassPack lacks standing under Article III of the United States Constitution. Although, as the First Circuit noted in <u>Daggett</u>, "the case law interpreting standing requirements under Article III is, to put it mildly, "one of the most confused areas of the law." 172 F.3d at 109 (citations omitted), "the core requirement-buttressed by some collateral concerns-is that the person claiming standing must have a concrete stake in a controversy suitable for court resolution." <u>Id.</u>  (citing <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 472 (1982).

Plaintiffs assert that MassPack's standing is too speculative because it is based on an hypothetical loss of profitability. Plaintiffs' Opposition at 13. However, as noted by the Wholesalers' in their reply memorandum, the requirement of standing is not applicable to MassPack, which seeks to intervene as a defendant. Wholesalers' Reply Memorandum at pp. 10-13.

In any event, there cannot be any real argument that MassPack's members have a "concrete stake" in this litigation. Each package store retailer must currently comply with both the Residency Requirement. Moreover, ownership of a package store is governed by the Three

Store Limit. Any change in these provisions would change the requirements for obtaining a retail package store license and would alter a detailed statutory scheme that places a number of restrictions on the activities of suppliers, wholesalers, and retailers and emphasizes strong connections to the locality where the package store is located.

      5.      <u>MassPack's Motion To Intervene Is Timely and Will Not Disrupt The Litigation</u>

Noting that this action was begun in 2004, the Plaintiffs suggest that MassPack's motion for permissive intervention, which was filed in December 2006, should be denied because it is untimely. This assertion lacks merit because the Plaintiffs' complaint has only recently survived a motion to dismiss.[3]

Because it was not clear until very recently which of Plaintiffs' many claims, if any, were going to be considered by the Court on motions for summary judgment, it made little or no sense for MassPack to intervene at an earlier time. So long as the motions to dismiss were pending, there was a reasonable prospect that the case might have been dismissed in its entirety, rendering a motion to intervene unnecessary. Now that issue has finally been joined, it is appropriate for Masspack to intervene to defend its interests in this case. MassPack's instant motion to intervene is, therefore, unlike the situation in <u>Massachusetts Food Association v. Sullivan</u>, where MassPack sought to intervene prior to a ruling on the defendants' motion to dismiss and MassPack would have been limited to submitting memoranda of law based on purely legal arguments.

Moreover, allowing Masspack to intervene will not result in any significant delay or cost. MassPack understands that the Defendants have only recently propounded discovery and made their automatic disclosures under Fed. R. Civ. P. 26. MassPack has not been served with either

---

[3] An answer was only recently filed in this case by the Attorney General's Office on behalf of the Defendants and, the Plaintiffs themselves sought to file an Amended Complaint.

the Plaintiffs' automatic disclosures or any discovery requests. Thus, any discovery propounded by MassPack, which it does not believe will be extensive, will not lag behind the discovery undertaken by either the Plaintiffs or the Defendants.

## Conclusion

The Court should allow MassPack's motion to intervene in this action.

Respectfully submitted,

MASSACHUSETTS PACKAGE
STORES ASSOCIATION, INC.

By its attorneys,


    */s/ Richard Goldstein*
Bruce A. Singal, BBO #464420
Richard Goldstein, BBO #565482
DONOGHUE, BARRETT & SINGAL, P.C.
One Beacon Street, Suite 1320
Boston, Massachusetts 02108
(617) 720-5090

Dated: January 8, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that this Document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Filing (NEF) on January 8, 2007.


    */s/ Richard Goldstein*
Richard Goldstein